**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| FTX TRADING LTD. and MACLAURIN INVESTMENTS LTD., | |
| Plaintiffs, | Adv. Pro. No. 23-50437 (JTD) |
| -against- | |
| LOREM IPSUM UG, PATRICK GRUHN, ROBIN MATZKE, and BRANDON WILLIAMS, | |
| Defendants. | |

**APPENDIX**

Lawrence J. Gebhardt (*pro hac vice*)
Gregory L. Arbogast (No. 6255)
GEBHARDT & SMITH LLP
1000 N. West Street, Suite 1200
Wilmington, DE 19801
T: (302) 295-5038
F: (443) 957-4325
Garbogast@gebsmith.com

*Attorneys for Defendant,*
*Brandon Williams*

# Table of Contents

Share Purchase Agreement dated October 25, 2020 between Crypto Lawyers GmbH, Ernest Ukaj, Lorem Ipsum RM UG, as sellers, and Alameda Ventures Ltd., as Purchaser ...................................................................................................................A001

Share Purchase Agreement dated July 2, 2021, between Patrick Gruhn, Brandon Williams, Lorem Ipsum UG, as sellers and Alameda Ventures Ltd., as purchaser ...............................................A013

Share Purchase Agreement dated November 14, 2021, between Patrick Gruhn, Lorem Ipsum UG, and Brandon Williams, as sellers, and FTX Trading Ltd., as purchaser ..................................A019

FTX Trading Ltd. Consolidated Financial Statements as of December 31, 2021 and 2020 and for the years ended December 31, 2012 and 2020 by Prager Metis. Ltd. ..................................... A042

Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings [D.I.24], and the Supplemental Declaration of John J. Ray III in Support of First Day Pleadings [D.I. 92] ................................................................................................................. A071

Email dated November 7, 2022, from Andrew G. Dietderich of Sullivan & Cromwell to Darren Azman of McDermot Will & Emery LLP ............................................................... A106

ASC 805 Valuation of Certain Assets of FTX Trading Ltd. for Financial Reporting Purposes of BDO USA, LLP dated April 7, 2022 ...................................................................................... A107

Affidavit of Brandon Williams ............................................................................. A189

FTX Joint Proposal to acquire Voyager dated July 22, 2022 from Andrew Dietderich of Sullivan & Cromwell to Joshua Sussberg, counsel for the Debtors, and Jared Dermont, investment banker representing the debtors ...................................................................................... A198

Declaration Of Brian Tichenor, Managing Director of the Financial Institutions Group at Moelis, LLC, an investment banker representing Voyager in the FTX Trading proposed acquisition ........................................................................................................... A208

Debtors' Motion For Entry Of An Order (I) Authorizing Entry Into the Asset Purchase Agreement And (II) Granting Related Relief in In re: Voyager Digital Holdings, Inc. et al, Case No. 22-10943(MEW) (first 9 pages) ...................................................................... A218

Section 4.4 from the Asset Purchase Agreement representing the buyer's financial ability to satisfy its financial obligations regarding the purchase, with FTX represented by Andrew Dietderich of Sullivan & Cromwell .......................................................................................... A227

Order dated October 20, 2022 approving sale to FTX ........................................................... A228

DocuSign Envelope ID: 7970A2F2-7DF3-47FF-A817-D649C339C16E

**Share Purchase Agreement**

dated 25 October 2020

by and between

**Crypto Lawyers GmbH**

Industriestrasse 28

9100 Herisau

Switzerland

**("Seller 1")**

**Ernest Ukaj**

Bischofszellerstrasse 72

9200 Gossau

Switzerland

**("Seller 2")**

**Lorem ipsum RM UG (haftungsbeschränkt)**

Manteuffelstrasse 77

10999 Berlin

Germany

**("Seller 3")**

and

**Alameda Ventures Ltd.**

1st Floor, Eden Plaza
Eden Island
Republic of Seychelles

DocuSign Envelope ID: 7970A2F2-7DF3-47FF-A817-D649C339C16E

**("Purchaser")**

regarding

**Sale and Purchase of**

**Shares in**

**Digital Assets DA AG**

Industriestrasse 28

9100 Herisau

Switzerland

WHEREAS, Digital Assets DA AG ("**Company**") is a Swiss corporation limited by shares (*Aktiengesellschaft*), registered with the Commercial Register of Appenzell Ausserrhoden under the registration number CHE-175.231.191 whose registered share capital amounts to CHF 100,000.00, paid-up in the amount of CHF 50,000.00 (Liberierung) and is divided into 1,000 registered shares (Namenaktien) with a par value of CHF 1,000.00 (each such share hereinafter referred to as a "**Share**" and several of such shares together, the "**Shares**").

WHEREAS, Seller 1 is the owner of 500 (five hundred) Shares, representing 50% of the Company's share capital, Seller 2 and Seller 3 each own 250 (two hundred fifty) Shares, representing each 25% of the Company's share capital (the "**Existing Shares**").

WHEREAS, the purpose of the Company as a technology and financial company is to issue structured financial products to professional counterparties, in particular financial instruments whose price is derived from an underlying asset, in Switzerland and worldwide, as well as to provide related services. The Company may establish branches in Switzerland and abroad, to participate in other enterprises in Switzerland and abroad, to acquire similar or related enterprises or to merge with such enterprises, and to enter into all business transactions and conclude all contracts which are suitable for promoting the purpose of the Company or which

**A002**

DocuSign Envelope ID: 7970A2F2-7DF3-47FF-A817-D649C339C16E

are directly or indirectly related to it. It may acquire, administer, encumber and sell land, intellectual property rights and licenses of all kinds.

WHEREAS, in accordance with the terms and subject to the conditions of this agreement ("**Agreement**"), the Sellers wish to sell and assign to the Purchaser, and the Purchaser wishes to buy and accept from the Seller, in total 50 (fifty) Shares, representing 5% (five per cent) of the Company's share capital ("**Sale Shares**").

NOW, THEREFORE, the parties hereto (each a "**Party**", and collectively the "**Parties**") agree as follows:

## 1.    Definitions

| | |
|---|---|
| Business Day | means a day other than Saturday and Sunday when banks are open for business in Switzerland. |
| USD | US Dollars |
| Encumbrance | means any kind of claim and all claims and any kind of mortgage, pledge, lien, charge (fixed or floating), options, rights of pre-emption or equities whatsoever and not being arrested or blocked or subject to withdrawal under any legal or legislative acts of any authorized body and or court resolution and or otherwise, assignment, whether absolute or by way of security, hypothecation, security interest, equity, any preferential right or trust arrangement or other agreement or arrangement the effect of which is the creation of security and any other encumbrance or security arrangement of any kind, as well as any other rights or interests of third parties in terms of obtaining any funds or property and any agreements, arrangements or obligations to create any of the above. |

DocuSign Envelope ID: 7970A2F2-7DF3-47FF-A817-D649C339C16E

**2.    Sale and Purchase of Shares**

2.1.    Subject to the terms and conditions of this Agreement, the Sellers hereby sell and assign to the Purchaser, and the Purchaser hereby purchases and accepts from the Sellers, the full legal and beneficial ownership of a total amount of 50 (fifty) Sale Shares, free and clear from any Encumbrance (**"Transaction"**).

2.2.    Seller 1 will sell and assign 25 Sale Shares and Seller 2 and Seller 3 will each sell and assign 12.5 Sale Shares to the Purchaser against payment of the Purchase Price as described in section 3.2. of this Agreement.

**3.    Purchase Price / Consideration**

3.1.    The fixed purchase price payable by the Purchaser to the Sellers on a pro rata basis for the sale of the Sale Shares is 700,000 (seven hundred thousand) US Dollars (**"USD"**) (**"Purchase Price"**).

3.2.    The Purchase Price shall be paid in cash without any deduction of whatsoever nature by wire transfer according to the following schedule:

3.2.1.    Seller 1 receives USD 350,000 in total. Seller 2 and 3 receive each USD 175,000 in total as purchase price.

3.2.2.    USD 166,666.66 of the Purchase Price shall be paid on signing this agreement on a pro rata basis to Seller 1 (50%), Seller 2 and Seller 3 (each 25%). USD 166,666.66 of the Purchase Price shall be paid on 3 November 2020 on a pro rata basis to Seller 1 (50%), Seller 2 and Seller 3 (each 25%). USD 166,666.66 of the Purchase Price denominated in USD shall be paid on 30 November 2020 on a pro rata basis to Seller 1 (50%), Seller 2 and Seller 3 (each 25%). USD 200,000.00 of the Purchase Price shall be paid on 15 February 2021 on a pro rata basis to Seller 1 (50%), Seller 2 and Seller 3 (each 25%).

3.2.3.    The instalments shall be payable provided the impaired service offering by DAAG on such dates. Paid instalments of the Purchase Price will not be redeemed in case the service is not upheld on future due dates.

3.2.4.    The purchase price is to be paid to the following bank accounts:

**A004**

DocuSign Envelope ID: 7970A2F2-7DF3-47FF-A817-D649C339C16E

| Seller 1 | **Name**: Crypto Lawyers GmbH<br>**IBAN**: CH90 0078 1622 7552 8200 1<br>**BIC**: KBSGCH22 |
|----------|------------------------------------------------------------------------------------------|
| Seller 2 | **Name**: Ernest Ukaj<br>**IBAN**: CH14 0078 1618 3035 3200 1<br>**BIC**: KBSGCH22 |
| Seller 3 | **Name**: lorem ipsum RM UG (haftungsbeschränkt)<br>**IBAN**: DE55 1005 0000 0190 8051 45<br>**BIC**: BELADEBEXXX |

3.2.5.  By signing this Agreement, the parties agree that the Purchase Price may be paid directly to the Company as a loan:

| Company | **Name**: Digital Assets DA AG<br>**IBAN**: CH69 0078 1624 4789 6200 0<br>**BIC**: KBSGCH22 |
|---------|---------------------------------------------------------------------------------------------|

## 4.   Conditions to Closing

4.1.   The Transaction shall be consummated if and to the extent that the Purchase Price has been paid in full by the Purchaser to the Sellers "**Closing Date**").

4.2.   Concurrently with and in exchange for (*Zug um Zug*) the closing actions of the Purchaser, the Sellers or the Company shall perform the following closing actions:

4.2.1.   an assignment of the shares and, if necessary, deliver proof that any other actions required for the valid transfer of title of the Sale Shares have been completed, such as e.g. providing the Company the necessary instructions in order to effectuate the transfer of the Sale Shares;

4.2.2.   deliver the duly signed minutes of the resolution of the board of directors of the Company approving the entry of the Purchaser as the new holder of the Sale Shares in the share register of the Company as of the date of signing;

DocuSign Envelope ID: 7970A2F2-7DF3-47FF-A817-D649C339C16E

4.2.3.    deliver the duly signed share register (*Aktienbuch*) of the Company in which the Purchaser is registered as shareholder of the Company in respect of the Sale Shares as of the Closing Date.

4.3.    Risk, title and benefit regarding the Sale Shares shall pass from Seller to Purchaser at the Closing Date.

## 5.    Capital Injection

5.1.    On Closing Date, the Sellers will grant a credit to the Company in the amount of the pro rata Purchase Price ("**Capital Injection**").

5.2.    The term of the credit will be 2 (two) years beginning from the signing of this Agreement. The interest rate will be the minimum interest rate as required by Swiss law (i.e. currently 0.75% p.a.). The Company may at its discretion repay the credit at any time and to any extent before maturity. Any claim arising of the loan will be subordinated.

## 6.    Representations and Warranties of the Seller

The Sellers hereby represent and warrant to the Purchaser that as of signing and at the Closing Date of this Agreement:

6.1.    Each Seller has all requisite power and authority to enter into and perform this Agreement and the other documents referred to therein and is authorized to sell and transfer complete and unrestricted title to the Sale Shares on the terms and conditions of this Agreement. Other than as set forth herein, no authorizations, permits or consents are required from any governmental or administrative authority, or any third party (including, for the avoidance of doubt, any creditor of the Sellers) for the consummation of the Transaction contemplated under this Agreement.

6.2.    Each Seller is the sole legal and beneficial owner of the Sale Shares, which are free from all charges, liens and Encumbrances whatsoever, other than as set forth herein, and, as from the Closing Date only, the Sale Shares are not arrested, blocked nor subject to withdrawal under legal and/or legislative acts of the authorized bodies and/or court resolutions and/or otherwise. Furthermore, the Sale Shares are not subject to a call or put option or alike and the Seller has no obligations to sell or transfer the Sale Shares to any third party under any contractual obligation, other than the current shareholders' agreement in place.

DocuSign Envelope ID: 7970A2F2-7DF3-47FF-A817-D649C339C16E

6.3.   None of (a) the use of the Purchase Price, (b) the execution, delivery and performance of this Agreement, or (c) the consummation of any transaction contemplated hereby, or the fulfilment of the terms hereof, will result in a violation by anyone, including without limitation the Sellers or the Purchaser, of any anti-money laundering laws or any other legal provisions of any jurisdiction. Furthermore, the Sellers, by entering and performing this Agreement, do not infringe any obligation (neither contractual nor under statutory laws) or provision of any applicable laws.

6.4.   As of the Closing Date, the Existing Shares are the only shares of the Company's capital stock that are issued and outstanding, and there are no outstanding rights of first refusal, preemptive rights, options, warrants, stock plans, conversion rights or other agreements, either directly or indirectly, for the purchase or acquisition of further Shares or other securities of the Company. As of the Closing Date, the Company has no outstanding aggregate debt to the Sellers in excess of US$700,000.

## 7. Representations and Warranties of the Purchaser

7.1.   The Purchaser is duly incorporated and validly existing under the laws of the Seychelles.

7.2.   The Purchaser has all requisite power and authority to enter into and perform this Agreement and is authorized to purchase and accept transfer of complete and unrestricted title to the Sale Shares on the terms and conditions of this Agreement. Other than as set forth herein no authorizations, permits or consents are required from any governmental or administrative authority, or any third party (including, for the avoidance of doubt, any shareholder or creditor of the Purchaser) for the consummation of the Transaction contemplated under this Agreement.

7.3.   This Agreement constitutes the valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms; subject to applicable bankruptcy, insolvency or other laws affecting the enforcement of creditors' rights generally.

## 8. Covenants of the Sellers

The Sellers agree to vote their shares or otherwise cause the Company to comply with the following:

DocuSign Envelope ID: 7970A2F2-7DF3-47FF-A817-D649C339C16E

8.1.   For a period expiring on the five-year anniversary of the Closing Date, the Purchaser or its designee shall have the right, but not the obligation, to participate with respect to all non-public equity or equity-linked capital raising transactions of the Company (each, a "**Subsequent Financing**"). The Company shall give advance written notice to the Parties prior to any Subsequent Financing. Each Party shall have ten (10) business days from receipt of such notice to deliver a written notice to the Company that such Party elects to exercise its right to participate in the Subsequent Financing with respect to an amount of the Subsequent Financing equal to its current percentage of Shares held (the "**Pro-Rata Portion**"), or otherwise such amount that as is at least sufficient so the Subsequent Financing does not dilute the Purchaser's equity percentage.

8.2.   For a period expiring on the five-year anniversary of the Closing Date, if any Seller proposes to transfer any of its shares of Common Stock to any entity or other acquirer other than a gift or other transfer without consideration (hereinafter referred to as a "**Selling Stockholder**"), such Selling Stockholder shall give written notice of such proposed transfer to the Parties at least 30 days prior to the consummation of such proposed transfer, setting forth (i) the number of Shares offered, (ii) the consideration to be received by such Selling Stockholder, (iii) the identity of the acquirer, (iv) any other material items and conditions of the proposed transfer and (v) the date of the proposed transfer. Each Party other than the Selling Stockholder may elect to sell a Pro Rata Portion (as hereinafter defined) of its Shares, at the same price per share pursuant to the same terms and conditions with respect to payment for the shares as agreed to by the Selling Stockholder, by sending written notice to the Selling Stockholder within 15 days of the date of the Selling Stockholder's notice, indicating a desire to sell such Pro Rata Portion of its Shares in the same transaction. Following such 15 day period, the Selling Stockholder shall be permitted to sell to the purchaser additional Shares representing Shares not sold by other stockholders of the Company.

8.3.   For a period expiring on the five-year anniversary of the Closing Date, any new issuances of Shares or other issuances of equity or rights to equity by the Company shall require preapproval of the Purchaser, except for equity financings that are both (i) subject to the right of participation described in Section 8.1; and (ii) and that are part of a Subsequent Financing with a pre-

DocuSign Envelope ID: 7970A2F2-7DF3-47FF-A817-D649C339C16E

money market cap valuation of at least US$10,000,000 (ie, $10,000 per Share under current cap table).

8.4. For a period expiring on the two-year anniversary of the Closing Date, any Company payments to the Sellers will be in the form of dividends applied to all owners of Shares, except for reasonable salary.

## 9. Miscellaneous

9.1. Any notice, request, instruction or other document deemed by either Party to be necessary, shall be sent by E-Mail and addressed as follows:

9.1.1. If to Purchaser:        Sam@ftx.com

9.1.2. If to Seller 1: pg@kglawyers.ch

9.1.3. If to Seller 2: eu@kglawyers.ch

9.1.4. If to Seller 3: rm@kglawyers.ch

9.2. Each Party may at any time change its address by giving notice to the other Party in the manner described above.

9.3. Each Party undertakes to keep, and shall procure that its employees, representatives, and advisors keep, in strict confidence the existence and content of this Agreement, the Transaction and all information and documents received from the other Party; except to the extent (i) disclosure is required by applicable mandatory law, (ii) necessary in a proceeding brought by a Party in pursuit of its rights hereunder or (iii) such information becomes known to the public without any fault of, or breach of any confidentiality undertaking by, the disclosing Party. This confidentiality obligation shall continue to be in effect after termination of this Agreement.

9.4. This Agreement constitutes the entire agreement of the Parties regarding the Transaction contemplated by this Agreement and supersedes all prior oral or written agreement between the Parties.

9.5. This Agreement including this Section shall only be modified by an agreement in writing executed by the Parties.

9.6. Any waiver of any claim under or in connection with this Agreement shall only be valid if made in writing. The failure of any of the Parties to enforce any of the provisions of this Agreement or any rights with respect thereto shall in no way be considered as a waiver of such provisions or rights or in any way to

DocuSign Envelope ID: 7970A2F2-7DF3-47FF-A817-D649C339C16E

affect the validity of this Agreement. The waiver of any breach of this Agreement by any party hereto shall not operate to be construed as a waiver of any other prior or subsequent breach.

9.7.  All the terms, provisions and conditions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, assigns and legal representatives. All covenants, representations and warranties of the Sellers shall constitute joint and several obligations of each Seller.

9.8.  The Seller and the Purchaser shall consult before issuing press releases or otherwise making any public statements or any statements to the Company's employees with respect to this Agreement and shall not issue any such press release or statement without the prior written approval of the other Party.

9.9.  If any provision of this Agreement is held to be invalid or unenforceable for any reason, such provision shall be adjusted rather than annulled in order to achieve a result which fully corresponds to the intention of the Parties.

9.10.  The Purchaser may not assign this Agreement or any rights or obligations hereunder to any third party only with the prior written consent of Sellers.

9.11.  Each Party shall bear all its own costs, expenses and taxes incurred in connection with the Transaction contemplated by this Agreement.

## 10.  Governing Law and Jurisdiction

10.1.  This Agreement shall be governed by, and construed in accordance with, the substantive laws of Switzerland, excluding its rules on conflict of laws and excluding international treaties (such as the Vienna Sale of Goods Convention (*UN-Kaufrecht*)).

10.2.  All disputes or claims arising out of or in relation with this Agreement, including the entering into, validity, invalidity, breach or termination thereof shall be submitted to and settled by private arbitration under ICC in Antigua. Each Party bears its own attorney fees and costs, i.e. there is no reimbursement to the prevailing party.

[SIGNATURE PAGE TO FOLLOW]

DocuSign Envelope ID: 7970A2F2-7DF3-47FF-A817-D649C339C16E

**IN WITNESS WHEREOF,** the Parties have signed this Agreement on the date first written above:

**The Seller:**

10/26/2020

Place, date

**Crypto Lawyers, represented by its Managing Director Ernest Ukaj**

10/26/2020

Place, date

**Ernest Ukaj**

10/26/2020

Place, date

**lorem ipsum RM UG (haftungsbeschränkt), represented by its Managing Director Robin Matzke**

**A011**

DocuSign Envelope ID: 7970A2F2-7DF3-47FF-A817-D649C339C16E

**The Purchaser:**

*Samuel Benjamin Bankman-Fried*
672DA88132804B9...

10/26/2020

**Place, date**

**Alameda Ventures Ltd., represented by its Managing Director Samuel Benjamin Bankman-Fried**

\* \* \*

DocuSign Envelope ID: A16F5098-AC9E-4127-94C8-EBDEC316C5DE

# SHARE PURCHASE AGREEMENT

**THIS SHARE PURCHASE AGREEMENT** (the "Agreement") made and entered into this __second_ day of ____July__, __2021__ (the "Execution Date"),

**BETWEEN:**

Patrick Gruhn of 1460 Lower Valley Rd, Kalispell, Montana 59901
(the "Seller 1")

Brandon Williams of 401 Vogts Lane Baltimore, Maryland 21221
(the "Seller 2")

Lorem Ipsum UG (haftungsbeschränkt) of c/o Lambda Law Rechtsanwaltsgesellschaft mbH, Bergstrasse 23, 10999 Berlin
(the "Seller 3")

OF THE FIRST PART

and

Alameda Ventures Ltd. of 1st Floor, Eden Plaza, Eden Island, Republic of Seychelles
(the "Purchaser")

OF THE SECOND PART

**BACKGROUND:**

A. The Sellers are each the owner of record of Common shares (the "Shares") of Digital Assets DA AG (the "Corporation").

B. The Sellers desire to sell the Shares to the Purchaser and the Purchaser desires to purchase 1.500.000 Shares (totaling 15% of the total issued shares of the Corporation) from the Sellers. The Purchaser currently holds 5% of the shares in Digital Assets DA AG and shall after this Share Purchase Agreement receive 20% of the shares in Digital Assets DA AG.

**IN CONSIDERATION OF** and as a condition of the parties entering into this Agreement and other valuable consideration, the receipt and sufficiency of which consideration is acknowledged, the parties to this Agreement agree as follows:

Page 1 of 6

**A013**

DocuSign Envelope ID: A16F5098-AC9E-4127-94C8-EBDEC316C5DE

### Purchase and Sale

1. Except as otherwise provided in this Agreement, all monetary amounts referred to in this Agreement are in USD (US Dollars).

2. The Sellers agree to sell and the Purchaser agrees to purchase all the rights, title, interest, and property of the Sellers in the Shares for an aggregate purchase price of $55,500,000.00 (the "Purchase Price").

3. A fixed sum of $55,500,000.00 will be payable on closing of this Agreement.

4. All payments will be made as follows:

   18,500,000 USDC-SPL to 4Tc6CY3VsqQcDbjDC9kWcZQ1UttzsYL5vQE7Q7pEihoh

   18,500,000 USDC-SPL to E62Zwz7J8LPum5CRV6hja2ifD1SMQ8BR7C6LwegxvUsC

   $18,500,000 USD via wire transfer to:

   > Patrick Gruhn
   > Acct# 104481429
   > Routing# 092901683
   > First Interstate Bank Kalispell, Montana

### Representations and Warranties of the Sellers

5. The Sellers warrants and represents to the Purchaser as follows:

   a. The Corporation granted the Solana Project an exclusivity on all Tokenized Stock token for the Solana Blockchain for a period of 12 month after July 1st 2021. A written confirmation by the Corporation must be delivered within 48 hours after closing.

   b. The Corporation granted the FTX Exchange a 50% fee split for the next 24 months after July 1st 2021 for all derivative products on Tokenized Stock token (e.g. http://ftx.com/trade/SPY-0924) and will charge those clients a minimum fee of 0.02% for

DocuSign Envelope ID: A16F5098-AC9E-4127-94C8-EBDEC316C5DE

buys/sells of those derivatives. A written confirmation by the Corporation must be delivered within 48 hours after closing.

c. Except as provided in the incorporating documents of the Corporation or as indicated on the face of the certificates for the Shares, the Purchaser would not be prevented or restricted in any way from re-selling the Shares in the future.

d. The Sellers are the owner in clear title of the Shares and the Shares are free of any lien, encumbrance, security interests, charges, mortgages, pledges, or adverse claim or other restriction that would prevent the transfer of clear title to the Purchaser.

e. The Sellers are not bound by any agreement that would prevent any transactions connected with this Agreement.

f. There is no legal action or suit pending against any party, to the knowledge of the Sellers, that would materially affect this Agreement.

**Representations and Warranties of the Purchaser**

6. The Purchaser warrants and represents to the Sellers as follows:

a. The Purchaser is not bound by any agreement that would prevent any transactions connected with this Agreement.

b. There is no legal action or suit pending against any party, to the knowledge of the Purchaser, that would materially affect this Agreement.

**Closing**

7. The closing of the purchase and sale of the Shares (the "Closing") will take place on July 1, 2021 (the "Closing Date") at the offices of the Sellers or at such other time and place as the Sellers and the Purchaser mutually agree. At Closing and upon the Purchaser paying the Purchase Price in full to the Sellers, the Sellers will deliver to the Purchaser duly executed transfers of the Shares.

**Expenses**

8. All parties agree to pay all their own costs and expenses in connection with this Agreement.

DocuSign Envelope ID: A16F5098-AC9E-4127-94C8-EBDEC316C5DE

### Finder's Fees

9. No party to this Agreement will pay any type of finder's fee to any other party to this Agreement or to any other individual in connection to this Agreement.

10. All parties to this Agreement warrant and represent that no investment banker or broker or other intermediary has facilitated the transaction contemplated by this Agreement and is entitled to a fee or commission in connection with said transaction. All parties to this Agreement indemnify and hold harmless all other parties to this Agreement in connection with any claims for brokerage fees or other commissions that may be made by any party pertaining to this Agreement.

### Dividends

11. Any dividends earned by the Shares and payable before the Closing of this Agreement will belong to the Sellers, and any dividends earned by the Shares and payable after the Closing of this Agreement will belong to the Purchaser.

12. Any rights to vote attached to the Shares will belong to the Sellers before the Closing and will belong to the Purchaser after the Closing.

### Governing Law

13. The Purchaser and the Sellers submit to the jurisdiction of the courts of the State of Montana for the enforcement of this Agreement or any arbitration award or decision arising from this Agreement. This Agreement will be enforced or construed according to the laws of the State of Montana.

### Miscellaneous

14. Time is of the essence in this Agreement.

15. This Agreement may be executed in counterparts.  Facsimile signatures are binding and are considered to be original signatures.

16. All warranties and representations of the Sellers and the Purchaser connected with this Agreement will survive the Closing.

**A016**

DocuSign Envelope ID: A16F5098-AC9E-4127-94C8-EBDEC316C5DE

17. This Agreement will not be assigned either in whole or in part by any party to this Agreement without the written consent of the other party.

18. Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine gender include the feminine gender and vice versa. Words in the neuter gender include the masculine gender and the feminine gender and vice versa.

19. If any term, covenant, condition or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the parties' intent that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Agreement will in no way be affected, impaired or invalidated as a result.

20. This Agreement contains the entire agreement between the parties. All negotiations and understandings have been included in this Agreement. Statements or representations which may have been made by any party to this Agreement in the negotiation stages of this Agreement may in some way be inconsistent with this final written Agreement. All such statements are declared to be of no value in this Agreement. Only the written terms of this Agreement will bind the parties.

21. This Agreement and the terms and conditions contained in this Agreement apply to and are binding upon the Sellers and the Purchaser and their respective successors, assigns, executors, administrators, beneficiaries, and representatives.

22. Any notices or delivery required here will be deemed completed when hand-delivered, delivered by agent, or seven (7) days after being placed in the post, postage prepaid, to the parties at the addresses contained in this Agreement or as the parties may later designate in writing.

23. All of the rights, remedies and benefits provided by this Agreement will be cumulative and will not be exclusive of any other such rights, remedies and benefits allowed by law.

**IN WITNESS WHEREOF** the Sellers and Purchaser have duly affixed their signatures under hand and seal on this _____2nd___ day of _____July_____, ___2021_____.

DocuSign Envelope ID: A16F5098-AC9E-4127-94C8-EBDEC316C5DE

DocuSigned by:

*Patrick Gruhn*

A8FF8638A98E493...

Patrick Gruhn (Seller 1)

DocuSigned by:

997557AE4419466...

Brandon Williams (Seller 2)

DocuSigned by:

*Robin Matzke*

BCB38F75EA81462...

Lorem Ipsum UG (haftungsbeschränkt),
represented by its Managing Director Dr. Robin
Matzke (Seller 3)

DocuSigned by:

*Sam Bankman-Fried*

F0D59F19C7D34BA...

FTX (Purchaser)

_____

Sam Bankman-Fried

A018

DocuSign Envelope ID: 51BB5614-C908-49D8-9818-6A190498E97B

## "SHARE PURCHASE AGREEMENT"

**THIS SHARE PURCHASE AGREEMENT** (the "**Agreement**") made and entered into this 14th day of November, 2021 (the "**Execution Date**"),

**BETWEEN:**

Patrick Gruhn of 1460 Lower Valley Rd, Kalispell, MT 59901

(the "**Seller 1**")

Lorem Ipsum UG (haftungsbeschränkt) of c/o Lambda Law Rechtsanwaltsgesellschaft mbH, Bergstrasse 23, 10999 Berlin

(the "**Seller 2**")

Brandon Williams of 401 Vogts Lane, Baltimore, MD 21221

(the "**Seller 3**")

and

FTX Trading Ltd., Veridian Corporate Centre Bldg 27, Western Road, Nassau, The Bahamas

(the "**Purchaser**")

**BACKGROUND:**

WHEREAS, Digital Assets DA AG (the "**Company**") is a Swiss corporation limited by shares registered with the Commercial Register of Appenzell Ausserrhoden under the registration number CHE-175.231.191. The Company's registered share capital amounts to CHF 100,000.00, paid-up in the amount of CHF 50,000.00 (Liberierung) and is divided into 10,000,000 registered shares (Namenaktien) with a par value of CHF 0.01 (each such share hereinafter referred to as a "**Share**" and several of such shares together, the "**Shares**").

WHEREAS, Seller 1, Seller 2 and Seller 3 (collectively, the "**Sellers**") collectively own 8,000,000 Shares (the "**Sale Shares**"), of which (a) Seller 1 and Seller 2 each owns 2,666,667 (two million six hundred sixty-six thousand six hundred sixty-seven) Shares, each representing 26.67% of the Company's share capital, and (b) Seller 3 owns 2,666,666 (two million six hundred sixty-six thousand six hundred sixty-six) Shares, representing 26.66% of the Company's share capital.

DocuSign Envelope ID: 51BB5614-C908-49D8-9818-6A190498E97B

WHEREAS, Purchaser is the owner of 2,000,000 (two million) Shares, representing 20% of the Company's share capital (the "**Existing Shares**").

WHEREAS, the purpose of the Company as a technology and financial company is to issue structured financial products, in particular financial instruments whose price is derived from an underlying asset, in Switzerland and worldwide, as well as to provide related services. The Company may establish branches in Switzerland and abroad, to participate in other enterprises in Switzerland and abroad, to acquire similar or related enterprises or to merge with such enterprises, and to enter into all business transactions and conclude all contracts which are suitable for promoting the purpose of the Company or which are directly or indirectly related to it. It may acquire, administer, encumber and sell land, intellectual property rights and licenses of all kinds.

WHEREAS, the Company holds 100% of the equity capital and the voting rights of the subsidiaries set forth on Exhibit A (the "**Subsidiaries**") other as contemplated herein.

WHEREAS, in accordance with the terms and subject to the conditions of this agreement ("**Agreement**"), the Sellers wish to sell and assign to the Purchaser, and the Purchaser wishes to buy and accept from the Sellers, all of the Sale Shares, representing 80% (eighty per cent) of the Company's share capital.

**IN CONSIDERATION OF** and as a condition of the parties entering into this Agreement and other valuable consideration, the receipt and sufficiency of which consideration is acknowledged, the parties (each a "**Party**", and collectively the "**Parties**") to this Agreement agree as follows:

### Purchase and Sale

1. Except as otherwise provided in this Agreement, all monetary amounts referred to in this Agreement are in USD (US Dollars).

2. The Sellers agree to sell and, at the Closing Date, to transfer to the Purchaser, and the Purchaser agrees to purchase and, at the Closing Date, to accept, all the rights, title, interest, and property of the Sellers in the Sale Shares, free and clear of any Liens, for an aggregate purchase price of $320,000,000.00 (the "**Purchase Price**"), which shall be paid via the Cash Component, the Additional Cash Component, the Bonus Component, the Extra Bonus Component and the Stock Component (each as defined below).

3. (a) A total sum of $166,666,656.26 will be payable to the Sellers on the Closing Date ("**Cash Component**"), as set forth on Exhibit B.

DocuSign Envelope ID: 51BB5614-C908-49D8-9818-6A190498E97B

(b) Additionally, (i) a total sum of $33,333,337.50 ("**Bonus Component**") will be payable to Seller 1 and (ii) a total of 1,373,247 common shares of the Purchaser ("**Stock Component**") will be payable to Seller 1 and Seller 2, in each case as set forth on Exhibit B, upon the achievement of the below conditions within one year after the Closing Date:

   a.  The Sellers shall provide (via acquisition, services or other written relationship) a CFD broker that is licensed to and has the necessary Permits to service customers in the European Economic Area (including Germany), and actively solicits and provides to retail and professional customers in the European Economic Area (including Germany), under the FTX brand, futures and other derivatives with crypto assets as underlying (such as perpetual and dated futures, contracts for difference type OTC derivatives), provided that all such products allow a leverage of at least 2:1 ("**Milestone 1**"); and

   b.  The Sellers shall grant the Purchaser (or an affiliate or other entity designated by the Purchaser) an exclusive option to acquire the CFD broker mentioned in Milestone 1 ("**Milestone 2**") at conditions reasonable under the circumstances, provided that to the extent applicable, this Milestone 2 shall be conditioned upon approval by applicable governmental authorities.

The Bonus Component will be paid to Seller 1 eight weeks after the Achievement Date, provided that no such payment will be due and payable if any European regulator initiates an investigation or commences an administrative act within eight weeks of the Achievement Date, other than as a result of any violations of law taken by the Purchaser or its Affiliates, e.g. violations of advertising or products rules.

As soon as practicable after the date that is eight weeks after the Achievement Date, the Purchaser will issue and grant a total of 1,373,247 common shares of the Purchaser to Seller 1 and Seller 2 as set forth on Exhibit B, provided that no European regulator initiates an investigation or commences an administrative act within eight weeks of the Achievement Date, other than as a result of any violations of law taken by the Purchaser or its Affiliates, e.g., violations of advertising or products rules.

(c) Finally, an extra bonus of $5,000,000 ("**Extra Bonus Component**") will be payable to each of Seller 1 and Seller 2 as set forth on <u>Exhibit B</u> if, by not later than the date that is one month after the Execution Date, the CFD broker mentioned in Milestone 1 receives all regulatory approvals to actively solicit and actually provides to retail and professional customers in the European

DocuSign Envelope ID: 51BB5614-C908-49D8-9818-6A190498E97B

Economic Area (including Germany), under the FTX brand, all its futures and other derivatives with crypto assets as underlying (such as perpetual and dated futures, contracts for difference type OTC derivatives) with a leverage of at least 20:1. If achieved, the Extra Bonus Component shall be paid by not later than two months after the Execution Date.

4. Seller 1 and Seller 2 shall each receive an additional cash component (“**Additional Cash Component**”) in the total amount of each $ 30,000,000.00. The Additional Cash Component will be paid by the Purchaser over a period of 4 years in 8 equal payments commencing 6 months after the Achievement Date and each six months thereafter, subject to Seller 1 and Seller 2’s continued employment with the Purchaser or one of its Affiliates on each date of payment.

5. All cash payments will be in the form of USDC Stablecoin/Wire transfer of immediately available funds to:

| Name | Amount | Destination Account |
|---|---|---|
| Seller 1 | Cash Component ($41,666,671.88) + Additional Cash Component ($30,000,000.00) + Bonus Component ($33,333,337.50) + Extra Bonus Component ($5,000,000.00) | Patrick Gruhn<br><br>█████████<br><br>First Interstate Bank Kalispell, Montana |