**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| FTX TRADING LTD. and MACLAURIN INVESTMENTS LTD., | |
| Plaintiffs, | |
| -against- | |
| LOREM IPSUM UG, PATRICK GRUHN, ROBIN MATZKE, and BRANDON WILLIAMS, | |
| Defendants. | Adv. Pro. No. 23-50437 (JTD) |

**BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT FILED BY
DEFENDANTS PATRICK GRUHN, ROBIN MATZKE, AND LOREM IPSUM UG**

#12483974v11\031263\0002

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL SUMMARY ......................................................................................4

III.    STANDARD FOR DISMISSAL .........................................................................8

IV.     ARGUMENT .....................................................................................................10

    A.    This Court Lacks Subject Matter Jurisdiction Over the Adversary Proceeding. 10

    B.    The Claims Under Sections 547 and 548 of the Bankruptcy Code Against Matzke and Lorem Ipsum Must Be Dismissed Because Those Statutes Cannot be Exercised Extraterritorially. ...............................................................................12

        1.    Relevant Facts Assumed to be True for This Argument.........................13

        2.    Counts 1, 2, and 3 as Against Matzke and Lorem Ipsum Fail. ..............15

    C.    The Claims against the LI Defendants Must Be Dismissed as They Are Not Plead in Conformance with the Pleading Requirements of Federal Rules 8 and 9. .....20

    D.    The LI Defendants Are Not Transferees or are Subsequent Transferees That Took in Good Faith. ....................................................................................................25

    E.    The Issuance of New Stock is Not a Transfer of a Debtor's Interest in Property.26

    F.    The Breach of Fiduciary Duty Claims Against Gruhn and Matzke Are Legally Deficient, and Must be Dismissed. ..................................................................30

        1.    The Breach of Fiduciary Duty Claim Fails Because Under Antiguan Common Law and the IBCA, Only Officers and Directors Owe Fiduciary Duties to FTXT. ................................................................................32

        2.    The Alleged Facts Do Not Support a Claim for Breach of Fiduciary Duty Based on FTXT's Transfer of Funds to Kephas. ....................................34

        3.    The Alleged Facts Do Not Support a Claim for Breach of Duty Based on DAAG's Contractual Payments to Mohammad Dastmaltchi. ................37

V.      CONCLUSION .................................................................................................38

DOCS_DE:245545.1 53169/001

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 31 Tozer Rd., LLC*,
No. 17-CV-10013-IT, 2018 WL 340028 (D. Mass. Jan. 9, 2018)...........................................28

*In re Ampal-Am. Israel Corp.*,
562 B.R. 601 (Bankr. S.D.N.Y. 2017).....................................................................................15

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)..................................................................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................................7

*In re Bankr. Estate of Norske Skogindustrier ASA*,
629 B.R. 717 (Bankr. S.D.N.Y. 2021).......................................................................................9

*Barnhill v. Johnson*,
503 U.S. 393 (1992)..................................................................................................................29

*Bonded Financial Serv., Inc. v. European American Bank*,
838 F.2d 890 (7th Cir.1988) .....................................................................................................25

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)..............................................................................................8, 12

*Butner v. United States*,
440 U.S. 48 (1979).....................................................................................................................29

*Cede & Co. v. Technicolor, Inc.*,
634 A.2d 345 (Del. 1993...........................................................................................................30

*In re Chase & Sanborn Corp.*,
813 F.2d 1177 (11th Cir. 1987) ...............................................................................................27

*In re CIL Ltd.*,
582 B.R. 46 (Bankr. S.D.N.Y. 2018).......................................................................................15

*In re Cred Inc.*,
650 B.R. 803 (Bankr. D. Del. 2023) ................................................................... *passim*

*In re Curry & Sorensen, Inc.*,
57 B.R. 824 (B.A.P. 9th Cir. 1986)......................................................................................26, 27

DOCS_DE:245545.1 53169/001

*In re DBSI, Inc.*,
   477 B.R. 504 (Bankr. D. Del. 2012) ...................................................................24

*de Fontbrune v. Wofsy*,
   838 F.3d 992 (9th Cir. 2016) .........................................................................32

*Decker v. Advantage Fund, Ltd.*,
   362 F.3d 593 (9th Cir. 2004) .........................................................................26

*Diehl-Guerrero v. Hardy Boys Constr., LLC*,
   No. CV N16C-08-041 CLS, 2017 WL 1162947 (Del. Super. Ct. Mar. 27,
   2017) ..................................................................................................30

*In re Estate of Midland Euro Exch. Inc.*,
   347 B.R. 708 (Bankr. C.D. Cal. 2006)................................................................15

*In re Factory 2–U Stores, Inc.*,
   No. 04-1011 PJW, 2007 WL 2698207 (Bankr. D. Del. Sept. 11, 2007) ...............................25

*In re FAH Liquidating Corp.*,
   572 B.R. 117 (Bankr. D. Del. 2017) ..................................................................16

*Ferrostaal, Inc. v. M/V Sea Phoenix*,
   447 F.3d 212 (3d Cir. 2006).........................................................................32

*In re French*,
   440 F.3d 145 (4th Cir. 2006) .........................................................................16

*G & G Prods. LLC v. Rusic*,
   902 F.3d 940 (9th Cir. 2018) .........................................................................32

*Grassmueck v. Barnett*,
   281 F. Supp. 2d 1227 (W.D. Wash. 2003)..............................................................18

*Grupo Protexa, S.A. v. All Am. Marine Slip, a Div. of Marine Off. of Am. Corp.*,
   20 F.3d 1224 (3d Cir. 1994)........................................................................32

*Heng Ren Invs. LP v. Sinovac Biotech Ltd.*,
   542 F. Supp. 3d 59 (D. Mass. 2021) ..................................................................31

*In re Insys Therapeutics, Inc.*,
   No. 19-11292 (JTD), 2021 WL 5016127 (Bankr. D. Del. Oct. 28, 2021)...............................23

*JLL Consultants, Inc. v. Gothner (In re AgFeed USA, LLC)*,
   546 B.R. 318 (Bankr. D. Del. 2016) ..................................................................23

*KDI v. Former Shareholders of Labtron of America*,
    536 F.2d 1146 (6th Cir.1976) ......................................................................27

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013)....................................................................................17

*LMS Commodities DMCC v. Libyan Foreign Bank*,
    No. 1:18-CV-679-RP, 2019 WL 1925499 (W.D. Tex. Apr. 30, 2019) ..................................32

*In re Lyondell Chem. Co.*,
    543 B.R. 127 (Bankr. S.D.N.Y. 2016)...........................................................16

*Mann v. LSQ Funding Grp., L.C.*,
    71 F.4th 640 (7th Cir. 2023) ...............................................................26, 27

*Microsoft Corp. v. AT & T Corp.*,
    550 U.S. 437 (2007)....................................................................................14

*In re Mid-Am. Petroleum, Inc.*,
    71 B.R. 140 (Bankr. N.D. Tex. 1987)...........................................................28

*In re Milestone Educ. Inst., Inc.*,
    167 B.R. 716 (Bankr. D. Mass. 1994) .........................................................10

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)....................................................................................17

*In re NewStarcom Holdings, Inc.*,
    547 B.R. 106 (Bankr. D. Del. 2016) ............................................................30

*In re Opus E., LLC*,
    528 B.R. 30 (Bankr. D. Del. 2015) ..............................................................20

*In re Our Alchemy, LLC*,
    No. 16-11596 (KG), 2019 WL 4447545 (Bankr. D. Del. Sept. 16, 2019) ............................23

*In re PennySaver USA Publ'g, LLC*,
    602 B.R. 256 (Bankr. D. Del. 2019) ...........................................19, 20, 21, 22

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019)......................................................................16, 28

*Price v. Gurney*,
    324 U.S. 100 (1945)....................................................................................10

*In re PurchasePro.com, Inc.*,
    332 B.R. 417 (Bankr. D. Nev. 2005) ...........................................................28

#12483974v11\031263\0002

*RJR Nabisco, Inc. v. Eur. Cmty.*,
    579 U.S. 325 (2016) ........................................................................................14, 15, 17

*In re Roco Corp.*,
    701 F.2d 978 (1st Cir. 1983) ..............................................................................28

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    513 B.R. 222 (S.D.N.Y. 2014) ..........................................................................15

*Sec. Inv. Prot. Corp. v. Madoff Inv. Sec. LLC*,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ..............................................................16

*In re Sherwood Invs. Overseas Ltd., Inc.*,
    No. 615CV1469ORL40TBS, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016) ........15

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ........................................................................................8, 12

*In re TriGem Am. Corp.*,
    431 B.R. 855 (Bankr. C.D. Cal. 2010) ..............................................................28

*TWA Inc. Post–Confirmation Estate v. Marsh USA Inc.*,
    305 B.R. 228 (Bankr. D. Del. 2004) ..................................................................20

*In re USA Detergents, Inc.*,
    418 B.R. 533 (Bankr. D. Del. 2009) ..................................................................31

*In re Valley Media, Inc.*,
    288 B.R. 189 (Bankr. D. Del. 2003) ..................................................................20

*In re Zetta Jet USA, Inc.*,
    624 B.R. 461 (Bankr. C.D. Cal. 2020) ..............................................................15

*In re Zetta Jet USA, Inc.*,
    No. 2:17-BK-21386-SK, 2021 WL 3721477 (Bankr. C.D. Cal. Aug. 17, 2021) ..............16, 28

**Statutes**

11 U.S.C. § 101 ....................................................................................................11

11 U.S.C. § 105 ......................................................................................................1

11 U.S.C. § 541 ................................................................................................16, 28

11 U.S.C. § 547 ......................................................................................... *passim*

11 U.S.C. § 548 ......................................................................................... *passim*

#12483974v11\031263\0002

11 U.S.C. § 550 ..........................................................................................................1, 3, 25

11 U.S.C. § 1112(b) .........................................................................................................10

IBCA ....................................................................................................................... *passim*

IBCA, § 37 .......................................................................................................................29

Antiguan IBCA, § 95 ....................................................................................................4, 29

**Rules**

Fed. R. Bankr. P. 8 ....................................................................................................21, 25

Fed. R. Bankr. P. 7008 ............................................................................................ *passim*

Fed. R. Bankr. P. 7009 ............................................................................................ *passim*

Fed. R. Bankr. P.  7012 ........................................................................................... *passim*

Fed. R. Bankr. P. 9017 .....................................................................................................31

Fed. R. Civ. P. 8 ..................................................................................................... *passim*

Fed. R. Civ. P. 9 ..................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(1) .......................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ...................................................................................................20

Fed. R. Civ. P. 44.1 ...................................................................................................31, 32

#12483974v11\031263\0002

Defendants Patrick Gruhn ("**Gruhn**"), Lorem Ipsum UG ("**Lorem Ipsum**"), and Robin Matzke ("**Matzke**," together with Gruhn, and Lorem Ipsum, "**LI Defendants**"), respectfully submit this memorandum of law ("**Memorandum of Law**") in support of their motion to dismiss with prejudice ("**Motion to Dismiss**") the *Complaint for Avoidance and Recovery of Transfers and Obligations Pursuant to 11 U.S.C. §§ 105, 547, 548, And 550, Breach of Fiduciary Duty Pursuant to Antiguan Common Law and the Antigua International Business Corporations Act, and for Disallowance of Claims Pursuant to 11 U.S.C. § 502(D)* [A.P. No. 1/ D.I. No. 1866] ("**Complaint**"), filed against the LI Defendants, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("**Federal Rules**"), made applicable in the Adversary Proceeding (defined below) through Rule 7012(b)(1) and (6) of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**").

## I.    INTRODUCTION[1]

Stripped of the irrelevant, inflammatory, and inaccurate statements, as well as the inclusion of the unrelated criminal proceedings concerning the Debtors' former principals in sensationalized format, the purpose of the Complaint is simple: to get back the money Plaintiffs paid to the LI Defendants for DAAG commencing more than one year before the Debtors filed for Chapter 11 relief and long before the crypto world imploded. To do this, Plaintiffs string together palpably insufficient legal theories supported by not even bare bones "facts" that fail to establish any claims, let alone viable claims, against the LI Defendants.

The transactions addressed in the Complaint involved Plaintiffs' step-purchase of DAAG, a Swiss company, from the LI Defendants and Williams (the fourth defendant in the Adversary

---

[1]    Capitalized terms used but not defined in this *Introduction* shall have the meanings ascribed to them in this Memorandum of Law.

Proceeding). DAAG was founded by Gruhn, Matzke, and Williams on July 1, 2020. (Complaint, ¶ 20.) DAAG was a European digital assets and derivatives business that provided: (a) technology and a platform to exchange crypto and equity derivatives trading for European institutional and retail investors; (b) single asset derivative contracts linked to equities or crypto assets; and (c) index-based futures contracts. DAAG's Cyprus subsidiary held a license as an investment firm allowing it to provide DAAG's services to all members of the European Union[2] and, thereby opening this market (and its billions in trading) to FTXT.

Pursuant to three separate share purchase agreements entered between October 2020 and November 2021, Maclaurin (then known as Alameda Ventures Ltd.) and FTXT ultimately purchased all the equity in DAAG and its twelve foreign subsidiaries and affiliates. (*Id.*) DAAG was then renamed FTX Europe AG. (*Id.*, ¶¶ 2, 20.) Plaintiffs purchased DAAG due to DAAG's regulatory status and possession of the requisite licenses that would allow FTXT to significantly expand its customer base in the European Economic Area. (*Id.*, ¶¶ 3, 36, 37.)

Plaintiffs considered this to be very valuable and, accordingly, under the three SPAs Maclaurin (as to SPA 1 and SPA 2) and FTXT (as to SPA 3) agreed to pay present and future consideration valued in total at $376,200,000. (*Id.*, ¶¶ 58, 61, 63.) Despite having purchased DAAG and having obtained all the benefits the DAAG license and expanded business offered by DAAG's capabilities, FTXT and Maclaurin failed to pay the LI Defendants all the contractually obligated consideration required under SPA 3 before the Debtors filed for bankruptcy protection.[3]

---

[2] This description comes from the *Motion of Debtors for Entry of Orders (I)(A) Approving Bid Procedures, Stalking Horse Protections and the Form and Manner of Notices for the Sale of Certain Businesses, etc.* [D.I. No. 233.]

[3] This assumes the allegations cited in the Complaint are true (they are not in most places); the LI Defendants concede none of Plaintiffs' allegations and reserve all rights, claims, and arguments thereto.

As a result, the LI Defendants filed proofs of claim in the Debtors' bankruptcy cases in the total liquidated amount of $95,413,938.75, representing the difference between the actual consideration paid by Plaintiffs and the amount still owed.

Plaintiffs now assert they overpaid for their acquisition of DAAG. In particular, they assert, among other allegations, the purchase price Plaintiffs agreed to, and the partial payments and other consideration they did actually transfer to the LI Defendants, were not reasonably equivalent to the value of DAAG. Based on this assertion, Plaintiffs seek to avoid all transfers made in connection with the latter two SPAs (SPA 2 and SPA 3) pursuant to sections 547(b) and 548(a)(1)(A) and (B) of the Bankruptcy Code and recover the value of such avoided transfers from the LI Defendants under section 550 of the Bankruptcy Code.

The overarching problem with the Complaint is that this Court lacks the jurisdiction to hear it. Plaintiffs were placed into Chapter 11 without the requisite corporate authority, which deprives this Court *ab initio* of subject matter jurisdiction, mandating dismissal of both the Complaint and Adversary Proceeding, as well as FTXT's and Maclaurin's chapter 11 case.

Assuming, arguendo, that the Court has subject matter jurisdiction, these statutory claims fail, in part, because (a) sections 547 and 548 of the Bankruptcy Code cannot be exercised extraterritorially against Matzke, a German resident and citizen, and Lorem Ipsum, a German entity based in Germany; (b) the allegations of constructive and actual fraud, and preferential transfers do not meet the pleading requirements of Federal Rules 8 and 9 (Bankruptcy Rules 7008 and 7009); (c) the LI Defendants were the subsequent transferee of these transfers and they took for value, in good faith, and without knowledge of the transfers' voidability; (d) the issuance of new stock (one of the forms of consideration under the SPAs) is not a transfer of a debtor's property

or interest in such property; and (e) Plaintiffs were not insolvent at the time of, or rendered insolvent by, the SPA transactions, a necessary predicate for liability here.

Plaintiffs also assert that both Gruhn and Matzke breached fiduciary duties owed to FTXT under Antiguan common law and Section 95 of the Antiguan International Business Corporations Act ("**IBCA**")[4]. FTXT presumably relies on Antiguan law because FTXT is organized under the laws of Antigua. (Complaint, ¶14.) This claim fails because Gruhn and Matzke were never officers or directors of FTXT– nor do the Plaintiffs allege they were – and; thus, they did not owe FTXT any fiduciary duties under Antiguan common law and/or the IBCA. In addition, this claim fails because the facts alleged, even if true, do not support a claim for breach of fiduciary duty against Gruhn or Matzke.

## II.    FACTUAL SUMMARY[5]

Pursuant to the three separate share purchase agreements (each an "**SPA**") entered between October 2020 and November 2021, Maclaurin Investments Ltd ("**Maclaurin**") and FTX Trading Ltd. ("**FTXT**," and together with Maclaurin, each a "**Plaintiff**" and jointly "**Plaintiffs**") ultimately purchased all the equity in Digital Assets DA, AG ("**DAAG**"), a Swiss Company. (Complaint, ¶ 20.) As a result, Plaintiffs also obtained ownership of DAAG's interest in twelve foreign

---

[4]    Relevant excerpts of the IBCA are attached to the *Declaration of Craig L. Jacas* submitted with this Memorandum of Law. The complete IBCA can be found at: efaidnbmnnnibpcajpcglclefindmkaj/http://www.sice.oas.org/investment/NatLeg/ANB/InternalBusinessCo_e.pdf.

[5]    Specific facts alleged in the Complaint relevant to each argument for dismissal of a claim are set forth below in each argument. The specific and general facts stated in the Complaint are only accepted as true for purposes of the Motion to Dismiss and this Memorandum of Law, as that is the applicable standard. The LI Defendants reserve the right to challenge the veracity and truthfulness of all allegations of the Complaint, including the amount, timing, and existence of the transfers.

subsidiaries and affiliates. (*Id*.)[6] The three SPAs are referred to as SPA 1, SPA 2, and SPA 3. (*Id*., ¶ 49.)[7]

SPA 1 was executed on October 25, 2020. (*Id*., ¶ 49.) Under SPA 1, Maclaurin acquired 5% of the equity in DAAG for $700,000. (*Id.*, ¶¶ 56, 57, 58, 61, 64.) Plaintiffs do not seek to avoid the transaction consummated under SPA 1.

A version of SPA 2 was originally signed on June 29, 2021. (*Id.*, ¶ 61, fn. 6.) A revised version was executed on July 2, 2021. (*Id*., ¶ 49.) Under SPA 2, Maclaurin acquired 15% of the equity interest in DAAG for $55,500,000, paid equally to the three sellers, Gruhn, Lorem Ipsum, and Brandon Williams ("**Williams**," and together with the LI Defendants, "**Defendants**"). (*Id*., ¶ 61.) On June 29, 2021, Maclaurin transferred USDC[8] valued at $18,500,000 from its primary exchange account to both Williams and Matzke. (*Id*.) On July 1, 2021, Maclaurin wired $18,500,000 to Gruhn. (*Id*.)

SPA 3 was executed on November 14, 2021. (*Id*., ¶ 49.) Under SPA 3, FTXT acquired the remaining 80% of DAAG from Gruhn, Lorem Ipsum, and Williams for a then present and future consideration package worth up to $320,000,000. (*Id.*, ¶ 63.) Of the total consideration package, $166,666,656.26 was due in cash at closing. (*Id*.) From the cash paid at closing, Williams was to receive $83,333,312.50, and Gruhn and Lorem Ipsum each were to receive $41,666,671.88. (*Id*.,

---

[6]    Exhibit A to SPA 3 identifies the subsidiaries as having been formed in Switzerland, Austria, United Arab Emirates, Liechtenstein, Ireland and Germany.

[7]    A copy of each SPA and amendments is included in the *Appendix to Motion to Dismiss Complaint by Defendants Patrick Gruhn, Robin Matzke, and Lorem Ipsum, UG* ("**Appendix**" or "**App.**"). *See* App. at tabs 1, 2, 3, and 4.

[8]    USDC refers to a USD Coin, which is a digital cryptocurrency stablecoin pegged to the value of the United States dollar and is available on several blockchains. *See*, *generally*, https://www.circle.com/en/usdc.

¶ 67.) The remaining purchase price for Gruhn and Lorem Ipsum was structured as contingent earn-out payments payable upon achieving specific milestones. (*Id.*, ¶¶ 63, 68.) In summary, the earn-out payments were:

    (i)    A bonus payment of $33,333,337.50 to Gruhn and the transfer of 228,874 common shares of FTXT to Gruhn and 1,144,373 common shares of FTXT to Lorem Ipsum if, within one year of the closing date, Gruhn and Lorem Ipsum bought or entered into a relationship to buy a contracts-for-differences (CFD) broker that was licensed and had the necessary permits to solicit and service customers in the European Economic Area;

    (ii)    A bonus payment of $5 million to Gruhn and Lorem Ipsum each upon obtaining regulatory approval for DAAG to actively solicit and provide retail and professional customers in the European Economic Area under the "FTX" brand; and

    (iii)    A bonus payment of $30,000,000 each to Gruhn and Lorem Ipsum to be paid over a period of four years in eight equal payments commencing six months after both the first two milestones were achieved, subject to Gruhn's and Matzke's continued employment with FTXT or one of its affiliates.

(*Id.*, ¶ 68(i)-(iii); SPA 3, ¶ 3(b).) Plaintiffs admit that each of the above milestones was met. (*Id.,* ¶¶ 95-97.) As set out above and more fully below, neither Gruhn nor Matzke were *ever* employees of FTXT. Matzke was employed by a European affiliate for a period of time. Gruhn was never employed by FTXT or any of its affiliates.

    After closing on SPA 3, Maclaurin owned 20% of DAAG's equity and FTXT owned the other 80%. On November 16, 2021, FTXT acquired from Maclaurin its 20% equity interest in DAAG for $62,500,000, the result of which was FTXT became the *sole* owner of DAAG. (*Id.*, ¶70.)[9]

---

[9]    Under SPA 1 and SPA2, Maclaurin purchased 20% of DAAG's equity for $56,200,000. FTXT's purchase of this interest for $62,500,000 resulted in a profit of $6,300,000 to Maclaurin. Maclaurin's creditors were better off as a result of these transactions.

As identified in Exhibit A to the Complaint, Plaintiffs seek to avoid the following transfers that they assert were made to the LI Defendants in connection with SPA 2 and SPA 3:

| LI Defendant | Relevant Contract (Date Incurred) | Type of Interest | Amount of Transfer | Amount of Obligation Remaining |
|---|---|---|---|---|
| Patrick Gruhn | SPA 2 (July 2, 2021) | Cash | $18,500,000 | $0 |
| Patrick Gruhn | SPA 3 (November 14, 2021) | Cash | $83,750,009.38 | $26,250,000 |
| Patrick Gruhn | SPA 3 (November 14, 2021) | Shares | $8,333,316.17 | $0 |
| Robin Matzke/Lorem Ipsum UG | SPA 2 (July 2, 2021) | USDC | $18,500,000 | $0 |
| Robin Matzke/Lorem Ipsum UG | SPA 3 (November 14, 2021) | Cash and USDC | $50,416,671.88 | $26,250,000 |
| Robin Matzke/Lorem Ipsum UG | SPA 3 (November 14, 2021) | Shares | $41,666,690.07 | $0 |

As more fully set forth below, Plaintiffs have failed, as a matter of law, to plead plausible grounds to avoid these transfers, and those claims must be dismissed.

### III.    STANDARD FOR DISMISSAL

To survive a motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As this Court previously observed, a claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Cred Inc.*, 650 B.R. 803, 813 (Bankr. D. Del. 2023) (internal citations and quotations omitted) (dismissing fraudulent transfer claims under the *Iqbal* standards). The possibility of relief is not enough; a complaint must do more than allege the plaintiff's entitlement

to relief, it must "*show* such an entitlement with its facts." *Id.* (emphasis added) (internal citations and quotations omitted).

Under the preceding articulated standard of analysis, this Court is tasked here with separating (and not considering) the legal conclusions (and inflammatory and irrelevant noise) from any well-pled facts stated in the Complaint. *Id.* Similarly, conclusory allegations, even if framed as facts, that lack foundational support are not entitled to the presumption of truth and need not be considered in the plausibility analysis. *Id.*

When ruling on a motion to dismiss, a court may rely on documents attached as exhibits or incorporated into a complaint by reference and matters of which a court may take judicial notice, including matters of public record, orders, and items appearing in the record of the case. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *In re Cred*, 650 B.R. at 820. Moreover, a court may consider "documents integral to or explicitly relied upon in the complaint, or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Cred*, 650 B.R. at 820 (internal quotations and citations omitted). As such, a plaintiff cannot prevent a court from looking at the text of the documents on which its claim is based by failing to attach or explicitly cite them. *In re Burlington Coat Factory*, 114 F.3d at 1426. Further, to extent Plaintiffs rely on general allegations in attempt to support their claims, the law is clear where they contradict, the Court looks to specific allegations:

> While "in connection with a Rule 12(b)(6) motion to dismiss, all facts alleged in the complaint must be accepted as true . . . a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are *contradicted either by statements in the complaint itself or by documents upon which its pleadings rely*, or by facts of which the court may take judicial notice." Nevertheless, "*specific allegations*

*that directly contradict general allegations will generally control.*"
*Accordingly, where the Plaintiff's specific allegations contradict*
*more general allegations, the Court considers the Plaintiff's specific*
*allegations to control.*

*In re Bankr. Estate of Norske Skogindustrier ASA*, 629 B.R. 717, 737 (Bankr. S.D.N.Y.

2021) (emphasis added; internal citations omitted).

Here, the Complaint contains a litany of inflammatory, unsubstantiated, irrelevant, and

conclusory statements about matters wholly unrelated to the claims asserted against the LI

Defendants by Plaintiffs. When the distractions are stripped away, the noise is muted, and the focus

is directed to the alleged facts that relate to and are intended to actually establish the basis for

Plaintiffs' claims, it becomes apparent that the allegations largely lack foundational support and,

instead, are conclusory allegations aimed at creating a self-serving, but incorrect, narrative for

Plaintiffs (and the other entities in the above-captioned jointly-administered Chapter 11

proceedings, collectively "**Debtors**") that fails to actually state any plausible claims for relief.

Because pointing out all such deficiencies would not be constructive here (nor even possible with

the allotted briefing limitations), the LI Defendants will set forth below the actually relevant

allegations to this dispute.

Under the above-stated standards for dismissing claims under Federal Rules 12(b)(1) and

(6) (Bankruptcy Rules 7012(b)(1) and (6)) the Complaint must be dismissed as to the LI

Defendants.

## IV.    ARGUMENT

### A.    This Court Lacks Subject Matter Jurisdiction Over the Adversary Proceeding.

As a gating issue, the above-captioned adversary proceeding ("**Adversary Proceeding**")

should be dismissed because this Court lacks subject matter jurisdiction over the bankruptcy cases

of both Plaintiffs, FTXT and Maclaurin. As the Court is aware, on November 11, 2022, FTXT and Maclaurin filed their voluntary petitions ("**Petitions**") [D.I. No. 1] for relief under the Bankruptcy Code with this Court. The Petitions were signed by: (a) John J. Ray III ("**Ray**") as the Chief Executive Officer of FTXT and Maclaurin; and (b) Adam G. Landis of the law firm Landis Rath & Cobb LLP, as their attorney. (*Id.*) Neither of them had the requisite corporate authority to file the Petitions.

FTXT is a corporation formed and registered in Antigua and Barbuda. (Complaint, ¶14.) Maclaurin is a corporation registered in Seychelles. (Complaint, ¶ 15.) To determine whether Ray had proper authority to file the Petition, the Court must look to the formation and governing documents for FTXT and Maclaurin, in light of the law of those jurisdictions, here, respectively, Antiguan common law and the law of Seychelles. *In re Milestone Educ. Inst., Inc.*, 167 B.R. 716, 720 (Bankr. D. Mass. 1994) ("the authority to file a bankruptcy petition depends upon the corporate documents and state law") (collecting cases.) Under FTXT's and Maclaurin's governing documents and applicable non-bankruptcy law, Ray did not have the authority to file the Petitions. Accordingly, pursuant to *Price v. Gurney*, 324 U.S. 100 (1945) and section 1112(b) of the Bankruptcy Code, the chapter 11 proceedings of FTXT and Maclaurin must be dismissed; and by extension so must this Adversary Proceeding under Federal Rule 12(b)(1) (Bankruptcy Rule 7012(b)(1)) because the Court lacks subject matter jurisdiction.[10]

---

[10]  The LI Defendants incorporate, as if fully set forth in this Memorandum of Law, their arguments stated in the *Motion to Dismiss Bankruptcy Case of FTX Trading, Ltd*. and *Motion to Dismiss Bankruptcy Case of Maclaurin Investments Ltd.*, filed in the Debtors' above-captioned jointly administered chapter 11 cases, which is included in the Appendix. *See* App. at tabs 5 and 6.

**B.    The Claims Under Sections 547 and 548 of the Bankruptcy Code Against Matzke and Lorem Ipsum Must Be Dismissed Because Those Statutes Cannot be Exercised Extraterritorially.**

Plaintiffs assert claims against Matzke and Lorem Ipsum seeking to avoid alleged preferential transfers under section 547(b) of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, ("**Bankruptcy Code**") and alleged fraudulent transfers and obligations under section 548(a)(1) of the Bankruptcy Code. (Complaint, Count One, ¶¶ 108 – 110; Count Two, ¶¶ 112 – 115; Count Three, ¶¶ 116 – 128.) As disclosed in the Complaint and Exhibit A to the Complaint, Plaintiffs seek to avoid the following alleged transfers to Matzke and Lorem Ipsum:

| Date Obligation Incurred and Source | Date Of Transfer [11] | Alleged Transferor[12] | Transferee | Amount | Obligation Remaining | Property Interest Transferred |
|---|---|---|---|---|---|---|
| July 2, 2021 (SPA 2) | June 29, 2021 | Alameda Ventures exchange account | Robin Matzke FTX.com account | $18,500,000.00 | $0.00 | USDC |
| November 14, 2021 (SPA 3) | November 23, 2021 | FTX Trading | Robin Matzke/Lorem Ipsum | $50,416,671.88[13] | $26,250,000.00 | Cash and USDC |
| November 14, 2021 (SPA 3) | Between January 1, 2022, and | FTX Trading | Lorem Ipsum | $41,666,690[14] | $0.00 | Shares[15] |

---

[11]    The transfer dates are as set forth in the Complaint. (*Id.*, ¶¶ 61, 67, and 97.)

[12]    The transferors are not identified on Exhibit A to the Complaint, but have been loosely asserted without specificity in the Complaint. (*See e.g., id.*, ¶¶ 5, 42.)

[13]    Exhibit A to the Complaint states that cash and USDC in the total amount of $50,416,671.88 was transferred to Matzke on November 23, 2021 and that $26,250,000.00 remains due and owing. The body of the complaint states that "Matzke, via Lorem Ipsum, was owed $41,666,671.88 under the Cash Component [of SPA 3], and he received $26,666,671.88 on November 23, 2021." (*Id.*, ¶ 67.) That would leave a remaining obligation of $15,000,000.00. But the complaint alleges this was also paid: $14,990,900 in USDC was supposedly transferred to Matzke's personal FTX.com exchange account on November 23, 2021, and $100 in USDC was transferred to the account on November 19, 2021. (*Id.*) The transfers alleged in Complaint ¶ 67 total $41,697,671.88, which is $8,759,000.00 less than the total of the supposed transfers to Matzke identified on Exhibit A to the Complaint.

[14]    The Debtors allege 1,144,373 shares of common stock were issued to Lorem Ipsum. (Complaint, ¶ 96.) Neither SPA 3 nor any other documents ascribes a value to these shares; yet, without any indication of the source or date of the valuation, Plaintiffs value these shares at $41,666,690.07, or $36.41/share.

[15]    It is unclear if Plaintiffs contend these shares were actually issued or if the LI Defendants merely became entitled to receive them. Exhibit A to the Complaint seeks to avoid the transfer of these shares,

#12483974v11\031263\0002

| Date Obligation Incurred and Source | Date Of Transfer [11] | Alleged Transferor [12] | Transferee | Amount | Obligation Remaining | Property Interest Transferred |
|---|---|---|---|---|---|---|
| | October 5, 2022 | | | | | |

These claims seek to avoid transfers that are wholly foreign in all respects; and, thus must be dismissed because sections 547 and 548 of the Bankruptcy Code cannot be exercised extraterritorially. Matzke is a German resident and citizen. Lorem Ipsum is a German entity based in Germany. Counts 1, 2, and 3 fail as to Matzke and Lorem Ipsum.

**1.    Relevant Facts Assumed to be True for This Argument.**

With respect to Section IV(B), in addition to the facts set forth above in this Memorandum of Law, the Court should assume the following relevant facts, either alleged in the Complaint or found in outside matters that the Court can properly consider[16] (*e.g.*, other filings in the Debtors' chapter 11 proceeding), are true:

a.     FTXT is a corporation registered in Antigua and Barbuda. Its principal place of business was in Nassau, Bahamas. (Complaint, ¶ 14.)

b.     Maclaurin is a corporation registered in Seychelles. (*Id.*, ¶ 15.)

c.     Lorem Ipsum is a German holding company controlled by Matzke as its sole director and shareholder. (*Id.*, ¶ 16.)

d.     Matzke is a citizen and resident of Germany. (*Id.*, ¶ 18.)

---

making it appear Plaintiffs assert the shares were issued. The body of the Complaint states that the LI Defendants "became entitled to receive over $103 million in cash, of which they actually received at least $50.8 million, plus 1,373,247 shares of FTX Trading common stock valued at an additional $50 million." It is unclear if the reference to what was "actually received" is only to the cash component, or also refers to the "plus 1,373,247 shares of FTX Trading common stock." (*Id.*, ¶ 96.) Later, the Complaint alleges the shares were transferred. (*Id.*, ¶ 118.)

[16]    *Tellabs*, 551 U.S. at 322; *In re Burlington Coat Factory*, 114 F.3d at 1426; *In re Cred*, 650 B.R. at 820.

e.      FTXT and its foreign subsidiaries and affiliates, including DAAG, collectively did business as "FTX.com" and operated a digital asset trading exchange. (*Id.*, ¶ 14.)

f.      FTX.com only did business in non-U.S. jurisdictions and was only available to foreign customers; it was not available to U.S. users. *See Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. No. 24] ("**Ray Dec.**"), ¶ 9 (FTX.com did business in "non-U.S. jurisdictions"); ¶ 33 ("The FTX.com platform is not available to U.S. users.")[17]

g.      FTXT transferred the $26,666,671.88 cash payment due to Lorem Ipsum under SPA 3 from its bank account to Lorem Ipsum's bank account at Landesbank Berlin in Germany. (*Id.*, ¶ 98; SPA-3, ¶ 5 chart).[18]

h.      As part of the earn-out consideration, FTXT, as the purchaser under SPA 3, was required to "issue and grant" 1,144,373 common shares" of FTXT to Lorem Ipsum. (SPA-3, ¶ 3(b) and Exhibit B, thereto.) Plaintiffs assert these shares were issued "between January 1, 2022 and October 5, 2022." (Complaint, ¶¶ 97, 118.)

i.      The two actions Matzke and/or Lorem Ipsum were to take to become entitled to the earnout payments were actions to be taken in Europe. For instance, buying or entering into a relationship to buy a contracts-for differences (CFD) broker that was licensed and had the necessary permits to solicit and service customers in the European Economic Area, including Germany, was an action in Europe. (SPA-3, ¶ 3(b)a; Complaint, ¶¶ 68, 85 – 87, 89, 92 – 95.) The

---

[17]   As identified by Ray, the U.S. operations of the FTX debtors are organized within the WRS Silo. The Dotcom Silo includes the debtor FTX Trading and its debtor and non-debtor subsidiaries, "including the exchanges doing business as 'FTX.com' and similar exchanges in non-U.S. jurisdictions." *Id.*, ¶ 9.

[18]   SPA 3 reflects the cash payment would be paid to a Lorem Ipsum identified account.

second milestone, obtaining regulatory approvals for the CFD broker to actively solicit and actually provide retail and professional customers in the European Economic Area (including Germany), under the FTX brand, also involved actions in Europe. (SPA-3, ¶ 3(c); Complaint, ¶ 101 –102.)[19]

    j.    Certain payments under SPA 3 were contingent on Matzke's continued employment. (SPA 3 ¶ 4; Complaint, ¶ 65.) Under his employment agreement Matzke was employed by FTX Trading GmbH ("**FTX Germany**") as the head of legal for FTX Europe. (*Id.*, ¶¶ 18, 65.)

**2.**    **<u>Counts 1, 2, and 3 as Against Matzke and Lorem Ipsum Fail.</u>**

Plaintiffs' claims against Matzke and Lorem Ipsum seeking to avoid alleged preferential and fraudulent transfers under sections 547(b) and 548(a)(1) of the Bankruptcy Code fail and must be dismissed because sections 547 and 548 of the Bankruptcy Code cannot be exercised extraterritorially against Matzke and Lorem Ipsum; respectively, a German citizen/resident and German entity.

It is a basic premise of our legal system that, in general, "United States law governs domestically but does not rule the world." *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 454 (2007). There is a presumption that absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application. *RJR Nabisco, Inc. v. Eur. Cmty.*,

---

[19]    Plaintiffs admit as much. The CFD broker was K-DNA Financial Services Ltd., an entity incorporated in Cyprus and licensed by the Cyprus Securities and Exchange Commission ("**CySEC**") to operate as a Cyprus investment firm. (Complaint, ¶¶ 6, 85.) The funds to acquire K-DNA were paid by the Swiss company DAAG after it had been purchased by FTXT and changed its name to FTX Europe AG. (*Id.*, ¶ 90.) The original contract to purchase K-DNA was in Matzke's name, but later assigned by him to FTX Europe AG, a Swiss entity. (*Id.*, ¶¶ 86, 93, 95, 96.) Because K-DNA had the necessary licenses to operate in the European Economic Area, the assignment triggered earnout payments. (*Id.*, ¶ 95.)

579 U.S. 325, 335 (2016). "The question is not whether a court thinks 'Congress would have wanted' a statute to apply to foreign conduct 'if it had thought of the situation before the court' but whether Congress has 'affirmatively and unmistakably instructed that the statute will do so.'" *Id.*, quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). "When a statute gives no clear indication of an extraterritorial application, ***it has none***." *Id.* (emphasis added).

The Supreme Court has announced a two-step framework for analyzing extraterritoriality issues. First, a court should analyze whether "the presumption against extraterritoriality has been rebutted—that is whether the statute provides a clear, affirmative indication that it applies extraterritorially." *Id.* at 2101. Second, a court should examine a statute's "focus" to determine whether the case involves a domestic application of the statute. *Id.* If the relevant conduct occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the relevant conduct occurred in a foreign country, then the case involves an impermissible extraterritorial application even though some conduct occurred in the United States. *Id.*

As the court in *In re Zetta Jet USA* noted, the majority of courts that have considered the issue have determined there is no clear, affirmative indication that Congress intended either section 547 or section 548 of the Bankruptcy Code to apply extraterritorially. *In re Zetta Jet USA, Inc.*, 624 B.R. 461, 476 (Bankr. C.D. Cal. 2020).[20] The *Zetta Jet* court thoroughly and exhaustively

---

[20] As the majority, *Zetta Jet* cites *In re Estate of Midland Euro Exch. Inc.*, 347 B.R. 708 (Bankr. C.D. Cal. 2006) (declining to apply § 548 extraterritorially); *In re Sherwood Invs. Overseas Ltd., Inc.*, No. 615CV1469ORL40TBS, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016) (same); *In re CIL Ltd.*, 582 B.R. 46 (Bankr. S.D.N.Y. 2018) (same); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014), *rev'd on other grounds*, 917 F.3d 85 (2d Cir. 2019) (same); *In re Maxwell Commc'n Corp. plc*, 186 B.R. 807 (S.D.N.Y. 1995) (declining to apply § 547 extraterritorially); *In re Ampal-Am. Israel Corp.*, 562 B.R. 601 (Bankr. S.D.N.Y. 2017) (declining to apply § 547 extraterritorially).

analyzed both the majority view and the minority view, and it concluded that the reasoning of the

lead minority case, *In re French*, was "convoluted" and "hard to follow."[21] It therefore agreed

with the majority view: if Congress "clearly," "affirmatively," and "unmistakably" intended

sections 547 and 548 of the Bankruptcy Code to apply extraterritorially, it would have expressed

its intent in a clear way. *Id.* at 478. As the Supreme Court has noted, "[w]hen it desires to do so,

Congress knows how to place the high seas within the jurisdictional reach of a statute." *Argentine

Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 440 (1989). So, too, here: if Congress

wanted to include foreign transactions within the reach of sections 547 and 548 of the Bankruptcy

Code it could have done so. It did not. This Court should follow the majority view and conclude

that neither section 547 nor section 548 of the Bankruptcy Code apply extraterritorially.

The Court here must then consider the second prong of the analysis, and determine

whether, based on the "focus" of sections 547 and 548 of the Bankruptcy Code, Plaintiffs' claims

in this case involve a domestic application of the statutes. The focus of sections 547 and 548 of

the Bankruptcy Code is "the transfer or obligation that *depletes* the estate." *In re Zetta Jet USA,

Inc.*, No. 2:17-BK-21386-SK, 2021 WL 3721477, at *21 (Bankr. C.D. Cal. Aug. 17, 2021) (italics

in original); *accord, In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917

F.3d 85, 98 (2d Cir. 2019) (focus of bankruptcy statute governing liability of transferees on avoided

---

[21]   The minority view is that because property of the estate is defined in section 541(a) of the Bankruptcy
Code to include property "wherever located," then the avoidance of transfers of "of an interest of the
debtor in property" under sections 547and 548 of the Bankruptcy Code must include property
"wherever located," which evidences an intent to have the avoidance statues apply extraterritoriality.
The minority courts ignore that neither section 547 nor section 548 of the Bankruptcy Code contain the
"wherever located" language, and that under section 541(a)(3) property transferred by a debtor
prepetition becomes estate property only *after* it has been recovered by the bankruptcy trustee. The
minority view is stated in *In re French*, 440 F.3d 145 (4th Cir. 2006); *see also In re Lyondell Chem.
Co.*, 543 B.R. 127 (Bankr. S.D.N.Y. 2016); *In re FAH Liquidating Corp.*, 572 B.R. 117 (Bankr. D. Del.
2017); *Sec. Inv. Prot. Corp. v. Madoff Inv. Sec. LLC*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012).

transfers is on the initial transfer because it is the initial transfer, which is the only transfer that involves fraudulent conduct, or any conduct, by a debtor that depletes an estate.)

But, as the Supreme Court has explained, the mere existence of domestic conduct does not mean that a statute is being applied domestically. "[I]f the conduct relevant to the focus [of the statute] occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *RJR Nabisco*, 579 U.S. at 337; *see also Morrison*, 561 U.S. at 266 (stating that the presumption against extraterritoriality would be a "craven watchdog indeed if it retreated to its kennel" whenever some domestic activity is involved); *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124–25 (2013) ("even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application".)

As alleged by Plaintiffs, the relevant transfers to the foreign parties Matzke and Lorem Ipsum ***concern only foreign conduct*** and ***do not have any domestic connection***. To wit:

    a.    Under SPA 2, the June 29, 2021 transfer of USDC stablecoin valued at $18,500,000 was from the exchange account of Maclaurin (a Seychelles company), to Matzke's (German citizen) the FTX.com exchange account, as part payment of Maclaurin's purchase of equity in DAAG (a Swiss company). None of this has any domestic conduct or connections. Further, because FTX.com only did business in non-U.S. jurisdictions and was only available to foreign customers, this transfer both originated and was received outside the U.S.

    b.    Under SPA 3, the November 23, 2021 transfer of $50,416,671.88 in cash and USDC stablecoin was from an Antiguan company, FTXT, to Matzke and Lorem Ipsum (respectively German citizen/entity) as part payment of FTXT's purchase of

equity in DAAG, a Swiss company, and its twelve foreign subsidiaries. The cash component of this transfer, $26,666,671.88, was paid to Lorem Ipsum's bank account at Landesbank Berlin in Germany. Because FTX.com only did business in non-U.S. jurisdictions and was only available to foreign customers, the stablecoin portion of this transfer both originated and was received outside the U.S.

c.      The grant and issuance, between January 1, 2022, and October 5, 2022, of 1,144,373 shares of Antiguan company FTXT's common stock was to German citizen/entity Matzke and/or Lorem Ipsum. These grants would presumably be commenced from FTXT's headquarters in the Bahamas and would be subject to Antiguan law, including the IBCA (*e.g.*, §§ 30 and 31 of the IBCA, governing share issuance), and the articles of incorporation and general by-laws of FTXT.[22] No domestic actors or conduct were involved, and no U.S. laws apply.

d.      There is absolutely nothing domestic about any of the above transfers. Accordingly, (a) because there is no clear, affirmative indication that sections 547 and 548 of the Bankruptcy Code apply extraterritorially, they do not, and (b) because the subject claims do not involve a domestic application of the statutes, the claims against Matzke and Lorem Ipsum under sections 547 and 548 of the Bankruptcy Code must be dismissed.

---

[22]    The Court can take judicial notice of the copies of these documents certified by the office of the Antiguan Financial Services Regulatory Commission included in the Appendix (*see* App. at tabs 7 and 8). *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003) (on motion to dismiss breach of fiduciary duty claim court can take judicial notice of corporation's articles of incorporation certified by public official.)

**C.**    **The Claims against the LI Defendants Must Be Dismissed as They Are Not Plead in Conformance with the Pleading Requirements of Federal Rules 8 and 9.**

Certain of the claims asserted against the LI Defendants under sections 547 and 548 of the Bankruptcy Code must be dismissed because Plaintiffs failed to meet the pleading requirements of Federal Rules 8 and 9 (Bankruptcy Rules 7008 and 7009). Plaintiffs generally allege that certain transfers made to the LI Defendants are voidable under sections 547 and 548 of the Bankruptcy Code. (Complaint, ¶¶ 109, 113, and 121.) However, Plaintiffs fail to provide specific factual information as to many of the transfers they seek to avoid. For example, Plaintiffs assert certain components of the consideration due under SPA 3 (the Bonus Component, Stock Component, Extra Bonus Component, and the first installments of the Additional Cash Component, as defined in SPA 3) "were paid by FTX Trading to Gruhn and Lorem Ipsum between January 1, 2022 and October 5, 2022." (Complaint, ¶ 97.) As more fully addressed below, Plaintiffs do not, however, identify specific transfers within this date range, nor do they state the actual date, amount, or from/to whom the transfers were made, if at all. The Court must dismiss the claims regarding transfers that have been deficiently pled by Plaintiffs.

Federal Rule 8(a)(2) (Bankruptcy Rule 7008(a)(2)) provides that all pleadings must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Each defendant is entitled to know what he or she did that is asserted to be wrongful. *In re PennySaver USA Publ'g, LLC*, 602 B.R. 256, 274 (Bankr. D. Del. 2019). "A complaint based on a theory of collective responsibility must be dismissed." *Id*. Additionally, Federal Rule 9 (Bankruptcy Rule 7009) provides a heightened pleading requirement when alleging fraud (as Plaintiffs do in Count 1 of the Complaint), requiring that a party state with particularity the circumstances constituting the fraud.

To satisfy these requirements and survive a motion to dismiss, a claim for a preferential transfer under section 547 of the Bankruptcy Code must include: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date [of the transfer], (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer." *In re Valley Media, Inc.*, 288 B.R. 189, 192 (Bankr. D. Del. 2003). Merely quoting statutory language—as done by Plaintiffs in the Complaint (*see*, *e.g.*, Complaint, ¶131 (the only mention of the LI Defendants being the "initial transferee" is a simple recitation repeating the statutory predicate, is not properly or independently alleged in the Complaint consistent with the loose pleading in the Complaint)—is insufficient to survive a Federal Rule 12(b)(6) (Bankruptcy Rule 7012(B)(6) motion to dismiss. *Id*. If any one of the factual predicates to an avoidance claim is not adequately pled, then a motion to dismiss may be granted without examination of the statutory elements. *In re PennySaver*, 602 B.R. at 274 (court dismissed preferential transfer claims where debtors failed to identify the transferor precisely by name when multiple debtors were involved.)

Courts have also held that relying on a summary analysis does not meet a plaintiff's burden of establishing what payments are subject to avoidance as preferential payments. *In re Opus E., LLC*, 528 B.R. 30, 94 (Bankr. D. Del. 2015), *aff'd sub nom. In re: Opus E., LLC*, No. 09-12261, 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd sub nom. In re Opus E. LLC*, 698 F. App'x 711 (3d Cir. 2017) (granting motion to dismiss where trustee primarily relied on a summary chart of the transfers that did not identify the specific date any particular transfer but instead gave total amount of transfers per defendant); *see also In re Valley Media, Inc*., 288 B.R. at 192 (dismissing preference complaint which stated only the total amount of preferential transfers and did not identify "each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of

#12483974v11\031263\0002

transferee and (iv) the amount of the transfer."); *TWA Inc. Post–Confirmation Estate v. Marsh USA Inc.*, 305 B.R. 228, 232 (Bankr. D. Del. 2004) (dismissing preference complaint suing for "approximately two million dollars" because it failed to provide the "dates of payment transactions [and] amounts of the payment transactions").

Claims asserted under section 548 of the Bankruptcy Code are likewise evaluated under the pleading standards of Federal Rule 8(a)(2) (Bankruptcy Rule 7008(a)(2)). Whether the claims are based upon actual or constructive fraud, claimants are required to identify with sufficient notice to the opposing party the dates, amounts, source, and transferee of each of the alleged transfers in order to successfully support a fraudulent transfer claim. *In re PennySaver,* 602 B.R. at 266. Claims based on actual fraud, like Count 1 of the Complaint, must also meet the elevated pleading standards of Federal Rule 9(b) (Bankruptcy Rule 7009(b)). *In re Cred*, 650 B.R. at 834.

Plaintiffs' Complaint is wanting in many regards and falls short of complying with the mandates of Federal Rules 8 and 9 (Bankruptcy Rules 7008 and 7009). With regard to Federal Rule 8 (Bankruptcy Rule 7008), Plaintiffs, throughout the Complaint, contend the transfers they seek to avoid are "detailed" and "described" on Exhibit A to (Complaint, ¶ 8, 97), and that Exhibit A specifically describes the dates of the transfers (*id.*, ¶¶ 108, 112). Exhibit A to the Complaint is, however, irredeemably deficient on its face in providing sufficient factual information required under the pleading standard of Federal Rule 8 (Bankruptcy Rule 7008). Specifically, the chart fails to provide the exact amount of each transfer allegedly made—but merely clumps them all together in alleged total transfers, it does not identify the specific transfer dates, nor does it name the transferor of any transfer. Exhibit A in fact only states the dates that obligations were incurred. And Exhibit A does not specifically identify any alleged avoidable transfers for certain of SPA 3 components of consideration, such as the Bonus Component, Extra Bonus Component, and the

#12483974v11\031263\0002

first installments of the Additional Cash Component, even though these are alleged to have been made (*Id.*, ¶ 97.) Finally, in many cases Plaintiffs do not identify from whom the alleged transfer was made, stating only that the transfer was made by "Plaintiffs." (*Id.*, ¶¶ 108, 112, 117, 118.)

Utilizing the unorganized, and generalized allegations in the Complaint, the LI Defendants believe the below reflects the possible transfers at issue. Specifically, the LI Defendants have gleaned the following:

| Date of Transfer | Alleged Transferor | Transferee | Amount of Transfer | Complaint Cite |
|---|---|---|---|---|
| June 29, 2021 | Alameda | Matzke | $18,500,000 USDC | Complaint ¶ 61 |
| July 1, 2021 | Alameda | Gruhn | $18,500,000 | Complaint ¶ 61 |
| November 19, 2021 | Unknown | Matzke | $100 USDC | Complaint ¶ 67 |
| November 23, 2021 | Unknown | Gruhn | $41,666,671.88 | Complaint ¶ 67 |
| November 23, 2021 | Unknown | Matzke | $26,666,671.88 | Complaint ¶ 67 |
| November 23, 2021 | Unknown | Matzke | $14,990,900 USDC | Complaint ¶ 67 |
| Unknown | FTX Trading | Gruhn | $33,333,337.50 | Complaint ¶¶ 68, 96, 97 |
| Unknown | FTX Trading | Gruhn | 228,874 common shares of FTX Trading | Complaint ¶¶ 3, 68, 96, 97 |
| Unknown | FTX Trading | Lorem Ipsum | 1,144,373 common shares of FTX Trading | Complaint ¶¶ 3, 68, 96, 97 |
| Unknown | FTX Trading | Gruhn | Unknown (referred to as the Bonus Component) | Complaint ¶ 68, 96, 97 |
| Unknown | FTX Trading | Gruhn | Unknown (referred to as the Extra Bonus Component) | Complaint ¶¶ 68, 96, 97 |
| Unknown | FTX Trading | Lorem Ipsum | Unknown (referred to as the Extra Bonus Component) | Complaint ¶¶ 68, 96, 97 |
| Unknown | FTX Trading | Gruhn | Unknown (referred to as the first installment of the Additional Cash Component | Complaint ¶¶ 68, 96, 97 |
| Unknown | FTX Trading | Lorem Ipsum | Unknown (referred to as the first installment of the Additional Cash Component | Complaint ¶¶ 68, 96, 97 |

As reflected by this chart, key, required, factual components to support Plaintiffs' claims under sections 547 and 548 of the Bankruptcy Code are missing. Failure to provide these facts alone is clear grounds to dismiss the deficiently pled claims. *In re PennySaver*, 602 B.R. at 274 ("The fact that the exact identity of the Debtor transferor was not alleged is sufficient grounds to

dismiss this claim"); *see also, In re Cred*, 650 B.R. at 834 (failure to provide date or amount of individual transfers is grounds for dismissal of fraudulent transfer claim); *In re Our Alchemy, LLC*, No. 16-11596 (KG), 2019 WL 4447545, at *8 (Bankr. D. Del. Sept. 16, 2019) (complaint which did not identify the number of transfers made, or the specific dates and amounts of those transfers failed to satisfy the heightened pleading standards of Rule 9(b)); *JLL Consultants, Inc. v. Gothner (In re AgFeed USA, LLC)*, 546 B.R. 318, 336 (Bankr. D. Del. 2016) (complaint which failed to allege specific facts relating to the date, the amount, or the transferor of the transfers was insufficient to survive a 12(b)(6) motion).

To add insult to injury, Plaintiffs' allegations respecting solvency are legal conclusions at best, but in reality, just a mere recitation of the statutory elements required for the claims Plaintiffs assert. In fact, the first mention of being insolvent in the Complaint does not come until paragraph 106 of the Complaint (page 32 of 39), which is just a passing sentence meant to comply with sections 547 and 548 of the Bankruptcy Code. But the Court does not need to accept this mere recitation of the Bankruptcy Code masked as an allegation by Plaintiffs. *In re Insys Therapeutics, Inc.*, No. 19-11292 (JTD), 2021 WL 5016127, at *5 (Bankr. D. Del. Oct. 28, 2021) (finding the trustee had failed to plead facts supporting the allegation of insolvency; "the complaint merely recites the language of the statute. This is not enough under Rule 8(a)(2).")

Further, there are no specific allegations in the Complaint that Plaintiffs or, the LI Defendants, knowingly, participated in, assisted, or took any other action or inaction that demonstrates an actual intent to hinder, delay, or defraud creditors. Instead, Plaintiffs rely on the sensationalized criminal proceedings as a means to bootstrap and justify their claims—this is wholly misleading and should not be entertained by the Court in regards to this Adversary Proceeding. Alleging that Bankman-Fried and his associates committed crimes unrelated to

#12483974v11\031263\0002

FTXT's acquisition of DAAG does not satisfy Plaintiffs' pleading burden here. "[E]ven where the plaintiff has alleged the existence of a broad, fraudulent scheme, the court must focus precisely on the specific transaction or transfer sought to be avoided in order to determine whether that transaction falls within the statutory parameters of an actually fraudulent transfer." *In re DBSI, Inc.*, 477 B.R. 504, 511 (Bankr. D. Del. 2012) (internal quotation omitted.) Plaintiffs **must show** both a fraudulent scheme and "that the transfers at issue were related to or in furtherance of the fraudulent scheme." *Id*. Plaintiffs fail to do both, or even either, here.

In the same vein, the Complaint's summary application of the badges of fraud (Complaint, ¶106 (i) – (vii)) also lacks the particularity required under Federal Rule 9 (Bankruptcy Rule 7009).

Consequently, Plaintiffs fails to meet the pleading standards of Federal Rules 8(a)(2) and 9(b) (Bankruptcy Rules 7008(a)(2) and 9(b)) and the deficient claims under section 547 and 548 Bankruptcy Code made in the Complaint must be dismissed in the entirety.

**D.      The LI Defendants Are Not Transferees or are
        <u>Subsequent Transferees That Took in Good Faith.</u>**

Plaintiffs allege that "the funds used to acquire DAAG" were "misappropriat[ed] [] from the FTX Group, to the substantial detriment of creditors." (Complaint, ¶ 5, 42.) The funds had initially been deposited by customers of the FTX.com exchange (*id.*, ¶ 98), and then these "customer-deposited assets [were] misappropriated from the FTX.com exchange." *Second Interim Report of John J. Ray III to the Independent Directors: the Commingling and Misuse of Customer Deposits at FTX.com*, p. 7 [D.I. 1704-1]. As such, while Plaintiffs have not adequately identified the transferors of the transfers they seek to avoid (a basis for dismissal in and of itself), the Complaint (taken as true) states that the funds used to purchase DAAG were transferred (misappropriated) from the customers (or one of the other Debtors) to Plaintiffs, and then to the LI

Defendants. This raises the first issue of whether the LI Defendants are even transferees of Plaintiffs' property at all; if these funds were "misappropriated" from others, then these funds are not Plaintiffs' property, Plaintiffs did not have the legal right to use them, and this claim should fail. *In re Factory 2–U Stores, Inc.,* No. 04-1011 PJW, 2007 WL 2698207, *3 (Bankr. D. Del. Sept. 11, 2007) (adopting *Bonded Financial Serv., Inc. v. European American Bank,* 838 F.2d 890, 893 (7th Cir.1988) and the dominion and control principle that a transferee must have the legal right to use the funds for any purpose.)

Next, to the extent this is property of Plaintiffs, nowhere in the Complaint do Plaintiffs allege that the LI Defendants had knowledge of the voidability of any transfers, nor that they acted in bad faith for taking the transfers. Once again Plaintiffs failed to plead properly under Federal Rule 8 (Bankruptcy Rule 8). Additionally, if this is Plaintiffs' property, then the initial transfer was from the customers to a Debtor or from one of the other Debtors, and the immediate and mediate transferees were one of the Plaintiffs, and then subsequently the LI Defendants. Under this outcome, based on what is in the Complaint, Plaintiffs cannot recover from a subsequent transferee, like the LI Defendants, who took for value, in good faith, and without knowledge of the transfers' voidability. *See* 11 U.S.C., § 550(b).

**E.**     **The Issuance of New Stock is Not a Transfer of a Debtor's Interest in Property**.

As part of the earnout consideration under SPA 3, FTXT, as the purchaser, was required to "***issue and grant*** a total of 1,373,247 common shares of" FTXT to Gruhn and Lorem Ipsum. (Complaint, ¶¶ 68, 96(ii); SPA-3, ¶ 3(b) and Exhibit B, thereto) (emphasis added.) Plaintiffs assert these shares were issued "between January 1, 2022 and October 5, 2022." (Complaint, ¶¶ 97, 118.) Plaintiffs seek to avoid the grant and issuance of these shares, asserting they are transfers "of an interest of the debtor in property" subject to avoidance under sections 547(b) and 548(a)(1) of the

Bankruptcy Code. (*Id.*, ¶¶ 108, 112, 117.)[23] They are not; Plaintiffs are simply wrong. These claims fail because transfers of authorized but unissued common stock in a debtor ***are not transfers of an interest in a debtor's property*** and; thus, are not subject to attack under section 547 nor section 548 of the Bankruptcy Code.

An action brought under section 547 or section 548 of the Bankruptcy Code can only avoid a transfer of "an interest of the debtor in property." If a transfer did not involve "an interest of the debtor in property" it cannot be avoided under sections 547 or 548 of the Bankruptcy Code. *Mann v. LSQ Funding Grp., L.C.*, 71 F.4th 640, 646 (7th Cir. 2023).

Certain transfers alleged here are the issuance of common shares of FTXT to Gruhn and Lorem Ipsum. Yet, the issuance of such stock does not transfer an interest of a debtor in property. "A share of capital stock represents a unit of ownership interest and has no extrinsic value to the corporation itself. Since an action directed at recovery of corporate stock could only affect equitable ownership of the corporation and would not restore property to the estate or avoid an estate obligation, then it is not a transfer subject to question under Section 548." *In re Curry & Sorensen, Inc.*, 57 B.R. 824, 829 (B.A.P. 9th Cir. 1986) (internal citations omitted); *accord Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 596 (9th Cir. 2004) (since the issuance of shares was not a transfer of "an interest of the debtor in property" subject to section 548 the court need not reach the issue reach of reasonably equivalent value).

Because the operative language of section 547 of the Bankruptcy Code mirrors that of section 548 of the Bankruptcy Code, the same holds true under section 547 of the Bankruptcy

---

[23] Plaintiffs actually assert these were transfers "of property of Plaintiffs," which the LI Defendants presume is intended to satisfy the statutory predicate of a transfer "of an interest of the debtor in property." But this appears to be just another example of Plaintiffs simply regurgitating the statutory predicate without any sufficient flesh to the allegation to justify a claim.

Code; namely, the issuance of shares of stock is not a transfer of an interest of a debtor in property for preferential transfer purposes. *See KDI v. Former Shareholders of Labtron of America*, 536 F.2d 1146, 1149 (6th Cir.1976) (under the Bankruptcy Act, rejecting the contention that the issuance of shares "constituted a voidable preference under bankruptcy law since such an action would only have affected equitable ownership of the corporation, would not have affected the assets of the corporation, nor worked to 'enable (a) creditor to obtain a greater percentage of his debt than some other creditor of the same class.'")

Although *Curry & Sorensen* is an older case and *KDI* was decided under the Bankruptcy Act of 1898, their rationale is still sound under more recent case law under the Bankruptcy Code. The Bankruptcy Code does not define the phrase "an interest of the debtor in property" anywhere in the Bankruptcy Code. In interpreting this phrase, the Supreme Court explained that "the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate— the property available for distribution to creditors." *Mann,* 71 F.4th at 645, quoting *Begier v. I.R.S.*, 496 U.S. 53, 58–59 (1990). "Accordingly, 'interest of the debtor in property' is 'best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.'" *Id.* quoting *Begier*, 496 U.S. at 58.

As such, when analyzing whether a transfer affected "an interest of the debtor in property" the goal is "to determine whether the transfer took something from the pool of assets that would otherwise have gone to creditors." *Id*. That is, the inquiry should focus on whether the transfer diminished the estate that would otherwise be available for creditors. *Id.* 71 F.4th at 647 (focusing on diminution of the estate rejects attempts to avoid transfers "where creditors would not otherwise have any reason or expectation to look to the assets transferred"); *see also In re Chase & Sanborn Corp.*, 813 F.2d 1177, 1181 (11th Cir. 1987) (interpreting "property of the debtor" to require

#12483974v11\031263\0002

28

diminution of the estate under both section 547 and section 548); *In re TriGem Am. Corp.*, 431 B.R. 855, 864 (Bankr. C.D. Cal. 2010) ("it is that diminishment of assets that would otherwise be available to pay creditors that is at the heart of all avoidance actions").[24]

Here, the answer is a resounding no. That is because authorized but unissued shares of stock are not assets of a debtor. *See In re 31 Tozer Rd., LLC,* No. 17-CV-10013-IT, 2018 WL 340028, at *2 (D. Mass. Jan. 9, 2018) (a "debtor corporation does not have a property interest in its own equity, and the purchase of equity is not an act against the debtor or the debtor's property"); *In re Mid-Am. Petroleum, Inc.*, 71 B.R. 140, 141 (Bankr. N.D. Tex. 1987) (authorized but unissued stock is not an asset of a corporation and is not property of the estate under section 541 of the Bankruptcy Code). Moreover, unissued shares do not impact "assets" on a debtor's financial statements. *In re Roco Corp.*, 701 F.2d 978, 982 (1st Cir. 1983) (under generally accepted accounting principles treasury stock is not reported on the balance sheet as an asset).

Avoiding the issuance of shares to Gruhn and Lorem Ipsum here would merely make the shares "unissued." The shares, to the extent they had any value at all, would not be available to pay creditor claims. *In re PurchasePro.com, Inc.*, 332 B.R. 417, 422 (Bankr. D. Nev. 2005) (noting that under the *Curry & Sorenson* analysis, "avoidance of the transaction would not add assets to the debtor's estate or reduce claims against it. Rather, avoidance of a stock issuance would simply rearrange the equity ownership of a failed business, much like rearranging deck chairs on the Titanic []"). The issuance of shares raised in the Complaint was not, nor could not be, a transfer of

---

[24]   This is consistent with those cases cited above addressing the extraterritorial application of sections 547 and 548 of the Bankruptcy Court that hold that the focus of claims asserted under sections 547 and 548 of the Bankruptcy Code is a "transfer or obligation that *depletes* the estate." *In re Zetta Jet USA*, 2021 WL 3721477, at *21 (italics in original.) *Accord In re Picard*, 917 F.3d at 98.

an interest of the debtor in property, and the avoidance claims premised on the issuance of these shares must be dismissed.[25]

### F.     The Breach of Fiduciary Duty Claims Against Gruhn and Matzke Are Legally Deficient, and Must be Dismissed.

Plaintiffs' claim for breach of fiduciary duty (Count 6) against Gruhn and Matzke fails because (a) Gruhn and Matzke owe no fiduciary duty to FTXT and (b) Plaintiffs have not sufficiently pled a breach.

In support of this claim, Plaintiffs note that FTXT was a corporation incorporated in Antigua and engaged in international trade or business as defined by the IBCA. (Complaint, ¶ 136.) Plaintiffs further allege, among other allegations, that "[b]eginning in September 2021 and November 2021, respectively, Gruhn and Matzke *owed fiduciary duties to FTX Trading* under Antiguan common law, including the duties to act in good faith, honestly, fairly, and with due regard to FTX Trading's interests, and to use their *officer powers* only for purposes which benefited FTX Trading. Gruhn and Matzke were required to act in FTX Trading's best interests, and not for their personal benefit." (*Id.*, ¶ 137) (emphasis added.) Similarly, Plaintiffs contend that "[d]uring the same period, Gruhn and Matzke *owed fiduciary duties to FTX Trading* under Section 95 of the [IBCA], including the duties 'to act honestly and in good faith with a view to the best interest of the corporation; and exercise the care, diligence, and skill that a reasonably prudent person would exercise in comparable circumstances.'" (*Id.*, ¶ 138) (emphasis added).) All of the

---

[25] As the Supreme Court has noted, "[i]n the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *See Barnhill v. Johnson*, 503 U.S. 393, 398 (1992). *See also Butner v. United States*, 440 U.S. 48, 55 (1979) (same). Here, the law of Antigua would determine FTXTs' property rights and under section 37 of the IBCA, subject to inapplicable exceptions, "a corporation *shall not hold shares in itself* or in its holding body corporate." IBCA, § 37 (emphasis added).

preceding and much, if not all, of the allegations relating to the breach of fiduciary duty claims are patently disguised legal conclusions.

Other allegations relevant to the breach of fiduciary duty claim which must be accepted as true are: (i) Kephas is a custom technology services company doing business as DAAG Technology Services (*id.*, ¶ 24); (ii) Kephas is owned and controlled by Gruhn, and he is the president (*id.*, ¶¶ 7, 24, 78); (iii) since at least May 2021, Kephas has provided IT services to DAAG, including the "Odoo" system, and Kephas owns proprietary intellectual property utilized by DAAG (*id.*, ¶ 79); (iv) after assuming his position as Head of FTX Europe, Gruhn caused FTX Europe and its wholly owned subsidiary FTX Switzerland to pay Kephas millions of dollars for IT and consulting services (*id.*, ¶ 7); and (v) "Gruhn allowed FTX Europe to make large payments to Kephas—without Kephas signing any contract or providing detailed invoices to justify the amounts being charged to FTX Europe" (*id.*, ¶ 82.)

Whether fiduciary duties are owed and the scope of those duties are legal questions to be determined under applicable law.[26] Because Plaintiffs' disguised allegations here are really legal conclusions the Court need not consider them as true in resolving this motion to dismiss. *In re Cred*, 650 B.R. at 813. To the extent the Court decides to entertain the breach of fiduciary claims, Plaintiffs fail to state a claim for several reasons.

---

[26] *In re NewStarcom Holdings, Inc.*, 547 B.R. 106, 120 (Bankr. D. Del. 2016), *aff'd*, 608 B.R. 614 (D. Del. 2019), *aff'd sub nom. In re NewStarcom Holdings Inc.*, 816 F. App'x 675 (3d Cir. 2020) (based on the nature of the relationship between the defendant and the debtor, the court must answer "a question of law—does Delaware law provide that, because of his relationship to the Debtors, the defendant owed them fiduciary duties?"); *Diehl-Guerrero v. Hardy Boys Constr., LLC*, No. CV N16C-08-041 CLS, 2017 WL 1162947, at *3 (Del. Super. Ct. Mar. 27, 2017) ("Whether a duty exists is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and must be determined by the court."); *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 360 (Del. 1993), *decision modified on reargument*, 636 A.2d 956 (Del. 1994) ("formulation of the duty of loyalty and duty of care involves questions of law").

1.    **The Breach of Fiduciary Duty Claim Fails Because**
**Under Antiguan Common Law and the IBCA, Only**
**Officers and Directors Owe Fiduciary Duties to FTXT**.

Plaintiffs contend that because FTXT was a corporation incorporated in Antigua and engaged in international trade or business the claim for breach of fiduciary duty is governed by Antiguan common law and the IBCA. *Id* at ¶ 136.  Yet, under Antiguan law, Gruhn and Matzke do not owe any fiduciary duties to FTXT because they are not, and never have been, officers and directors of FTXT.

"Under the internal affairs doctrine, only one state, the state of incorporation, has the authority to regulate a corporation's internal affairs." *In re USA Detergents, Inc.*, 418 B.R. 533, 540 (Bankr. D. Del. 2009), *citing Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). "Few, if any, claims are more central to a corporation's internal affairs than those relating to alleged breaches of fiduciary duties by a corporation's directors and officers." *Id.,* quoting *In re Fedders N. America, Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009). Because Count Six alleges breaches of fiduciary duties, the claims relate to the internal affairs of FTXT and are governed by the laws of its place of incorporation, Antigua. *See, e.g.*, *Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 542 F. Supp. 3d 59, 66 (D. Mass. 2021) (internal affairs doctrine mandated application of Antiguan law). In *Heng Ren*, the defendant Sinovac was incorporated in Antigua and the Court therefore held that "Antiguan law governs matters of Sinovac's corporate governance and internal affairs. Those affairs include matters particular to the 'relationships among or between [Sinovac] and its current officers, directors, and shareholders,' such as the fiduciary duty owed to its minority shareholders." *Id*.

Accordingly, to evaluate whether Plaintiffs sufficiently pled this claim, the Court must first determine the applicable law in Antigua. Under Federal Rule 44.1 (Bankruptcy Rule 9017), in

#12483974v11\031263\0002

determining foreign law, the Court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. Moreover, the Court's determination must be treated as a ruling on a question of law. Relevant information may be provided by expert witnesses familiar with the foreign law. *See Grupo Protexa, S.A. v. All Am. Marine Slip, a Div. of Marine Off. of Am. Corp.*, 20 F.3d 1224, 1239 (3d Cir. 1994). *See also de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th Cir. 2016) ("[T]he testimony of foreign legal experts, together with extracts of foreign legal materials, 'has been and will likely continue to be the basic mode' of determining foreign law.") (citation omitted). However, in determining foreign law, the Court may consider any relevant material, whether or not submitted by a party; the rule "provides courts with broad authority to conduct their own independent research to determine foreign law but imposes no duty upon them to do so." *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 216 (3d Cir. 2006) (internal citations omitted).

Because Federal Rule 44.1 states that determination of foreign law is a question of law, courts may consider relevant materials beyond the pleadings in ruling on a motion to dismiss when the claim depends on a determination of foreign law. *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 948–49 (9th Cir. 2018); *de Fontbrune v. Wofsy*, 838 F.3d 992, 1000 (9th Cir. 2016); *LMS Commodities DMCC v. Libyan Foreign Bank*, No. 1:18-CV-679-RP, 2019 WL 1925499, at *3 (W.D. Tex. Apr. 30, 2019).

With this Memorandum of Law, the LI Defendants submit the *Declaration of Craig L. Jacas*, an expert in Antiguan law. Mr. Jacas is an attorney-at-law licensed to practice law in both Antigua and Barbuda. He holds a Bachelor of Laws (LLB) with First Class Honours from the University of the West Indies; a Legal Education Certificate (LEC) from the Norman Manley Law School; and a Master of Laws (Commercial & Corporate Law), with Distinction also from the

#12483974v11\031263\0002

University of the West Indies. As noted in Jacas's declaration, under Antiguan law the IBCA, as supplemented by common law, governs the relationship between an Antiguan corporation and the corporation's directors and officers. Under the IBCA and applicable Antiguan common law, only officers and directors owe fiduciary duties to an Antiguan company. Gruhn and Matzke were never officers or directors of the Antiguan company, FTXT, nor do the Plaintiffs allege that they were.[27] In light of this dispositive fact, neither Gruhn nor Matzke owed fiduciary duties to FTXT. Accordingly, Count Six of the Complaint must be dismissed.

### 2.    The Alleged Facts Do Not Support a Claim for Breach of Fiduciary Duty Based on FTXT's Transfer of Funds to Kephas.

Plaintiffs assert that Gruhn and Matzke breached their fiduciary duties to FTXT by "causing transfers to be made to Kephas, in exchange for which FTX Trading did not receive, and had virtually no prospect of receiving, reasonably equivalent value . . . ." (Complaint, ¶ 139.) While not exactly clear, Plaintiffs' reference to "transfers made to Kephas" appear to relate to paragraph 82 of the Complaint, which alleges that "[b]etween May 2021 and February 2023, *FTX Europe* and *FTX Switzerland* paid at least $4 million to Kephas . . . for IT and consulting services . . . without written contract." (*Id.*, ¶ 82) (emphasis added.) But FTX Europe and FTX Germany are not plaintiffs here (neither is FTX Switzerland for that matter), and Count 6 of the Complaint is on behalf of Plaintiff-FTXT. Any alleged breach of fiduciary duty due to payments made to Kephas

---

[27]    Rather, Plaintiffs allege Gruhn was the "Head" of FTX Europe (formerly DAAG), a position he held since September 2021, and Matzke was the "Head of Legal" for FTX Europe, a position he held since November 2021. (*Id.*, ¶¶ 17, 18, 137.) They took on these roles as initially required by SPA 3. (SPA 3, ¶ 11(e).) Gruhn, however was **never** an employee of FTXT or any affiliate. Matzke's employment agreement was not with FTX Europe, but with its wholly-owned subsidiary, FTX Germany. Regardless, these positions were with different entities than FTXT.

would have damaged FTX Europe and FTX Germany, *not* FTXT.[28] Plaintiffs' allegation that FTXT somehow did not receive reasonably equivalent value for these services to other entities is simply nonsensical and cannot support a claim by FTXT.

The breach of fiduciary duty claim regarding the payments to Kephas as against Matzke also fails for the additional reason that there are no non-conclusory allegations that Matzke had anything to do (in any manner whatsoever) with such payment. The only factual allegations made in the Complaint that seemingly relate to the payments made to Kephas are:

i      "[a]fter assuming his position as Head of FTX Europe, Gruhn caused FTX Europe and its wholly owned subsidiary, FTX Switzerland GmbH ("**FTX Switzerland**"), to pay Kephas millions of dollars of misappropriated FTX Group funds for purported IT and consulting services." (*Id.*, ¶ 7.)

ii      "Disregarding his duties to FTX Europe, Gruhn allowed FTX Europe to make large payments to Kephas—without Kephas signing any contract or providing detailed invoices to justify the amounts being charged to FTX Europe." (*Id.*, ¶ 82.)

The allegations make clear that only Gruhn had control over Kephas, and only Gruhn is alleged to have caused the relevant payments to be made, and that Matzke did not: Plaintiffs do not allege otherwise. Yet, Plaintiffs allege that *both* Gruhn *and Matzke* breached fiduciary duties owed to FTXT by "causing transfers to be made to Kephas" in exchange for which FTX Trading did not receive reasonably equivalent value, and from which Gruhn "personally benefited." (*Id.*, ¶ 139.) Because the facts alleged do not show that Matzke had the power or authority to cause payments to be made to Kephas, and he is not alleged to have done so, the breach of fiduciary duty claim against Matkze based on this conduct must be dismissed.

---

[28]      Indeed, as recently as last month FTX Europe and FTX Germany sent a letter purporting to terminate the contractual relationship with Kephas (using a different trade name at that point), thereby illustrating that this is not a claim nor a matter concerning Plaintiff-FTXT. *See* App. at tab 10.

#12483974v11\031263\0002

Moreover, as against Gruhn, the facts show that Gruhn had no power to control payments to Kephas. As noted in the amendment to SPA 3, Gruhn was never an employee or director of any FTX-related company, which would include FTXT and FTX Europe, and had "in no capacity whatsoever [] an operational, managerial, executive or any other function at [FTXT], [FTX Europe], or any other subsidiary." (Amendment to the Share Purchase Agreement, ¶ 1.)[29] Gruhn actually never became an employee of any of the Debtors, including FTXT or FTX Europe. By the Amendment, FTXT agreed that, because Gruhn's immigration status only allowed him to work for Kephas, Gruhn would not be a director of any FTX-related company and that he would "in no capacity whatsoever have an operational, managerial, executive or any other function at [FTXT], [FTX Europe], or any other subsidiary." (Amendment to the Share Purchase Agreement, ¶ 1.) The Amendment further provided that Gruhn "shall have no employment obligations whatsoever and all services provided by [Gruhn] to [FTXT], [DAAG], or any other entity shall be provided by Kephas Corp. which employs [Gruhn] and Kephas Corp. shall invoice [FTX Europe] or any other entity from [FTXT] which requests services from [Gruhn] at a fair market value hourly rate." (*Id.*, ¶ 3.) Gruhn, therefore, did not have the ability to "cause" transfers to be made to Kephas, and, accordingly, the breach of fiduciary duty claim against Gruhn based on this conduct must be dismissed.

Accordingly, because no payments were ever made by FTXT to Kephas, and because Matzke and Gruhn were never in a position to "cause" transfers to Kephas, Count 6, to the extent it alleges improper payments to Kephas, must be dismissed.

---

[29]   A copy of the Amendment to the SPA is included in the Appendix. *See* App. at tab 4.

#12483974v11\031263\0002

3.      **The Alleged Facts Do Not Support a Claim for Breach of Duty**
         **Based on DAAG's Contractual Payments to Mohammad Dastmaltchi.**

Plaintiffs fare no better with their assertion that "Gruhn and Matzke [] breached their *fiduciary duties to FTX Trading* by causing DAAG to transfer $5 million to Mohammad Dastmaltchi in exchange for purported 'introductory and referral services' in connection with the acquisition of a Cyprus investment firm, from which Matzke and Gruhn would personally benefit via bonus payments." (*Id.*, ¶ 140) (emphasis added).

The Complaint asserts DAAG entered into a contract with Dastmaltchi on June 5, 2021, under which Dastmaltchi was retained to help DAAG find a CySEC-licensed investment firm to acquire. (*Id.*, ¶ 99.) Yet, the Complaint alleges that Gruhn and Matzke did not owe any fiduciary duties to FTXT until September 2021 and November 2021, respectively. (*Id.*, ¶¶ 17, 18, 137.) Indeed, the Complaint concedes that the Dastmaltchi agreement was executed a month prior to SPA 2 (*id.*, ¶ 99); at this time neither Gruhn nor Matzke were employed by FTXT or any of its affiliates, and they were not "heads" of anything related to FTXT. Moreover, because the contract with Dastmaltchi was agreed to before SPA 3 was in effect or even considered, neither Gruhn nor Matzke had any idea what, if any, bonus payments may be included in SPA 3. (*Id.*, ¶¶ 72, 73) (noting discussions for SPA 3 started in October 2021.)

Under these facts as pled, as a matter of law, neither Gruhn nor Matzke owed any fiduciary duties to FTXT at the time the contract with Dastmaltchi was agreed and entered into by the parties. The fact that DAAG became owned by Plaintiffs prior to the time certain payments were made to Dastmaltchi does not transmogrify the June 2021 contract into a breach of fiduciary duty when DAAG/FTX Europe later paid the sums due to Dastmaltchi as it was contractually obligated to do. Rather, doing so protected DAAG/FTX Europe from a claim for damages for breach of contract

since, as acknowledged by Plaintiffs, Dastmaltchi had fulfilled his obligations under the contract. (Complaint, ¶¶ 86, 93, 94, 102) (noting the acquisition and regulatory approval of DAAG's purchase of a CySEC-licensed investment firm.) Thus, Plaintiffs' breach of fiduciary duty claim based on this transaction fails and must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint as to the LI Defendants in its entirety for lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1) (Bankruptcy Rule 7012(b)(1)). Additionally or in the alternative, the claims in the Complaint should be dismissed as to Gruhn, Matzke, and Lorem Ipsum for the reasons set forth above in this Memorandum of Law. The Court should also award such other and further relief as it deems just and proper under the circumstances.

*[Signature Page Immediately Follows]*

#12483974v11\031263\0002

Dated:  October 27, 2023
Wilmington, Delaware

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400
Email:         ljones@pszjlaw.com
               pkeane@pszjlaw.com

THE DALEY LAW FIRM LLC
Darrell Daley (admitted *pro hac vice*)
Samantha Neal (admitted *pro hac vice*)
4845 Pearl East Circle, Suite 101
Boulder, Colorado 80301
Telephone: (303) 479-3500
Email: Darrell@daleylawyers.com
          Samantha@daleylawyers.com

- and -

MORRISON COHEN LLP
Joseph T. Moldovan (admitted *pro hac vice*)
Heath D. Rosenblat (admitted *pro hac vice*)
Jason P. Gottlieb (admitted *pro hac vice*)
Michael Mix (admitted *pro hac vice*)
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
Facsimile: (212) 735-8708
Email: jmoldovan@morrisoncohen.com
          hrosenblat@morrisoncohen.com
          jgottlieb@morrisoncohen.com
          mmix@morrisoncohen.com

*Counsel to Lorem Ipsum UG, Patrick Gruhn, and Robin Matzke*

#12483974v11\031263\0002