# Tab 1

# Share Purchase Agreement

dated 25 October 2020

by and between

**Crypto Lawyers GmbH**



("Seller 1")

**Ernest Ukaj**



("Seller 2")

**Lorem ipsum RM UG (haftungsbeschränkt)**



("Seller 3")

and

**Alameda Ventures Ltd.**

1st Floor, Eden Plaza
Eden Island
Republic of Seychelles

("Purchaser")

regarding

**Sale and Purchase of**

**Shares in**

**Digital Assets DA AG**

Industriestrasse 28

9100 Herisau

Switzerland

WHEREAS, Digital Assets DA AG ("**Company**") is a Swiss corporation limited by shares (*Aktiengesellschaft*), registered with the Commercial Register of Appenzell Ausserrhoden under the registration number CHE-175.231.191 whose registered share capital amounts to CHF 100,000.00, paid-up in the amount of CHF 50,000.00 (Liberierung) and is divided into 1,000 registered shares (Namenaktien) with a par value of CHF 1,000.00 (each such share hereinafter referred to as a "**Share**" and several of such shares together, the "**Shares**").

WHEREAS, Seller 1 is the owner of 500 (five hundred) Shares, representing 50% of the Company's share capital, Seller 2 and Seller 3 each own 250 (two hundred fifty) Shares, representing each 25% of the Company's share capital (the "**Existing Shares**").

WHEREAS, the purpose of the Company as a technology and financial company is to issue structured financial products to professional counterparties, in particular financial instruments whose price is derived from an underlying asset, in Switzerland and worldwide, as well as to provide related services. The Company may establish branches in Switzerland and abroad, to participate in other enterprises in Switzerland and abroad, to acquire similar or related enterprises or to merge with such enterprises, and to enter into all business transactions and conclude all contracts which are suitable for promoting the purpose of the Company or which

DocuSign Envelope ID: 7970A2F2-7D53-47FF-A817-D649C339C16E
Case 23-50437-JTD    Doc 33-1    Filed 10/27/23    Page 4 of 13

are directly or indirectly related to it. It may acquire, administer, encumber and sell land, intellectual property rights and licenses of all kinds.

WHEREAS, in accordance with the terms and subject to the conditions of this agreement ("**Agreement**"), the Sellers wish to sell and assign to the Purchaser, and the Purchaser wishes to buy and accept from the Seller, in total 50 (fifty) Shares, representing 5% (five per cent) of the Company's share capital ("**Sale Shares**").

NOW, THEREFORE, the parties hereto (each a "**Party**", and collectively the "**Parties**") agree as follows:

1. **Definitions**

| Business Day | means a day other than Saturday and Sunday when banks are open for business in Switzerland. |
|---|---|
| USD | US Dollars |
| Encumbrance | means any kind of claim and all claims and any kind of mortgage, pledge, lien, charge (fixed or floating), options, rights of pre-emption or equities whatsoever and not being arrested or blocked or subject to withdrawal under any legal or legislative acts of any authorized body and or court resolution and or otherwise, assignment, whether absolute or by way of security, hypothecation, security interest, equity, any preferential right or trust arrangement or other agreement or arrangement the effect of which is the creation of security and any other encumbrance or security arrangement of any kind, as well as any other rights or interests of third parties in terms of obtaining any funds or property and any agreements, arrangements or obligations to create any of the above. |

**2.  Sale and Purchase of Shares**

2.1.  Subject to the terms and conditions of this Agreement, the Sellers hereby sell and assign to the Purchaser, and the Purchaser hereby purchases and accepts from the Sellers, the full legal and beneficial ownership of a total amount of 50 (fifty) Sale Shares, free and clear from any Encumbrance ("**Transaction**").

2.2.  Seller 1 will sell and assign 25 Sale Shares and Seller 2 and Seller 3 will each sell and assign 12.5 Sale Shares to the Purchaser against payment of the Purchase Price as described in section 3.2. of this Agreement.

**3.  Purchase Price / Consideration**

3.1.  The fixed purchase price payable by the Purchaser to the Sellers on a pro rata basis for the sale of the Sale Shares is 700,000 (seven hundred thousand) US Dollars ("**USD**") ("**Purchase Price**").

3.2.  The Purchase Price shall be paid in cash without any deduction of whatsoever nature by wire transfer according to the following schedule:

3.2.1.  Seller 1 receives USD 350,000 in total. Seller 2 and 3 receive each USD 175,000 in total as purchase price.

3.2.2.  USD 166,666.66 of the Purchase Price shall be paid on signing this agreement on a pro rata basis to Seller 1 (50%), Seller 2 and Seller 3 (each 25%). USD 166,666.66 of the Purchase Price shall be paid on 3 November 2020 on a pro rata basis to Seller 1 (50%), Seller 2 and Seller 3 (each 25%). USD 166,666.66 of the Purchase Price denominated in USD shall be paid on 30 November 2020 on a pro rata basis to Seller 1 (50%), Seller 2 and Seller 3 (each 25%). USD 200,000.00 of the Purchase Price shall be paid on 15 February 2021 on a pro rata basis to Seller 1 (50%), Seller 2 and Seller 3 (each 25%).

3.2.3.  The instalments shall be payable provided the impaired service offering by DAAG on such dates. Paid instalments of the Purchase Price will not be redeemed in case the service is not upheld on future due dates.

3.2.4.  The purchase price is to be paid to the following bank accounts:

| Seller 1 | **Name**: Crypto Lawyers GmbH<br>**IBAN**:<br>**BIC**: |
|---|---|
| Seller 2 | **Name**: Ernest Ukaj<br>**IBAN**:<br>**BIC**: |
| Seller 3 | **Name**: lorem ipsum RM UG (haftungsbeschränkt)<br>**IBAN**:<br>**BIC**: |

3.2.5. By signing this Agreement, the parties agree that the Purchase Price may be paid directly to the Company as a loan:

| Company | **Name**: Digital Assets DA AG<br>**IBAN**:<br>**BIC**: |
|---|---|

4. **Conditions to Closing**

4.1. The Transaction shall be consummated if and to the extent that the Purchase Price has been paid in full by the Purchaser to the Sellers "**Closing Date**").

4.2. Concurrently with and in exchange for (*Zug um Zug*) the closing actions of the Purchaser, the Sellers or the Company shall perform the following closing actions:

4.2.1. an assignment of the shares and, if necessary, deliver proof that any other actions required for the valid transfer of title of the Sale Shares have been completed, such as e.g. providing the Company the necessary instructions in order to effectuate the transfer of the Sale Shares;

4.2.2. deliver the duly signed minutes of the resolution of the board of directors of the Company approving the entry of the Purchaser as the new holder of the Sale Shares in the share register of the Company as of the date of signing;

      4.2.3.    deliver the duly signed share register (*Aktienbuch*) of the Company in which the Purchaser is registered as shareholder of the Company in respect of the Sale Shares as of the Closing Date.

  4.3.    Risk, title and benefit regarding the Sale Shares shall pass from Seller to Purchaser at the Closing Date.

**5.**    **Capital Injection**

  5.1.    On Closing Date, the Sellers will grant a credit to the Company in the amount of the pro rata Purchase Price ("**Capital Injection**").

  5.2.    The term of the credit will be 2 (two) years beginning from the signing of this Agreement. The interest rate will be the minimum interest rate as required by Swiss law (i.e. currently 0.75% p.a.). The Company may at its discretion repay the credit at any time and to any extent before maturity. Any claim arising of the loan will be subordinated.

**6.**    **Representations and Warranties of the Seller**

The Sellers hereby represent and warrant to the Purchaser that as of signing and at the Closing Date of this Agreement:

  6.1.    Each Seller has all requisite power and authority to enter into and perform this Agreement and the other documents referred to therein and is authorized to sell and transfer complete and unrestricted title to the Sale Shares on the terms and conditions of this Agreement. Other than as set forth herein, no authorizations, permits or consents are required from any governmental or administrative authority, or any third party (including, for the avoidance of doubt, any creditor of the Sellers) for the consummation of the Transaction contemplated under this Agreement.

  6.2.    Each Seller is the sole legal and beneficial owner of the Sale Shares, which are free from all charges, liens and Encumbrances whatsoever, other than as set forth herein, and, as from the Closing Date only, the Sale Shares are not arrested, blocked nor subject to withdrawal under legal and/or legislative acts of the authorized bodies and/or court resolutions and/or otherwise. Furthermore, the Sale Shares are not subject to a call or put option or alike and the Seller has no obligations to sell or transfer the Sale Shares to any third party under any contractual obligation, other than the current shareholders' agreement in place.

 6.3. None of (a) the use of the Purchase Price, (b) the execution, delivery and performance of this Agreement, or (c) the consummation of any transaction contemplated hereby, or the fulfilment of the terms hereof, will result in a violation by anyone, including without limitation the Sellers or the Purchaser, of any anti-money laundering laws or any other legal provisions of any jurisdiction. Furthermore, the Sellers, by entering and performing this Agreement, do not infringe any obligation (neither contractual nor under statutory laws) or provision of any applicable laws.

 6.4. As of the Closing Date, the Existing Shares are the only shares of the Company's capital stock that are issued and outstanding, and there are no outstanding rights of first refusal, preemptive rights, options, warrants, stock plans, conversion rights or other agreements, either directly or indirectly, for the purchase or acquisition of further Shares or other securities of the Company. As of the Closing Date, the Company has no outstanding aggregate debt to the Sellers in excess of US$700,000.

7. **Representations and Warranties of the Purchaser**

 7.1. The Purchaser is duly incorporated and validly existing under the laws of the Seychelles.

 7.2. The Purchaser has all requisite power and authority to enter into and perform this Agreement and is authorized to purchase and accept transfer of complete and unrestricted title to the Sale Shares on the terms and conditions of this Agreement. Other than as set forth herein no authorizations, permits or consents are required from any governmental or administrative authority, or any third party (including, for the avoidance of doubt, any shareholder or creditor of the Purchaser) for the consummation of the Transaction contemplated under this Agreement.

 7.3. This Agreement constitutes the valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms; subject to applicable bankruptcy, insolvency or other laws affecting the enforcement of creditors' rights generally.

8. **Covenants of the Sellers**

The Sellers agree to vote their shares or otherwise cause the Company to comply with the following:

    8.1.    For a period expiring on the five-year anniversary of the Closing Date, the Purchaser or its designee shall have the right, but not the obligation, to participate with respect to all non-public equity or equity-linked capital raising transactions of the Company (each, a "**Subsequent Financing**"). The Company shall give advance written notice to the Parties prior to any Subsequent Financing. Each Party shall have ten (10) business days from receipt of such notice to deliver a written notice to the Company that such Party elects to exercise its right to participate in the Subsequent Financing with respect to an amount of the Subsequent Financing equal to its current percentage of Shares held (the "**Pro-Rata Portion**"), or otherwise such amount that as is at least sufficient so the Subsequent Financing does not dilute the Purchaser's equity percentage.

    8.2.    For a period expiring on the five-year anniversary of the Closing Date, if any Seller proposes to transfer any of its shares of Common Stock to any entity or other acquirer other than a gift or other transfer without consideration (hereinafter referred to as a "**Selling Stockholder**"), such Selling Stockholder shall give written notice of such proposed transfer to the Parties at least 30 days prior to the consummation of such proposed transfer, setting forth (i) the number of Shares offered, (ii) the consideration to be received by such Selling Stockholder, (iii) the identity of the acquirer, (iv) any other material items and conditions of the proposed transfer and (v) the date of the proposed transfer. Each Party other than the Selling Stockholder may elect to sell a Pro Rata Portion (as hereinafter defined) of its Shares, at the same price per share pursuant to the same terms and conditions with respect to payment for the shares as agreed to by the Selling Stockholder, by sending written notice to the Selling Stockholder within 15 days of the date of the Selling Stockholder's notice, indicating a desire to sell such Pro Rata Portion of its Shares in the same transaction. Following such 15 day period, the Selling Stockholder shall be permitted to sell to the purchaser additional Shares representing Shares not sold by other stockholders of the Company.

    8.3.     For a period expiring on the five-year anniversary of the Closing Date, any new issuances of Shares or other issuances of equity or rights to equity by the Company shall require preapproval of the Purchaser, except for equity financings that are both (i) subject to the right of participation described in Section 8.1; and (ii) and that are part of a Subsequent Financing with a pre-

   money market cap valuation of at least US$10,000,000 (ie, $10,000 per Share under current cap table).

8.4. For a period expiring on the two-year anniversary of the Closing Date, any Company payments to the Sellers will be in the form of dividends applied to all owners of Shares, except for reasonable salary.

**9.** **Miscellaneous**

9.1. Any notice, request, instruction or other document deemed by either Party to be necessary, shall be sent by E-Mail and addressed as follows:

 9.1.1. If to Purchaser: Sam@ftx.com

 9.1.2. If to Seller 1: ■@kglawyers.ch

 9.1.3. If to Seller 2: ■@kglawyers.ch

 9.1.4. If to Seller 3: ■@kglawyers.ch

9.2. Each Party may at any time change its address by giving notice to the other Party in the manner described above.

9.3. Each Party undertakes to keep, and shall procure that its employees, representatives, and advisors keep, in strict confidence the existence and content of this Agreement, the Transaction and all information and documents received from the other Party; except to the extent (i) disclosure is required by applicable mandatory law, (ii) necessary in a proceeding brought by a Party in pursuit of its rights hereunder or (iii) such information becomes known to the public without any fault of, or breach of any confidentiality undertaking by, the disclosing Party. This confidentiality obligation shall continue to be in effect after termination of this Agreement.

9.4. This Agreement constitutes the entire agreement of the Parties regarding the Transaction contemplated by this Agreement and supersedes all prior oral or written agreement between the Parties.

9.5. This Agreement including this Section shall only be modified by an agreement in writing executed by the Parties.

9.6. Any waiver of any claim under or in connection with this Agreement shall only be valid if made in writing. The failure of any of the Parties to enforce any of the provisions of this Agreement or any rights with respect thereto shall in no way be considered as a waiver of such provisions or rights or in any way to

affect the validity of this Agreement. The waiver of any breach of this Agreement by any party hereto shall not operate to be construed as a waiver of any other prior or subsequent breach.

9.7. All the terms, provisions and conditions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, assigns and legal representatives. All covenants, representations and warranties of the Sellers shall constitute joint and several obligations of each Seller.

9.8. The Seller and the Purchaser shall consult before issuing press releases or otherwise making any public statements or any statements to the Company's employees with respect to this Agreement and shall not issue any such press release or statement without the prior written approval of the other Party.

9.9. If any provision of this Agreement is held to be invalid or unenforceable for any reason, such provision shall be adjusted rather than annulled in order to achieve a result which fully corresponds to the intention of the Parties.

9.10. The Purchaser may not assign this Agreement or any rights or obligations hereunder to any third party only with the prior written consent of Sellers.

9.11. Each Party shall bear all its own costs, expenses and taxes incurred in connection with the Transaction contemplated by this Agreement.

**10. Governing Law and Jurisdiction**

10.1. This Agreement shall be governed by, and construed in accordance with, the substantive laws of Switzerland, excluding its rules on conflict of laws and excluding international treaties (such as the Vienna Sale of Goods Convention (*UN-Kaufrecht*)).

10.2. All disputes or claims arising out of or in relation with this Agreement, including the entering into, validity, invalidity, breach or termination thereof shall be submitted to and settled by private arbitration under ICC in Antigua. Each Party bears its own attorney fees and costs, i.e. there is no reimbursement to the prevailing party.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF,** the Parties have signed this Agreement on the date first written above:

**The Seller:**

DocuSigned by:
_27998EDCEC08467..._    10/26/2020

Place, date

**Crypto Lawyers, represented by its Managing Director Ernest Ukaj**

DocuSigned by:
_27998EDCEC08467..._    10/26/2020

Place, date

**Ernest Ukaj**


DocuSigned by: Robin Matzke
_BCB38F75EA81462..._    10/26/2020

Place, date

**lorem ipsum RM UG (haftungsbeschränkt), represented by its Managing Director Robin Matzke**

**The Purchaser:**

DocuSigned by:

*Samuel Benjamin Bankman-Fried*
672DA88132804B9...

10/26/2020

**Place, date**

**Alameda Ventures Ltd., represented by its Managing Director Samuel Benjamin Bankman-Fried**

* * *