# **Tab 7**

## ANTIGUA AND BARBUDA

### International Business Corporations Act, CAP. 222
### A Company Limited by Shares

### ARTICLES OF INCORPORATION
### OF
### FTX TRADING LTD.

As last amended on October 18, 2021

### ARTICLE I



The name of the company is FTX Trading Ltd. (the "**Company**").

### ARTICLE II

## REGISTERED OFFICE AND AGENT

The Registered Agent of the Company shall be **CORPORATE & TRUST SERVICES (CARIBBEAN) LIMITED**, whose office is situated at Lower Factory Road, in the city of Saint John's, Antigua and Barbuda, the said office shall be the Registered Office of the Company.

### ARTICLE III

## CAPITAL

The Share Capital of the Company shall be 808,087,056 registered shares divided into 755,438,749 shares of US$0.0000026 each par value common shares, which shall be designated "**Common Shares**," and 52,648,307 shares of preferred shares US$0.0000026 each par value, of which 0 shall be designated "**Series A Preferred Shares**", 38,532,578 shall be designated "**Series B Preferred Shares**", 3,220,729 shall be designated "**Series B-1 Preferred Shares**" and 10,895,000 shall be designated "**Series C Preferred Shares**" (the Series A Preferred Shares, the Series B Preferred Shares, the Series B-1 Shares and the Series C Preferred Shares are collectively referred to herein as the "**Preferred Shares**"). Both classes of shares may be issued in series and the directors shall have the authority to fix the number of shares in, or to determine the designation of, and the rights, privileges, restrictions and conditions attaching to, the shares of each series.

The Company shall have the power to increase or reduce said capital, and to issue any part of its capital as special privilege, or subject to any postponement of rights, or to any conditions or restrictions; and so that unless the conditions of issue shall otherwise expressly declare, every issue of shares, whether declared to be preference or otherwise, shall be subject to the power therein contained.

The following is a statement of the designations and the powers, privileges and rights, and the qualifications, limitations or restrictions thereof in respect of each class of shares of the Company.

A.   COMMON SHARES

1.   General. The voting, dividend and liquidation rights of the holders of the Common Shares are to the extent set forth herein subject to and qualified by the rights, powers and preferences of the holders of the Preferred Shares.

2.   Voting. The holders of the Common Shares are entitled to one vote for each share of Common Shares held at all meetings of shareholders (and written actions in lieu of meetings). The number of authorized shares of Common Shares may be increased or decreased (but not below the number of shares thereof then outstanding) by (in addition to any vote of the holders of one or more series of preferred shares that may be required by the terms of these Articles) the affirmative vote of the holders of shares of the Company representing a majority of the votes represented by all outstanding shares of the Company entitled to vote in accordance with the International Business Corporations Act.

B.   PREFERRED SHARES

**JAN 1 8 2022**

1.   Dividends.

**FILED**

The Company shall not declare, pay or set aside any dividends on shares of any other class or series of capital equity of the Company unless (in addition to the obtaining of any consents required elsewhere in these Articles) the holders of the Preferred Shares then outstanding shall first receive, or simultaneously receive, a dividend on each Preferred Share in an amount at least equal to (i) in the case of a dividend on Common Shares or any class or series that is convertible into Common Shares, that dividend per Preferred Shares as would equal the product of (A) the dividend payable on each share of such class or series determined, if applicable, as if all shares of such class or series had been converted into Common Shares and (B) the number of Common Shares issuable upon conversion of a Preferred Share, in each case calculated on the record date for determination of holders entitled to receive such dividend or (ii) in the case of a dividend on any class or series that is not convertible into Common Shares, at a rate per Preferred Share determined by (A) dividing the amount of the dividend payable on each share of such class or series of capital equity by the original issuance price of such class or series of capital equity (subject to appropriate adjustment in the event of any share dividend, share split, combination or other similar recapitalization with respect to such class or series) and (B) multiplying such fraction by an amount equal to the applicable Original Issue Price; provided that, if the Company declares, pays or sets aside, on the same date, a dividend on shares of more than one class or series of capital equity of the Company, the dividend payable to the holders of Preferred Shares pursuant to this Section 1 shall be calculated based upon the dividend on the class or series of capital equity that would result in the highest Preferred Share dividend. The **"Original Issue Price"** shall mean, with respect to the Series A Preferred Shares, $0.18972 per share, with respect to the Series B Preferred Shares, $26.21 per share, with respect to the Series B-1 Preferred Shares, $36.41 per share and with respect to the Series C Preferred Shares, $46.3518 per share in each case subject to appropriate adjustment in the event of any dividend, share split, combination or other similar recapitalization with respect to the Preferred Shares.

The Company when paying dividends to the Shareholders in accordance with the provisions set forth herein may make such payment either in cash or in shares of the Company,

2

with such amount of dividend to be set forth in the sole discretion of the Board of Directors of the Company. Further, the Company shall only declare, pay or set aside any dividends in fiscal years during which the Company is profitable, and, in no case shall dividends be declared, paid or set aside other than in accordance with the laws of Antigua and Barbuda.

      2.      <u>Liquidation, Dissolution or Winding Up; Certain Mergers, Consolidations and Asset Sales.</u>

      2.1      <u>Preferential Payments to Holders of Preferred Shares</u>. In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Company or Deemed Liquidation Event, the holders of Preferred Shares then outstanding shall be entitled to be paid out of the assets of the Company available for distribution to its shareholders before any payment shall be made to the holders of Common Shares by reason of their ownership thereof, an amount per share equal to the greater of (i) one times the applicable Original Issue Price, plus any dividends declared but unpaid thereon, or (ii) such amount per share as would have been payable had all Preferred Shares been converted into Common Shares pursuant to Section 4 immediately prior to such liquidation, dissolution, winding up or Deemed Liquidation Event (the amount payable pursuant to this sentence is hereinafter referred to as the "**Preferred Share Liquidation Amount**"). If upon any such liquidation, dissolution or winding up of the Company or Deemed Liquidation Event, the assets of the Company available for distribution to its shareholders shall be insufficient to pay the holders of Preferred Shares the full amount to which they shall be entitled under this Subsection 2.1, the holders of Preferred Shares shall share ratably in any distribution of the assets available for distribution in proportion to the respective amounts which would otherwise be payable in respect of the shares held by them upon such distribution if all amounts payable on or with respect to such shares were paid in full.

      2.2      <u>Payments to Holders of Common Shares</u>. In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Company or Deemed Liquidation Event, after the payment of all preferential amounts required to be paid to the holders of Preferred Shares in accordance with Section 2.1, the remaining assets of the Company available for distribution to its shareholders shall be distributed among the holders of shares of Common Shares, pro rata based on the number of shares held by each such holder.

      2.3      <u>Deemed Liquidation Events</u>.

      2.3.1      <u>Definition</u>. Each of the following events shall be considered a "**Deemed Liquidation Event**" unless the holders of at least a majority of the outstanding Preferred Shares (voting together as a single class) (the "**Requisite Holders**") elect otherwise by written notice sent to the Company prior to the effective date of any such event:



FINANCIAL SERVICES
REGULATORY COMMISSION

JAN 1 8 2022

FILED

(a)      a merger or consolidation in which

      (i)      the Company is a constituent party or

      (ii)      a subsidiary of the Company is a constituent party and the Company issues shares in its capital pursuant to such merger or consolidation,

3

except any such merger or consolidation involving the Company or a subsidiary in which the capital equity of the Company outstanding immediately prior to such merger or consolidation continue to represent, or are converted into or exchanged for shares of capital equity that represent, immediately following such merger or consolidation, at least a majority, by voting power, of the capital equity of (1) the surviving or resulting Company; or (2) if the surviving or resulting Company is a wholly owned subsidiary of another Company immediately following such merger or consolidation, the parent Company of such surviving or resulting Company ; or

(b)    the sale, lease, transfer, exclusive license or other disposition, in a single transaction or series of related transactions, by the Company or any subsidiary of the Company of all or substantially all the assets of the Company and its subsidiaries taken as a whole, or the sale or disposition (whether by merger, consolidation or otherwise) of one or more subsidiaries of the Company if substantially all of the assets of the Company and its subsidiaries taken as a whole are held by such subsidiary or subsidiaries, except where such sale, lease, transfer, exclusive license or other disposition is to a wholly owned subsidiary of the Company; provided, however, that in no event shall a sale, lease, transfer, exclusive license or other disposition, in a single transaction or series of related transactions of one or more digital assets, or any similar transaction, be considered a Deemed Liquidation Event.

### 2.3.2    Effecting a Deemed Liquidation Event.

(a)    The Company shall not have the power to effect a Deemed Liquidation Event referred to in Subsection 2.3.1(a)(i) unless the agreement or plan of merger or consolidation for such transaction (the "**Merger Agreement**") provides that the consideration payable to the shareholders of the Company shall be allocated among the holders of capital equity of the Company in accordance with Subsections 2.1 and 2.2.

(b)    In the event of a Deemed Liquidation Event referred to in Subsection 2.3.1(a)(ii) or 2.3.1(b), if the Company does not commence the winding-up of the Company under the International Business Corporations Act within ninety (90) days after such Deemed Liquidation Event, then: (i) the Company shall send a written notice to each holder of Preferred Shares no later than the ninetieth (90th) day after the Deemed Liquidation Event advising such holders of their right (and the requirements to be met to secure such right) pursuant to the terms of the following clause; (ii) to request the repurchase of such Preferred Shares, and (iii) if the Requisite Holders so request in a written instrument delivered to the Company not later than one hundred twenty (120) days after such Deemed Liquidation Event, the Company shall use the consideration received by the Company for such Deemed Liquidation Event (net of any retained liabilities associated with the assets sold or technology licensed, as determined in good faith by the Board of Directors of the Company), together with any other assets of the Company available for distribution to its shareholders, all to the extent permitted by Antigua law governing distributions to shareholders (the "**Available Proceeds**"), on the one hundred fiftieth (150th) day after such Deemed Liquidation Event, to repurchase all outstanding Preferred Shares at a price per share equal to the Preferred Share Liquidation Amount. Notwithstanding the foregoing, in the event of a repurchase pursuant to the preceding sentence, if the Available Proceeds are not sufficient to repurchase all outstanding Preferred Shares, the Company shall ratably repurchase each holder's Preferred Shares to the fullest extent of such Available Proceeds and shall repurchase the remaining shares as soon as it may lawfully do so under Antigua law governing

FINANCIAL SERVICES
REGULATORY COMMISSION

JAN 1 8 2022

FILED

distributions to shareholders. The provisions of Section 6 shall apply, with such necessary changes in the details thereof as are necessitated by the context, to the repurchase of the Preferred Shares pursuant to this Subsection 2.3.2(b). Prior to the distribution or repurchase provided for in this Subsection 2.3.2(b), the Company shall not expend or dissipate the consideration received for such Deemed Liquidation Event, except to discharge expenses incurred in connection with such Deemed Liquidation Event or in the ordinary course of business.

2.3.3   Amount Deemed Paid or Distributed. The amount deemed paid or distributed to the holders of capital equity of the Company upon any such merger, consolidation, sale, transfer, exclusive license, other disposition or repurchase shall be the cash or the value of the property, rights or securities paid or distributed to such holders by the Company or the acquiring person, firm or other entity. The value of such property, rights or securities shall be determined in good faith by the Board of Directors of the Company.

2.3.4   Allocation of Escrow and Contingent Consideration. In the event of a Deemed Liquidation Event pursuant to Subsection 2.3.1(a)(i), if any portion of the consideration payable to the shareholders of the Company is payable only upon satisfaction of contingencies (the "**Additional Consideration**"), the Merger Agreement shall provide that (a) the portion of such consideration that is not Additional Consideration (such portion, the "**Initial Consideration**") shall be allocated among the holders of capital equity of the Company in accordance with Subsections 2.1 and 2.2 as if the Initial Consideration were the only consideration payable in connection with such Deemed Liquidation Event; and (b) any Additional Consideration which becomes payable to the shareholders of the Company upon satisfaction of such contingencies shall be allocated among the holders of capital equity of the Company in accordance with Subsections 2.1 and 2.2 after taking into account the previous payment of the Initial Consideration as part of the same transaction. For the purposes of this Subsection 2.3.4, consideration placed into escrow or retained as holdback to be available for satisfaction of indemnification or similar obligations in connection with such Deemed Liquidation Event shall be deemed to be Additional Consideration.

3.   Voting.

3.1   General. On any matter presented to the shareholders of the Company for their action or consideration at any meeting of shareholders of the Company (or by written consent of shareholders in lieu of meeting), each holder of outstanding Preferred Shares shall be entitled to cast the number of votes equal to the number of whole Common Shares into which the Preferred Shares held by such holder are convertible as of the record date for determining shareholders entitled to vote on such matter. Except as provided by law or by the other provisions of these Articles, holders of Preferred Shares shall vote together with the holders of Common Shares as a single class.

3.2   Election of Directors. The holders of record of the Common Shares, exclusively and as a separate class, shall be entitled to elect the total number of directors of the Company. Any director elected as provided in the preceding sentence may be removed without cause by, and only by, the affirmative vote of the holders of the shares of the ~~FINANCIAL SERVICES~~ capital shares entitled to elect such director or directors, given either at a special meeting of such ~~SPECIAL EDITION OF MEETING~~ shareholders duly called for that purpose or pursuant to a written consent of shareholders. If the

5

JAN 1 8 2022

FILED

holders of Common Shares fail to elect a sufficient number of directors to fill all directorships for which they are entitled to elect directors, voting exclusively and as a separate class, pursuant to the first sentence of this Subsection 3.2, then any directorship not so filled shall remain vacant until such time as the holders of the Common Shares elect a person to fill such directorship by vote or written consent in lieu of a meeting; and no such directorship may be filled by shareholders of the Company other than by the shareholders of the Company that are entitled to elect a person to fill such directorship, voting exclusively and as a separate class. At any meeting held for the purpose of electing a director, the presence in person or by proxy of the holders of a majority of the outstanding shares of the class or series entitled to elect such director shall constitute a quorum for the purpose of electing such director. Except as otherwise provided in this Subsection 3.2, a vacancy in any directorship filled by the holders of any class or series shall be filled only by vote or written consent in lieu of a meeting of the holders of such class or series or by any remaining director or directors elected by the holders of such class or series pursuant to this Subsection 3.2.

3.3    Protective Provisions. At any time when at least fifty percent (50%) of the aggregate number of originally issued Series B Preferred Shares, Series B-1 Preferred Shares and Series C Preferred Shares are outstanding, the Company shall not, either directly or indirectly by amendment, merger, consolidation, recapitalization, reclassification, or otherwise, do any of the following without (in addition to any other vote required by law) the written consent or affirmative vote of the Requisite Holders given in writing or by vote at a meeting, consenting or voting (as the case may be) separately as a class, and any such act or transaction entered into without such consent or vote shall be null and void ab initio, and of no force or effect:

3.3.1    amend, alter or repeal any provision of these Articles in a manner that adversely affects the powers, preferences or rights of the Series B Preferred Shares, Series B-1 Preferred Shares or Series C Preferred Shares (or any series thereof);

3.3.2    (i) create or authorize the creation of or issue any new class or series of shares or any other security convertible into or exercisable for any equity security (by reclassification, amendment or alteration of any existing security, or otherwise), having liquidation rights senior to or on parity with the Series B Preferred Shares, Series B-1 Preferred Shares or Series C Preferred Shares, or (ii) increase the authorized number of shares of Preferred Shares or any additional class or series of capital stock of the Company unless the same ranks junior to the Preferred Shares with respect to its rights, preferences and privileges;

3.3.3    liquidate, dissolve or wind-up the business and affairs of the Company, effect any merger or consolidation or any other Deemed Liquidation Event, or consent to any of the foregoing, in each case, unless the holders of Preferred Shares receive at least one times the applicable Original Issue Price; or

3.3.4    pay or declare any dividend or make any distribution on, any shares of capital stock of the Company other than (i) dividends or distributions on the Preferred Shares as expressly authorized herein, (ii) dividends or other distributions payable on the Common Shares solely in the form of additional shares of Common Shares and (iii) dividends or other distributions paid on any shares of capital stock of the Company in an amount necessary to permit the holders of such capital stock to pay all of the U.S. federal, state and local income tax liabilities

6


REGISTERED AGENT SERVICES

JAN 1 8 2022

FILED

attributable to such holder of capital stock's ownership of such shares of capital stock, as determined in good faith by the Board of Directors of the Company.

### 4.   Optional Conversion.

The holders of the Preferred Shares shall have conversion rights as follows (the "**Conversion Rights**"):

### 4.1   Right to Convert.

4.1.1   Conversion Ratio. Each share of Preferred Shares shall be convertible, at the option of the holder thereof, at any time and from time to time, and without the payment of additional consideration by the holder thereof, into such number of fully paid and non-assessable Common Shares as is determined by dividing the applicable Original Issue Price by the applicable Conversion Price (as defined below) in effect at the time of conversion. The "**Conversion Price**" shall initially be equal to $0.18972 with respect to the Series A Preferred Shares, $26.21 with respect to the Series B Preferred Shares, $36.41 with respect to the Series B-1 Preferred Shares and $46.3518 with respect to the Series C Preferred Shares. Such applicable Conversion Price, and the rate at which Preferred Shares may be converted into Common Shares, shall be subject to adjustment as provided below.

4.1.2   Termination of Conversion Rights. In the event of a liquidation, dissolution or winding up of the Company or a Deemed Liquidation Event, the Conversion Rights shall terminate at the close of business on the last full day preceding the date fixed for the payment of any such amounts distributable on such event to the holders of Preferred Shares.

4.2   Fractional Shares. No fractional Common Shares shall be issued upon conversion of the Preferred Shares. In lieu of any fractional shares to which the holder would otherwise be entitled, the Company shall pay cash equal to such fraction multiplied by the fair market value of a share of Common Shares as determined in good faith by the Board of Directors of the Company. Whether or not fractional shares would be issuable upon such conversion shall be determined on the basis of the total number of Preferred Shares the holder is at the time converting into Common Shares and the aggregate number of Common Shares issuable upon such conversion.

### 4.3   Mechanics of Conversion.

4.3.1   Notice of Conversion. In order for a holder of Preferred Shares to voluntarily convert Preferred Shares into Common Shares, such holder shall (a) provide written notice to the Company's transfer agent at the office of the transfer agent for the Preferred Shares (or at the principal office of the Company if the Company serves as its own transfer agent) that such holder elects to convert all or any number of such holder's Preferred Shares and, if applicable, any event on which such conversion is contingent and (b), if such holder's shares are certificated, surrender the certificate or certificates for such Preferred Shares (or, if such registered holder alleges that such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Company to indemnify the Company against any claim that may be made against the Company on account of the alleged loss, theft or destruction of such

7

FINANCIAL SERVICES
REGULATORY COMMISSION

NATION
2022

FILED

certificate), at the office of the transfer agent for the Preferred Shares (or at the principal office of the Company if the Company serves as its own transfer agent). Such notice shall state such holder's name or the names of the nominees in which such holder wishes the Common Shares to be issued. If required by the Company, any certificates surrendered for conversion shall be endorsed or accompanied by a written instrument or instruments of transfer, in form satisfactory to the Company, duly executed by the registered holder or his, her or its attorney duly authorized in writing. The close of business on the date of receipt by the transfer agent (or by the Company if the Company serves as its own transfer agent) of such notice and, if applicable, certificates (or lost certificate affidavit and agreement) shall be the time of conversion (the "**Conversion Time**"), and the Common Shares issuable upon conversion of the specified shares shall be deemed to be outstanding of record as of such date. The Company shall, as soon as practicable after the Conversion Time (i) effect a compulsory repurchase of the specified Preferred Shares and the issuance of the number of full Common Shares issuable upon such conversion in accordance with the provisions hereof through updating, or causing to be updated, the register of members of the Company , (ii) issue and deliver to such holder of Preferred Shares, or to his, her or its nominees, a certificate or certificates for the number of full Common Shares issuable upon such conversion in accordance with the provisions hereof and a certificate for the number (if any) of the Preferred Shares represented by the surrendered certificate that were not converted into Common Shares, (ii) pay in cash such amount as provided in Subsection 4.2 in lieu of any fraction of a share of Common Shares otherwise issuable upon such conversion and (iii) pay all declared but unpaid dividends on the Preferred Shares converted.

        4.3.2   Reservation of Shares. The Company shall at all times when the Preferred Shares shall be outstanding, reserve and keep available out of its authorized but unissued capital equity, for the purpose of effecting the conversion of the Preferred Shares, such number of its duly authorized Common Shares as shall from time to time be sufficient to effect the conversion of all outstanding Preferred Shares; and if at any time the number of authorized but unissued Common Shares shall not be sufficient to effect the conversion of all then outstanding shares of the Preferred Shares, the Company shall take such corporate action as may be necessary to increase its authorized but unissued Common Shares to such number of shares as shall be sufficient for such purposes, including, without limitation, engaging in best efforts to obtain the requisite shareholder approval of any necessary amendment to these Articles. Before taking any action which would cause an adjustment reducing the Conversion Price below the then par value of the Common Shares issuable upon conversion of the Preferred Shares, the Company will take any corporate action which may, in the opinion of its counsel, be necessary in order that the Company may validly and legally issue fully paid and non-assessable Common Shares at such adjusted applicable Conversion Price.

        4.3.3   Effect of Conversion. All Preferred Shares which shall have been surrendered for conversion as herein provided shall no longer be deemed to be outstanding and all rights with respect to such shares shall immediately cease and terminate at the Conversion Time, except only the right of the holders thereof to receive Common Shares in exchange therefor, to receive payment in lieu of any fraction of a share otherwise issuable upon such conversion as provided in Subsection 4.2 and to receive payment of any dividends declared but unpaid thereon.

        4.3.4   No Further Adjustment. Upon any such conversion, no adjustment to the applicable Conversion Price shall be made for any declared but unpaid dividends

FINANCIAL SERVICES
REGULATORY COMMISSION

JAN 1 8 2022

FILED

on the Preferred Shares surrendered for conversion or on the Common Shares delivered upon conversion.

4.3.5    Taxes. The Company shall pay any and all issue and other similar taxes (if any) that may be payable by the Company in respect of any issuance or delivery of Common Shares upon conversion of Preferred Shares pursuant to this Section 4. The Company shall not, however, be required to pay any tax which may be payable in respect of any transfer involved in the issuance and delivery of Common Shares in a name other than that in which the Preferred Shares so converted were registered, and no such issuance or delivery shall be made unless and until the person or entity requesting such issuance has paid to the Company the amount of any such tax or has established, to the satisfaction of the Company , that such tax has been paid.

4.4    Adjustments to Conversion Price for Diluting Issues.

4.4.1    Special Definitions. For purposes of this Article III, the following definitions shall apply:

(a)    **"Option"** shall mean rights, options, debentures or warrants to subscribe for, purchase or otherwise acquire Common Shares or Convertible Securities.

(b)    **"Series C Original Issue Date"** shall mean the date on which the first share of Series C Preferred Shares was issued.

(c)    **"Convertible Securities"** shall mean any evidences of indebtedness, shares or other securities directly or indirectly convertible into or exchangeable for Common Shares, but excluding Options.

(d)    **"Additional Common Shares"** shall mean all Common Shares issued (or, pursuant to Subsection 4.4.3 below, deemed to be issued) by the Company after the Series C Original Issue Date, other than (1) the following Common Shares and (2) Common Shares deemed issued pursuant to the following Options and Convertible Securities (clauses (1) and (2), collectively, **"Exempted Securities"**):



(i)    Common Shares, Options or Convertible Securities issued as a dividend or distribution on Preferred Shares;

(ii)    Common Shares, Options or Convertible Securities issued by reason of a dividend, share split, split-up or other distribution on Common Shares that is covered by Subsection 4.5, 4.6, 4.7 or 4.8;

(iii)    Common Shares or Options issued to employees or directors of, or consultants or advisors to  the Company or any of its

9

subsidiaries or affiliates pursuant to a plan, agreement or arrangement;

(iv)     Common Shares or Convertible Securities actually issued upon the exercise of Options or Common Shares actually issued upon the conversion or exchange of Convertible Securities, in each case provided such issuance is pursuant to the terms of such Option or Convertible Security;

(v)      Common Shares, Options or Convertible Securities issued to banks, equipment lessors or other financial institutions, or to real property lessors, pursuant to a debt financing, equipment leasing or real property leasing transaction;

(vi)     Common Shares, Options or Convertible Securities issued to suppliers or third party service providers in connection with the provision of goods or services;

(vii)    Common Shares, Options or Convertible Securities issued pursuant to the acquisition of another Company by the Company whether by merger, stock purchase, exchange of shares, purchase of substantially all of the assets or other reorganization or to a joint venture agreement; and



(viii)   Common Shares, Options or Convertible Securities issued in connection with sponsored research, collaboration, technology license, development, OEM, marketing, endorsement or other similar agreements or strategic partnerships.

4.4.2   <u>No Adjustment of Conversion Price</u>. No adjustment in the applicable Conversion Price shall be made as the result of the issuance or deemed issuance of Additional Common Shares if the Company receives written notice from the Requisite Holders agreeing that no such adjustment shall be made as the result of the issuance or deemed issuance of such Additional Common Shares.

4.4.3   <u>Deemed Issue of Additional Common Shares</u>.

(a)      If the Company at any time or from time to time after the Series C Original Issue Date shall issue any Options or Convertible Securities (excluding

Options or Convertible Securities which are themselves Exempted Securities) or shall fix a record date for the determination of holders of any class of securities entitled to receive any such Options or Convertible Securities, then the maximum number of Common Shares (as set forth in the instrument relating thereto, assuming the satisfaction of any conditions to exercisability, convertibility or exchangeability but without regard to any provision contained therein for a subsequent adjustment of such number) issuable upon the exercise of such Options or, in the case of Convertible Securities and Options therefor, the conversion or exchange of such Convertible Securities, shall be deemed to be Additional Common Shares issued as of the time of such issue or, in case such a record date shall have been fixed, as of the close of business on such record date.

(b)     If the terms of any Option or Convertible Security, the issuance of which resulted in an adjustment to the applicable Conversion Price pursuant to the terms of Subsection 4.4.4, are revised as a result of an amendment to such terms or any other adjustment pursuant to the provisions of such Option or Convertible Security (but excluding automatic adjustments to such terms pursuant to anti-dilution or similar provisions of such Option or Convertible Security) to provide for either (1) any increase or decrease in the number of Common Shares issuable upon the exercise, conversion and/or exchange of any such Option or Convertible Security or (2) any increase or decrease in the consideration payable to the Company upon such exercise, conversion and/or exchange, then, effective upon such increase or decrease becoming effective, the applicable Conversion Price computed upon the original issue of such Option or Convertible Security (or upon the occurrence of a record date with respect thereto) shall be readjusted to such applicable Conversion Price as would have obtained had such revised terms been in effect upon the original date of issuance of such Option or Convertible Security. Notwithstanding the foregoing, no readjustment pursuant to this clause (b) shall have the effect of increasing the applicable Conversion Price to an amount which exceeds the lower of (i) the applicable Conversion Price in effect immediately prior to the original adjustment made as a result of the issuance of such Option or Convertible Security, or (ii) the applicable Conversion Price that would have resulted from any issuances of Additional Common Shares (other than deemed issuances of Additional Common Shares as a result of the issuance of such Option or Convertible Security) between the original adjustment date and such readjustment date.

(c)     If the terms of any Option or Convertible Security (excluding Options or Convertible Securities which are themselves Exempted Securities), the issuance of which did not result in an adjustment to the applicable Conversion Price pursuant to the terms of Subsection 4.4.4 (either because the consideration per share (determined pursuant to Subsection 4.4.5) of the Additional Common Shares subject thereto was equal to or greater than the applicable Conversion Price then in effect, or because such Option or Convertible Security was issued before the Series C Original Issue Date), are revised after the Series C Original Issue Date as a result of an amendment to such terms or any other adjustment pursuant to the provisions of such Option or Convertible Security (but excluding automatic adjustments to such terms pursuant to anti-dilution or similar provisions of such Option or Convertible Security) to provide for either (1) any increase in the number of Common Shares issuable upon the exercise, conversion or exchange of any such Option or Convertible Security or (2) any decrease in the consideration payable to the Company upon such exercise, conversion or exchange, then such Option or Convertible Security, as so amended or adjusted, and the Additional Common Shares subject thereto (determined in the manner provided in Subsection 4.4.3(a) shall be deemed to have been issued effective upon such increase or decrease becoming effective.

11

FINANCIAL SERVICES
REGULATORY COMMISSION

JAN 10 2023

FILED

(d)     Upon the expiration or termination of any unexercised Option or unconverted or unexchanged Convertible Security (or portion thereof) which resulted (either upon its original issuance or upon a revision of its terms) in an adjustment to the applicable Conversion Price pursuant to the terms of Subsection 4.4.4, the applicable Conversion Price shall be readjusted to such applicable Conversion Price as would have obtained had such Option or Convertible Security (or portion thereof) never been issued.

(e)     If the number of Common Shares issuable upon the exercise, conversion and/or exchange of any Option or Convertible Security, or the consideration payable to the Company upon such exercise, conversion and/or exchange, is calculable at the time such Option or Convertible Security is issued or amended but is subject to adjustment based upon subsequent events, any adjustment to the applicable Conversion Price provided for in this Subsection 4.4.3 shall be effected at the time of such issuance or amendment based on such number of shares or amount of consideration without regard to any provisions for subsequent adjustments (and any subsequent adjustments shall be treated as provided in clauses (b) and (c) of this Subsection 4.4.3). If the number of Common Shares issuable upon the exercise, conversion and/or exchange of any Option or Convertible Security, or the consideration payable to the Company upon such exercise, conversion and/or exchange, cannot be calculated at all at the time such Option or Convertible Security is issued or amended, any adjustment to the applicable Conversion Price that would result under the terms of this Subsection 4.4.3 at the time of such issuance or amendment shall instead be effected at the time such number of shares and/or amount of consideration is first calculable (even if subject to subsequent adjustments), assuming for purposes of calculating such adjustment to the applicable Conversion Price that such issuance or amendment took place at the time such calculation can first be made.

4.4.4     Adjustment of Conversion Price Upon Issuance of Additional Common Shares. In the event the Company shall at any time after the Series C Original Issue Date issue Additional Common Shares (including Additional Common Shares deemed to be issued pursuant to Subsection 4.4.3), without consideration or for a consideration per share less than the applicable Conversion Price in effect immediately prior to such issue, then the applicable Conversion Price shall be reduced, concurrently with such issue, to a price (calculated to the nearest one-hundredth of a cent) determined in accordance with the following formula:

$$CP_2 = CP_1 * (A + B) \div (A + C).$$

For purposes of the foregoing formula, the following definitions shall apply:

(a)     "$CP_2$" shall mean the applicable Conversion Price in effect immediately after such issue of Additional Common Shares

(b)     "$CP_1$" shall mean the applicable Conversion Price in effect immediately prior to such issue of Additional Common Shares;

(c)     "A" shall mean the number of Common Shares outstanding immediately prior to such issue of Additional Common Shares (treating for this purpose as outstanding all Common Shares issuable upon exercise of Options and the conversion of Preferred Shares, in each case, outstanding immediately prior to such issue but excluding any

FINANCIAL SERVICES
REGULATORY COMMISSION

JAN 1 8 2022
FILED

12

Common Shares issuable upon conversion or exchange of any other Convertible Securities then outstanding);

(d)　　"B" shall mean the number of Common Shares that would have been issued if such Additional Common Shares had been issued at a price per share equal to $CP_1$ (determined by dividing the aggregate consideration received by the Company in respect of such issue by $CP_1$); and

(e)　　"C" shall mean the number of such Additional Common Shares issued in such transaction.

4.4.5　Determination of Consideration. For purposes of this Subsection 4.4, the consideration received by the Company for the issue of any Additional Common Shares shall be computed as follows:

(a)　　Cash and Property: Such consideration shall:

(i)　　insofar as it consists of cash, be computed at the aggregate amount of cash received by the Company, excluding amounts paid or payable for accrued interest;

(ii)　　insofar as it consists of property other than cash, be computed at the fair market value thereof at the time of such issue, as determined in good faith by the Board of Directors of the Company; and



(iii)　　in the event Additional Common Shares are issued together with other shares or securities or other assets of the Company for consideration which covers both, be the proportion of such consideration so received, computed as provided in clauses (i) and (ii) above, as determined in good faith by the Board of Directors of the Company .

(b)　　Options and Convertible Securities. The consideration per share received by the Company for Additional Common Shares deemed to have been issued pursuant to Subsection 4.4.3, relating to Options and Convertible Securities, shall be determined by dividing:

(i)　　The total amount, if any, received or receivable by the Company as consideration for the issue of such Options or Convertible Securities, plus the minimum aggregate amount of additional consideration (as set forth in the instruments relating thereto,

13

without regard to any provision contained therein for a subsequent adjustment of such consideration) payable to the Company upon the exercise of such Options or the conversion or exchange of such Convertible Securities, or in the case of Options for Convertible Securities, the exercise of such Options for Convertible Securities and the conversion or exchange of such Convertible Securities, by



(ii)    the maximum number of Common Shares (as set forth in the instruments relating thereto, without regard to any provision contained therein for a subsequent adjustment of such number) issuable upon the exercise of such Options or the conversion or exchange of such Convertible Securities, or in the case of Options for Convertible Securities, the exercise of such Options for Convertible Securities and the conversion or exchange of such Convertible Securities.

4.4.6    Multiple Closing Dates. In the event the Company shall issue on more than one date Additional Common Shares that are a part of one transaction or a series of related transactions and that would result in an adjustment to the applicable Conversion Price pursuant to the terms of Subsection 4.4.4, then, upon the final such issuance, the applicable Conversion Price shall be readjusted to give effect to all such issuances as if they occurred on the date of the first such issuance (and without giving effect to any additional adjustments as a result of any such subsequent issuances within such period).

4.5    Adjustment for Share Splits and Combinations. If the Company shall at any time or from time to time after the Series C Original Issue Date effect a subdivision of the outstanding Common Shares, the applicable Conversion Price in effect immediately before that subdivision shall be proportionately decreased so that the number of Common Shares issuable on conversion of each share of such series shall be increased in proportion to such increase in the aggregate number of Common Shares outstanding. If the Company shall at any time or from time to time after the Series C Original Issue Date combine the outstanding Common Shares, the applicable Conversion Price in effect immediately before the combination shall be proportionately increased so that the number of Common Shares issuable on conversion of each share of such series shall be decreased in proportion to such decrease in the aggregate number of Common Shares outstanding. Any adjustment under this subsection shall become effective at the close of business on the date the subdivision or combination becomes effective.

4.6    Adjustment for Certain Dividends and Distributions. In the event the Company at any time or from time to time after the Series C Original Issue Date shall make or issue, or fix a record date for the determination of holders of Common Shares entitled to receive,

14

a dividend or other distribution payable on the Common Shares in additional Common Shares, then and in each such event the applicable Conversion Price in effect immediately before such event shall be decreased as of the time of such issuance or, in the event such a record date shall have been fixed, as of the close of business on such record date, by multiplying the applicable Conversion Price then in effect by a fraction:

(1)     the numerator of which shall be the total number of Common Shares issued and outstanding immediately prior to the time of such issuance or the close of business on such record date, and

(2)     the denominator of which shall be the total number of Common Shares issued and outstanding immediately prior to the time of such issuance or the close of business on such record date plus the number of Common Shares issuable in payment of such dividend or distribution.

Notwithstanding the foregoing (a) if such record date shall have been fixed and such dividend is not fully paid or if such distribution is not fully made on the date fixed therefor, the applicable Conversion Price shall be recomputed accordingly as of the close of business on such record date and thereafter the applicable Conversion Price shall be adjusted pursuant to this subsection as of the time of actual payment of such dividends or distributions; and (b) that no such adjustment shall be made if the holders of Preferred Shares simultaneously receive a dividend or other distribution of Common Shares in a number equal to the number of Common Shares as they would have received if all outstanding Preferred Shares had been converted into Common Shares on the date of such event.

4.7     Adjustments for Other Dividends and Distributions. In the event the Company at any time or from time to time after the Series C Original Issue Date shall make or issue, or fix a record date for the determination of holders of Common Shares entitled to receive, a dividend or other distribution payable in securities of the Company (other than a distribution of Common Shares in respect of outstanding Common Shares) or in other property and the provisions of Section 1 do not apply to such dividend or distribution, then and in each such event the holders of Preferred Shares shall receive, simultaneously with the distribution to the holders of Common Shares, a dividend or other distribution of such securities or other property in an amount equal to the amount of such securities or other property as they would have received if all outstanding Preferred Shares had been converted into Common Shares on the date of such event.

4.8     Adjustment for Merger or Reorganization, etc. Subject to the provisions of Subsection 2.3, if there shall occur any reorganization, recapitalization, reclassification, consolidation or merger involving the Company in which the Common Shares (but not the Preferred Shares) is converted into or exchanged for securities, cash or other property (other than a transaction covered by Subsections 4.4, 4.6 or 4.7), then, following any such reorganization, recapitalization, reclassification, consolidation or merger, each share of Preferred Shares shall thereafter be convertible in lieu of the Common Shares into which it was convertible prior to such event into the kind and amount of securities, cash or other property which a holder of the number of Common Shares of the Company issuable upon conversion of one share of Preferred Shares immediately prior to such reorganization, recapitalization, reclassification, consolidation or merger would have been entitled to receive pursuant to such transaction; and, in

15


JAN 1 8 2022

FILED

such case, appropriate adjustment (as determined in good faith by the Board of Directors of the Company ) shall be made in the application of the provisions in this Section 4 with respect to the rights and interests thereafter of the holders of the Preferred Shares, to the end that the provisions set forth in this Section 4 (including provisions with respect to changes in and other adjustments of the applicable Conversion Price) shall thereafter be applicable, as nearly as reasonably may be, in relation to any securities or other property thereafter deliverable upon the conversion of the Preferred Shares. For the avoidance of doubt, nothing in this Subsection 4.8 shall be construed as preventing the holders of Preferred Shares from exercising any dissenters rights to which they are otherwise entitled under the Companies Act, nor shall this Subsection 4.8 be deemed conclusive evidence of the fair value of the Preferred Shares in any such proceeding.

4.9     Certificate as to Adjustments. Upon the occurrence of each adjustment or readjustment of the applicable Conversion Price pursuant to this Section 4, the Company at its expense shall, as promptly as reasonably practicable but in any event not later than ten (10) days thereafter, compute such adjustment or readjustment in accordance with the terms hereof and furnish to each holder of Preferred Shares a certificate setting forth such adjustment or readjustment (including the kind and amount of securities, cash or other property into which the Preferred Shares is convertible) and showing in detail the facts upon which such adjustment or readjustment is based. The Company shall, as promptly as reasonably practicable after the written request at any time of any holder of Preferred Shares (but in any event not later than ten (10) days thereafter), furnish or cause to be furnished to such holder a certificate setting forth (i) the applicable Conversion Price then in effect, and (ii) the number of Common Shares and the amount, if any, of other securities, cash or property which then would be received upon the conversion of Preferred Shares.

4.10     Notice of Record Date. In the event:

(a)     the Company shall take a record of the holders of its Common Shares (or other capital equity or securities at the time issuable upon conversion of the Preferred Shares) for the purpose of entitling or enabling them to receive any dividend or other distribution, or to receive any right to subscribe for or purchase any shares of any class or any other securities, or to receive any other security; or

(b)     of any capital reorganization of the Company, any reclassification of the Common Shares of the Company, or any Deemed Liquidation Event; or

(c)     of the voluntary or involuntary liquidation or winding-up of the Company,

then, and in each such case, the Company will send or cause to be sent to the holders of the Preferred Shares a notice specifying, as the case may be, (i) the record date for such dividend, distribution or right, and the amount and character of such dividend, distribution or right, or (ii) the effective date on which such reorganization, reclassification, consolidation, merger, transfer, liquidation or winding-up is proposed to take place, and the time, if any is to be fixed, as of which the holders of record of Common Shares (or such other capital equity or securities at the time issuable upon the conversion of the Preferred Shares) shall be entitled to exchange their Common Shares (or such other capital equity or securities) for securities or other property deliverable upon

16



FILED

such reorganization, reclassification, consolidation, merger, transfer, liquidation or winding-up, and the amount per share and character of such exchange applicable to the Preferred Shares and the Common Shares. Such notice shall be sent at least ten (10) days prior to the record date or effective date for the event specified in such notice.

5.      Mandatory Conversion.

5.1      Trigger Events. Upon either (a) a Qualified IPO (as defined below), (b) a Qualified SPAC Transaction (as defined below) or (c) a Qualified Direct Listing Transaction (as defined below) or (d) the date and time, or the occurrence of an event, specified by vote or written consent of the Requisite Holders (the time of such closing or the date and time specified or the time of the event specified in such vote or written consent is referred to herein as the "**Mandatory Conversion Time**"), then (i) all outstanding Preferred Shares shall automatically be converted into Common Shares, at the then effective conversion rate as calculated pursuant to Subsection 4.1.1 and (ii) such shares may not be reissued by the Company.

5.2      For purposes of this Section 5, the following definitions shall apply:

5.2.1      A "**Qualified IPO**" means the closing of a firm commitment underwritten public offering with a price of at least 150% of the Series C Preferred Share Conversion Price and gross proceeds to the Company of not less than $400 million.

5.2.2      A "**Qualified SPAC Transaction**" means a transaction or series of transactions which constitute the acquisition of the Company by, or merger of the Company with, a special purpose acquisition company or a new holding company (each, a "**SPAC**") and which results in the surviving entity being listed on NASDAQ or other internationally recognized stock exchange (the "**Applicable Exchange**" and the transaction, the "**SPAC Transaction**") provided that either: (i) the proposed SPAC Transaction ascribes a per share equity valuation of the Common Shares immediately prior to the SPAC Transaction (assuming conversion of all securities convertible into Common Shares immediately prior to the SPAC Transaction and exercise of all issued and outstanding options to purchase Common Shares) that is at least equal to 110% of the Conversion Price of the Series C Preferred Shares; or (ii) the Company's Common Shares has an average daily closing price on the Applicable Exchange at the end of any calendar month of at least 150% of the Series C Preferred Share Conversion Price with respect to all trading days occurring within such calendar month.

5.2.3      A "**Qualified Direct Listing Transaction**" means the Company's voluntary registration of its common stock with the SEC and listing the Applicable Exchange, provided that the Company's Common Shares has an average daily closing price on the Applicable Exchange at the end of any calendar month of at least 150% of the Series C Preferred Share Conversion Price with respect to all trading days occurring within such calendar month.

5.3      Procedural Requirements. All holders of record of Preferred Shares shall be sent written notice of the Mandatory Conversion Time and the place designated for mandatory conversion of all such Preferred Shares pursuant to this Section 5. Such notice need not be sent in advance of the occurrence of the Mandatory Conversion Time. Upon receipt of such notice, each holder of Preferred Shares in certificated form shall surrender his, her or its certificate

FINANCIAL SERVICES,
REGULATORY COMMISSION
JAN 1 8 2022

FILED

17

or certificates for all such shares (or, if such holder alleges that such certificate has been lost, stolen or destroyed, a lost certificate affidavit and agreement reasonably acceptable to the Company to indemnify the Company against any claim that may be made against the Company on account of the alleged loss, theft or destruction of such certificate) to the Company at the place designated in such notice. If so required by the Company, any certificates surrendered for conversion shall be endorsed or accompanied by written instrument or instruments of transfer, in form satisfactory to the Company, duly executed by the registered holder or by his, her or its attorney duly authorized in writing. All rights with respect to the Preferred Shares converted pursuant to Subsection 5.1, including the rights, if any, to receive notices and vote (other than as a holder of Common Shares), will terminate at the Mandatory Conversion Time (notwithstanding the failure of the holder or holders thereof to surrender any certificates at or prior to such time), except only the rights of the holders thereof, upon surrender of any certificate or certificates of such holders (or lost certificate affidavit and agreement) therefor, to receive the items provided for in the next sentence of this Subsection 5.2. As soon as practicable after the Mandatory Conversion Time and, if applicable, the surrender of any certificate or certificates (or lost certificate affidavit and agreement) for Preferred Shares, the Company shall (a) effect a compulsory repurchase of all outstanding Preferred Shares and the issuance of the number of full Common Shares issuable upon such conversion in accordance with the provisions hereof through updating, or causing to be updated, the register of members of the Company, (b) issue and deliver to such holder, or to his, her or its nominees, a certificate or certificates for the number of full Common Shares issuable on such conversion in accordance with the provisions hereof and (c) pay cash as provided in Subsection 4.2 in lieu of any fraction of a share of Common Shares otherwise issuable upon such conversion and the payment of any declared but unpaid dividends on the Preferred Shares converted.

6.     Non-Redeemable Preferred Shares. The Preferred Shares are not redeemable at the option of any holder thereof.

7.     Waiver. Any of the rights, powers, preferences and other terms of the Preferred Shares set forth herein may be waived on behalf of all holders of Preferred Shares by the affirmative written consent or vote of the holders of at least a majority of the Preferred Shares then outstanding. Notwithstanding the foregoing, any rights, powers, preferences and other terms specific and unique to (i) Series B Preferred Shares may not be waived without the affirmative written consent or vote of the holders of at least a majority of the outstanding Series B Preferred Shares, (ii) Series B-1 Preferred Shares may not be waived without the affirmative written consent or vote of the holders of at least a majority of the outstanding Series B-1 Preferred Shares and (iii) Series C Preferred Shares may not be waived without the affirmative written consent or vote of the holders of at least a majority of the outstanding Series C Preferred Shares.

8.     Notices. Any notice required or permitted by the provisions of this Article III to be given to a holder of Preferred Shares shall be mailed, postage prepaid, to the post office address last shown on the records of the Company, or given by electronic communication, and shall be deemed sent upon such mailing or electronic transmission.

**ARTICLE IV**

**BOARD OF DIRECTORS**



FINANCIAL SERVICES
REGULATORY COMMISSION

JAN 1 8 2022

FILED

18

The powers of the Company shall be exercised by the Board of Directors of the Company, which shall be empowered to name one or more Managing Directors. Subject to any restrictions in the appointing resolution, an act of a Managing Director shall bind the Company as if said act had been approved by the Board of Directors. Only a member of the Board of Directors shall serve as a Managing Director. The Company shall have a minimum of 1 and a maximum of 11 directors.

## ARTICLE V

## CORPORATE PURPOSE

The objects for which the Company is established are:

a) Software Platform; and all business activities permitted by the laws of the State of Antigua and Barbuda other than International Banking, Trust and Insurance, Betting and Bookmaking or any activity which requires a Licence under the International Business Corporations Act.

b) To acquire and deal with any property, real or personal, to erect any buildings, and generally to do all acts and things which, in the opinion of the Company or the Directors, may be conveniently or profitably, or usefully acquired and dealt with, carried on, erected or done by the Company in connection with said property.

c) To generally have and exercise all powers, rights and privileges necessary and incident to carrying out properly the objects herein mentioned.

## ARTICLE VI

## EXISTENCE

The Company shall have perpetual existence unless sooner dissolved in accordance with the laws of the Antigua and Barbuda. The date on which corporate existence shall begin is the date on which these Articles of Incorporation are filed with the Director of International Business Corporations of Antigua and Barbuda.

## ARTICLE VII

## LIABILITY OF SHAREHOLDERS

The liability of a shareholder is limited to the amount, if any, unpaid on the shares held or subscribed to by said shareholder.

## ARTICLE VIII

## INDEMNIFICATIONS

The Company shall indemnify any and all of its Directors, officers, employees or agents or former Directors, officers, employees or agents or any person or persons who may have served at its request as a Director, officer, employee or agent of another corporation, partnerships joint venture, trust or other enterprise in which it owns capital shares or of which it is a creditor, to the full extent permitted by law. Said indemnification shall include, but not limited to, the expenses, including

19

JAN 1 8 2022

FILED

the cost of any judgements, fines settlements and counsel's fees, actually and necessarily paid or incurred in connection with any action, suit or proceeding, whether civil, criminal, administrative or investigative, and any appeals thereof, to which any such person or his legal representative may be a party or may be threatened to be made a party by reason of his being or having been a Director, officer, employee or agent as herein provided. The foregoing right of indemnification shall not be exclusive of any rights to which any Director, officer, employee or agent may be entitled as a matter of law or which he may be lawfully granted.

## ARTICLE IX

### CHARTER CONTINUANCE

The Company is authorised to transfer its charter to any jurisdiction, which permits continuation of a foreign corporation.

### SECURITIES

No Securities of the Company will be distributed to the public in the Antigua and Barbuda in contravention of Section 365 of the International Business Corporations Act, 1982.

## ARTICLE XI

### INCORPORATORS

The name and address of the Company's incorporators are:

**ARTHUR G. B. THOMAS**                     **LISA M. JOHN-WESTE**
Clarkes Hill                                English Harbour
St. John's                                  St. Paul's
Antigua                                     Antigua


**REGISTERED**

Dated this 20th Day of January, 2022 at St. John's, Antigua



20