- Benjamin Baruh
- Jürg Bavaud
- Mohammad Hans Dastmaltchi
- Brett Harrison
- Robin Matzke
- Ryne Miller
- Max Rhotert
- Stephen Stephens
- John Samuel Trabucco
- Ernest Ukaj
- Brandon Williams

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| FTX TRADING LTD. and MACLAURIN INVESTMENTS LTD.,<br><br>    Plaintiffs,<br><br>-against-<br><br>LOREM IPSUM UG, PATRICK GRUHN, ROBIN MATZKE, and BRANDON WILLIAMS,<br><br>    Defendants. | Adv. Pro. No. 23-50437 (JTD) |

### THE DEBTORS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS ROBIN MATZKE AND LOREM IPSUM UG

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable by Federal Rules of Bankruptcy Procedure 7026, 7034, and 9014 (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules" and together with the Bankruptcy Rules, the "Rules"), the Debtors (as defined below) submit this request for the production of documents (the "Requests") to Defendants Robin Matzke and Lorem Ipsum UG in connection with the above-captioned Adversary Proceeding.

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX [cases.ra.kroll.com]. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

A.0060

The Debtors request that the documents and electronic information responsive to the Requests identified in the attached **Exhibit A** be produced to Stephen Ehrenberg, Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004, counsel for the Debtors, no later than November 13, 2023.

Please take further notice that the Debtors reserve their rights under title 11 of the United States Code (the "Bankruptcy Code"), the Rules, and any applicable law regarding the subject matter of these Requests to amend, supplement, and/or modify **Exhibit A** attached hereto, or serve additional discovery requests.

| | |
|---|---|
| Dated: October 13, 2023<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>*/s/ Matthew B. McGuire*<br>Adam G. Landis (No. 3407)<br>Matthew B. McGuire (No. 4366)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450<br>E-mail: landis@lrclaw.com<br>    mcguire@lrclaw.com<br>    brown@lrclaw.com<br>    pierce@lrclaw.com<br><br>-and-<br><br>**SULLIVAN & CROMWELL LLP**<br>Steven L. Holley (admitted *pro hac vice*)<br>Stephen Ehrenberg (admitted *pro hac vice*)<br>Brian D. Glueckstein (admitted *pro hac vice*)<br>Christopher J. Dunne (admitted *pro hac vice*)<br>125 Broad Street<br>New York, NY 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>E-mail: ehrenbergs@sullcrom.com<br>    holleys@sullcrom.com<br>    gluecksteinb@sullcrom.com<br>    dunnec@sullcrom.com<br><br>*Counsel for the Debtors*<br>*and Debtors-in-Possession* |

# EXHIBIT A

## DEFINITIONS

For purposes of the Document Requests, the following terms shall apply:

1. The term "**Acquisition of Digital Assets AG**" refers to the purchase by Alameda Research Ltd. and FTX Trading Ltd. of the shares of Digital Assets AG, now known as FTX Europe AG, and its affiliates and subsidiaries, via three Share Purchase Agreements executed in October 2020, July 2021, and November 2021.

2. The term "**Affiliate**" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

3. The terms "**and**" and "**or**" in Definitions and Requests shall be construed conjunctively or disjunctively as necessary to bring within the scope of the Requests all Documents or information that might otherwise be construed as outside their scope.

4. The term "**any**" means "each and every," "any and all," and "any one."

5. The term "**ASC 805 Accounting Analysis**" shall refer to the report issued by BDO USA LLP dated April 7, 2022, entitled "ASC 805 Valuation of Certain Assets of FTX Trading Ltd. for Financial Reporting Purposes," and all versions thereof, as well as to all services performed under the Statement of Work executed by FTX Trading Ltd. and BDO USA LLP dated February 22, 2022, concerning the purchase accounting analysis of Digital Assets AG.

6. The term "**Auditing and Accounting Companies**" means Prager Metis CPAs, LLC, Robert Lee & Associates LLP, Rivers & Moorehead PLLC, and Silicon Valley Accountants, which were involved in the preparation of the FTX Trading Ltd. Audited Financial Statement, as defined below, or of materials relied upon in preparing the FTX Trading Ltd. Audited Financial Statement.

7. The term "**communication**," or any variant thereof, means any contact between two or more persons by which any information or knowledge is transmitted or conveyed, or attempted to be transmitted or conveyed, and shall include, without limitation, written contact by means such as letters, memoranda, telecopies, text messages, instant messages, Slack messages, Signal messages, Telegram messages, emails, social media, or any other document, and oral contact, such as face-to-face meetings, videoconference or telephone conversations, or social media. The term "Communication" is not limited to internal Communications but includes Communications between the Debtors and third parties and Communications between or among third parties.

8. The term "**concerning**" is to be understood in its broadest sense and means concerning, constituting, identifying, evidencing, summarizing, commenting upon, referring to, relating to, arising out of, describing, digesting, reporting, listing, analyzing, studying, discussing, stating, setting forth, reflecting, interpreting, concerning, recording, including, negating, manifesting, containing, or comprising the subject matter identified.

9. The term "**Debtors**" means, collectively, FTX Trading Ltd., Maclaurin Investments Ltd., and their affiliated entities, as debtors-in-possession, as applicable, which filed voluntary chapter 11 petitions under the Bankruptcy Code commencing these chapter 11 cases.

10. The term "**Digital Assets AG**" means Digital Assets AG, later known as FTX Europe AG, as well as any Affiliates, agents, assigns, directors, employees, officers, parents, partners, representatives, subsidiaries, or any other Persons acting or purporting to act on their behalf, and any predecessor or successor of the foregoing.

11. The term "**document**" has the meaning prescribed by Rule 7034 of the Bankruptcy Rules, including, without limitation, any tangible thing upon which any expression,

Communication or representation has been recorded by any means including, but not limited to, handwriting, printing, photographing, videotaping, magnetic impulse, computer disks, computer storage drives, computer tapes, or mechanical, electronic or digital recording or information storage of any kind, and any nonidentical copies (whether different from the original because of notes made on such copies, because of indications that said copies were sent to different individuals than were the originals, or because of any other reason), including but not limited to working papers, preliminary, intermediate or final drafts, correspondence, memoranda, electronic mail, charts notes, records of any sort of meetings, financial calculations, diaries, reports of telephone or other oral conversations, desk calendars, appointment books, and all other writings and recordings of every kind that are in your actual or constructive possession, custody, or control.

12. The term "**FTX Entities**" means collectively all affiliates of the Debtors that have not filed voluntary Chapter 11 petitions in the United States under the Bankruptcy Code.

13. The term "**FTX Group**" means collectively the Debtors and the FTX Entities.

14. The term "**FTX Trading Ltd. Audited Financial Statement**" refers to the audited financial statement dated April 2, 2022, entitled "FTX Trading Ltd. Consolidated Financial Statements as of December 31, 2021 and 2020 and for the years ended December 31, 2021 and 2020," and all versions thereof, prepared or facilitated by the Auditing and Accounting Companies.

15. The term "**identify**," or any variant thereof, means: (i) in relation to a natural person, to establish a person's identity such that the identity of the person will be ascertainable distinctly from all other like persons, and to provide the person's current or last known employer, current or last known mailing address, and current or last known telephone number; or (ii) in relation to a document or item, to establish the document or item's identity such that the identity of the document or item will be ascertainable distinctly from all other like documents or items, and

to state the name and address of the custodian of the document or item, the location of the document or item, and a general description of the document or item.

16. The term "**including**" means "including, but not limited to" and "including, without limitation." It shall not be construed to limit the scope of any definition or Request herein.

17. The term "**Irrevocable Fee Agreement**" means the agreement titled "Irrevocable Fee Agreement" dated June 5, 2021, between Mohammad Hans Dastmaltchi and Digital Assets AG.

18. The term "**Kephas**" means collectively Kephas Stiftung gemeinnützige GmbH, Kephas TV Corporation, Kephas Corporation, any of their predecessors, successors, or affiliates, and all representatives, agents, advisors, and all other Persons or entities acting or purporting to act on behalf of any of those entities.

19. The term "**Person**" includes both the singular and the plural, and means any natural Person, business entity, corporation, cooperative, bureau, public corporation, partnership, joint venture, firm, trust, estate, group, club, association, institute, society, office, organization, and any governmental entity or department, agency, bureau, or political subdivision thereof, or any other organization or entity.

20. The terms "**relating to**," "**related to**" or "**concerning**," or any variant thereof, means, without limitation, referring to, concerning, pertaining to, discussing, mentioning, containing, reflecting, constituting, describing, displaying, showing, identifying, proving, disproving, consisting of, arising out of, supporting or contradicting.

21. The term "**Wallet**" refers to any device, program or network address that holds any cryptocurrency or cryptocurrency key.

22. The term "**You**" or "**Your**" shall refer to Lorem Ipsum UG and Robin Matzke.

## INSTRUCTIONS

1. Unless otherwise specified, the responsive period for each Request is from January 1, 2020, through the present (the "**Relevant Period**").

2. All discovery in connection with these Requests shall be subject to and conducted in accordance with the terms of the Stipulation and Protective Order [D.I. 832] in these chapter 11 cases or the terms of any other protective order issued in this case.

3. You are instructed to respond separately to each Request and to produce all Documents responsive to the Requests that are within Your possession, custody, or control, or in the possession, custody, or control of any other Person or entity acting or purporting to act on Your behalf.

4. If You cannot fully respond to the following one or more of the Requests after exercising due diligence to secure the information requested thereby, so state, and specify (a) the portion of each Request that cannot be responded to fully and completely, (b) what efforts were made to obtain the requested information, (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely, and (d) any knowledge, information or belief You have concerning the unanswered portion of any such Request(s).

5. If there are no Documents responsive to any particular Request, Your response shall state so in writing.

6. Unless instructed otherwise, each Request shall be construed independently and not by reference to any other Request for the purpose of limitation or exclusion.

7. You must answer each Request separately and fully, unless it is objected to, in which event the objection(s) should be specifically stated.

8. If any information requested in a Request is claimed to be privileged or otherwise immune from discovery, or if any Document is withheld from production based on a claim of privilege, immunity, or other ground, furnish a list specifying: (a) the nature of the privilege, immunity, or other ground claimed; (b) the authors of the Document; (c) all persons who received copies of the Document, including the Document's indicated and blind copy recipients; (d) the date of the Document; (e) the type of Document withheld (*e.g.*, memorandum, letter, report, email); and (f) the general subject matter of the Document sufficient to enable the Debtors to assess the applicability of the claimed privilege, immunity, or other ground for refusal to produce the Document. For each item of information or Document You withhold based on a claim of privilege, immunity, or other ground, identify such information or Document with sufficient particularity for purposes of a motion to compel.

9. If a portion of an otherwise responsive Document contains information subject to a claim of privilege, only that portion of the Document subject to the claim of privilege shall be deleted or redacted from the Document following the instructions in the preceding paragraph and the rest shall be produced.

10. You shall produce Documents in the following manner and form:

*E-mails*. E-mails shall be produced as single-page TIFF images with accompanying full text and load file (.DAT). E-mail attachments shall be handled according to the provisions below applicable to loose electronic Documents and shall not be separated from the e-mails to which they are attached. Native files for e-mails shall be maintained, and such files shall be produced upon request.

*Electronic Documents*. Word and other electronic Documents shall be produced as single-page TIFF images with accompanying full text and load file (.DAT). The processed native

6

**A.0068**

for all spreadsheets, except for those requiring redactions, shall be produced as native. Audio, video, and other files that cannot be converted to image shall also be produced as native. Native files shall be linked to the database by the metadata field "NativeLink." Native files for all other electronic Documents shall be maintained, and such files shall be produced upon request.

*Hard-Copy Documents.* Hard-copy Documents shall be produced as single-page TIFF images with accompanying full OCR text and load file (.DAT). All hard copy documents should be unitized to the smallest physical boundary.

*TIFF Images Generally.* Documents should be produced as single-page, in black and white, group IV TIFFs imaged at 300 dpi. The document's original orientation should be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape). Bates numbers, confidentiality designations (in accordance with the terms of the Protective Order), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder. All speaker notes, comments, track changes, and hidden text should be expanded, extracted, and rendered in the TIFF file.

*TIFF Images for Electronic Messaging Applications and Services.* Documents collected from electronic messaging applications and services, including but not limited to Signal, Telegram, SMS, WhatsApp, Facebook Messenger, and iMessage, should be produced as TIFF images as specified in the foregoing, but should be produced in color. Slack messages and e-mails, however, should be produced in black and white.

*Extracted Text Files.* The full text of native files should be extracted directly from the native file (not OCR) and should be delivered in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the document should undergo OCR after

the text has been redacted in order to remove the redacted text.

*Data Load Files.* Database load files should consist of: (1) a comma-delimited value (".DAT") file containing the metadata fields identified in the following paragraph; and (2) an Opticon (".OPT") file to facilitate the loading of TIFF images. The first line of the .DAT file shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. All load files should be named to match the production volume name. Bates numbers and production volume names must not be duplicated and should run consecutively throughout the entirety of the production(s).

The following metadata should be supplied, where available:

| Field | Description | E-mail | Files and E-mail Attachments | Hard Copy |
|---|---|---|---|---|
| Bates Number Begin | Beginning page Bates number | x | x | x |
| Bates Number End | Ending page Bates number | x | x | x |
| Attachment Begin | Beginning page of attachment range | x | x | x |
| Attachment End | Ending page of attachment range | x | x | x |
| Custodian | Names of custodian who possessed the document. For documents from centralized repositories where custodian name(s) are unavailable, identifying source information should be provided. | x | x | x |
| All Custodians | Names of all individuals or repositories who possessed the document. | x | x | x |
| File Name | File name of document | | x | |
| File Extension | File extension of document | | x | |

8

**A.0070**

| Field | Description | E-mail | Files and E-mail Attachments | Hard Copy |
|---|---|---|---|---|
| E-mail Outlook Type | Type of Outlook item, e.g. e-mail, calendar item, note, task | x | | |
| Page Count | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x | x |
| E-mail Subject | Subject of e-mail | x | x | |
| Author | Document author | | x | |
| From | E-mail author | x | x | |
| To | E-mail recipients | x | x | |
| CC | E-mail copyees | x | x | |
| BCC | E-mail blind copyees | x | x | |
| Date Sent | Date sent (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Time Sent | Time sent (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date Received | Date received (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Time Received | Time received (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date Created | Date created | | x | |
| DateLastModified | Last modification date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Hash Value (MD5 or SHA-1) | Unique electronic signature of e-mail or electronic file | x | x | |
| Production Volume | Production volume name | x | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order | x | x | x |
| Redacted | Descriptor for documents that have been redacted (<yes> or | x | x | x |

9

A.0071

| Field | Description | E-mail | Files and E-mail Attachments | Hard Copy |
|---|---|---|---|---|
|  | <no>) |  |  |  |
| NativeLink | Logical path to native file |  | x | x |
| Text Path | Logical path to text file | x | x | x |

11.     You shall produce all Documents in the manner in which they are maintained in the usual course of Your business.

12.     A Request shall be deemed to include a request for the entire Document requested, including any and all file folders within which the Document was contained, transmittal sheets or memoranda, cover letters, exhibits, enclosures, comments or attachments to the Document in addition to the Document itself.  In the case of e-mail attachments, if either the e-mail or any of its attachments is responsive, produce the e-mail and all of the corresponding attachments.

13.     All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

14.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

15.     If You claim any ambiguity in interpreting either a Request or a definition or instruction, You should not use that claim as a basis for refusing to respond, but shall set forth as part of Your response the language deemed to be ambiguous.

16.     Each Request shall be deemed to be continuing in nature.  If at any time additional Documents or information come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

A.0072

**DOCUMENT REQUESTS**

1. All Documents concerning the Acquisition of Digital Assets AG, including but not limited to all Documents concerning the purpose of the acquisition, Documents reflecting negotiations concerning the acquisition, due diligence materials prepared or provided in connection with the acquisition, the drafting of share purchase agreements or any adjacent or ancillary agreements, and communications concerning what entities, assets, or intellectual property would or would not be transferred in connection with the acquisition.

2. All Documents concerning the acquisition by Digital Assets AG, You, Patrick Gruhn, or Brandon Williams of a contract for difference broker that was licensed to service customers in the European Economic Area, including but not limited to Documents concerning the acquisition of K-DNA Financial Services Ltd., negotiations over or due diligence performed in connection with the acquisition of K-DNA Financial Services Ltd., and the drafting of agreements executed in connection with the acquisition of K-DNA Financial Services Ltd.

3. All Documents concerning Your purchase of shares of K-DNA Financial Services Ltd., including but not limited to Documents concerning the financing of Your purchase of shares in K-DNA Financial Services Ltd., the negotiation and execution of the Share Purchase Agreement governing Your purchase of shares of K-DNA Financial Services Ltd., and you're your assignment of rights to purchase shares of K-DNA Financial Services Ltd. to Digital Assets AG.

4. All Documents concerning K-DNA Financial Services Ltd.'s application for or receipt of regulatory approvals to solicit and provide financial products to customers in the European Economic Area.

5. All Documents concerning the business model of Digital Assets AG, including but not limited to Documents concerning Digital Asset AG's business strategy, model, or plan either