the text has been redacted in order to remove the redacted text.

*Data Load Files.* Database load files should consist of: (1) a comma-delimited value (".DAT") file containing the metadata fields identified in the following paragraph; and (2) an Opticon (".OPT") file to facilitate the loading of TIFF images. The first line of the .DAT file shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. All load files should be named to match the production volume name. Bates numbers and production volume names must not be duplicated and should run consecutively throughout the entirety of the production(s).

The following metadata should be supplied, where available:

| Field | Description | E-mail | Files and E-mail Attachments | Hard Copy |
|---|---|---|---|---|
| Bates Number Begin | Beginning page Bates number | x | x | x |
| Bates Number End | Ending page Bates number | x | x | x |
| Attachment Begin | Beginning page of attachment range | x | x | x |
| Attachment End | Ending page of attachment range | x | x | x |
| Custodian | Names of custodian who possessed the document. For documents from centralized repositories where custodian name(s) are unavailable, identifying source information should be provided. | x | x | x |
| All Custodians | Names of all individuals or repositories who possessed the document. | x | x | x |
| File Name | File name of document | | x | |
| File Extension | File extension of document | | x | |

| Field | Description | E-mail | Files and E-mail Attachments | Hard Copy |
|---|---|---|---|---|
| E-mail Outlook Type | Type of Outlook item, e.g. e-mail, calendar item, note, task | x | | |
| Page Count | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x | x |
| E-mail Subject | Subject of e-mail | x | x | |
| Author | Document author | | x | |
| From | E-mail author | x | x | |
| To | E-mail recipients | x | x | |
| CC | E-mail copyees | x | x | |
| BCC | E-mail blind copyees | x | x | |
| Date Sent | Date sent (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Time Sent | Time sent (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date Received | Date received (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Time Received | Time received (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date Created | Date created | | x | |
| DateLastModified | Last modification date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Hash Value (MD5 or SHA-1) | Unique electronic signature of e-mail or electronic file | x | x | |
| Production Volume | Production volume name | x | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order | x | x | x |
| Redacted | Descriptor for documents that have been redacted (<yes> or | x | x | x |

9

**A.0090**

| Field | Description | E-mail | Files and E-mail Attachments | Hard Copy |
|---|---|---|---|---|
| | <no>) | | | |
| NativeLink | Logical path to native file | | x | x |
| Text Path | Logical path to text file | x | x | x |

11. You shall produce all Documents in the manner in which they are maintained in the usual course of Your business.

12. A Request shall be deemed to include a request for the entire Document requested, including any and all file folders within which the Document was contained, transmittal sheets or memoranda, cover letters, exhibits, enclosures, comments or attachments to the Document in addition to the Document itself. In the case of e-mail attachments, if either the e-mail or any of its attachments is responsive, produce the e-mail and all of the corresponding attachments.

13. All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

14. The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

15. If You claim any ambiguity in interpreting either a Request or a definition or instruction, You should not use that claim as a basis for refusing to respond, but shall set forth as part of Your response the language deemed to be ambiguous.

16. Each Request shall be deemed to be continuing in nature. If at any time additional Documents or information come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

10

A.0091

**DOCUMENT REQUESTS**

1. All Documents concerning the Acquisition of Digital Assets AG, including but not limited to all Documents concerning the purpose of the acquisition, Documents reflecting negotiations concerning the acquisition, due diligence materials prepared or provided in connection with the acquisition, the drafting of share purchase agreements or any adjacent or ancillary agreements, and communications concerning what entities, assets, or intellectual property would or would not be transferred in connection with the acquisition.

2. All Documents concerning the acquisition by Digital Assets AG, You, Robin Matzke, Lorem Ipsum UG, or Patrick Gruhn of a contract for difference broker that was licensed to service customers in the European Economic Area, including but not limited to Documents concerning the acquisition of K-DNA Financial Services Ltd., negotiations over or due diligence performed in connection with the acquisition of K-DNA Financial Services Ltd., and the drafting of agreements executed in connection with the acquisition of K-DNA Financial Services Ltd.

3. All Documents concerning Robin Matzke's purchase of shares of K-DNA Financial Services Ltd., including but not limited to Documents concerning the financing of Robin Matzke's purchase of shares in K-DNA Financial Services Ltd., the negotiation and execution of the Share Purchase Agreement governing Robin Matzke's purchase of shares of K-DNA Financial Services Ltd., and Robin Matzke's assignment of rights to purchase shares of K-DNA Financial Services Ltd. to Digital Assets AG.

4. All Documents concerning K-DNA Financial Services Ltd.'s application for or receipt of regulatory approvals to solicit and provide financial products to customers in the European Economic Area.

5. All Documents concerning any agreements, whether formal or informal, or drafts of any unexecuted agreements that were discussed or considered, between You and the FTX Group and FTX Entities.

6. Documents sufficient to show Your ownership or any other beneficial interest, directly or indirectly, in all companies that are incorporated, domiciled, operate within, or provide services to the United States, including Kephas.

7. For the period November 1, 2018, to the present, Documents sufficient to show the relationship between You and Cosima Capital.

8. The names of all owners, whether direct or indirect, and employees of Cosima Capital.

9. All Documents concerning the relationship between or among Cosima Capital and the FTX Group, FTX Entities, or Digital Assets AG, including but not limited to any agreements, whether formal or informal, or drafts of any unexecuted agreements that were discussed or considered, between Cosima Capital and the FTX Group, FTX Entities, or Digital Assets AG, and all communications between employees of Cosima Capital and employees of the FTX Group, FTX Entities, or Digital Assets AG.

10. Documents sufficient to show the nature of your employment by or services to or any other relationship with Digital Assets AG, including any ownership or other beneficial interest.

11. All Documents concerning the ASC 805 Accounting Analysis, including but not limited to any communications about the ASC 805 Accounting Analysis, materials prepared to share with BDO USA LLP in connection with the ASC 805 Accounting Analysis, and notes of meetings held in connection with the ASC 805 Accounting Analysis.

12. All Documents concerning any valuation of Digital Assets AG, whether formal or informal.

13. All Documents concerning the FTX Trading Ltd. Audited Financial Statement, including but not limited to materials prepared to disclose to the Auditing and Accounting Companies in connection with the FTX Trading Ltd. Audited Financial Statement, notes of meetings held in connection with the preparation of the FTX Trading Ltd. Audited Financial Statement, and communications with the Auditing and Accounting Companies.

14. All Documents concerning the business model of Digital Assets AG, including but not limited to Documents concerning Digital Asset AG's business strategy, model, or plan either pre- or post-acquisition by the FTX Group, any internal business plans, intellectual property possessed, licensed, and/or developed by Digital Asset AG, Documents concerning current or future products or cryptocurrency offerings, Documents concerning the acquisition of or creation of Digital Assets AG subsidiaries.

15. All Documents concerning the finances of Digital Assets AG, including but not limited to Documents containing information relating to the revenue, financial state, and solvency of Digital Assets AG or the liquidity of its assets, such as its balance sheets, audit statements, profit and loss statements, bank account statements, and loan information.

16. All Documents concerning the customers of Digital Assets AG, including but not limited to the number of customers Digital Assets AG had pre- and post-acquisition, the services provided to such customers, the revenue derived from such customers, and Digital Assets AG's liabilities to such customers.

17. All Documents concerning regulatory licenses and approvals within the European Economic Area that were anticipated or proposed in connection with the acquisition, including but

not limited to all communications with regulators, Documents concerning the relationship of Yourself, Robin Matzke, or Patrick Gruhn with European regulators, and Documents concerning the acquisition of or application for such regulatory licenses and approvals.

18. All Documents concerning the Irrevocable Fee Agreement, including but not limited to the creation, negotiation, and purpose of the Irrevocable Fee Agreement and all duties performed by any party to the Irrevocable Fee Agreement pursuant to the Irrevocable Fee Agreement.

19. All Documents concerning Digital Assets AG's hiring of Mohammad Hans Dastmaltchi.

20. All Documents concerning any assets or funds You received from the FTX Group, or any officer, director, contractor, or employee of the FTX Group, as compensation or otherwise.

21. Documents sufficient to identify all of Your e-mail addresses, including but not limited to e-mail addresses used to create cryptocurrency exchange accounts on Your behalf.

22. All Documents reflecting public addresses of any Wallet held by You.

23. All Documents concerning the post-petition sale process for FTX Europe AG or its subsidiaries, including but not limited to communications with purported potential purchasers of FTX EU Ltd., such as Trek Labs and Global Commerce Technologies Pte. Ltd. (d/b/a Coins.ph), documents sufficient to show Your relationship to, ownership or other beneficial interest in Trek Labs and Global Commerce Technologies Pte. Ltd., and all Documents concerning plans to find potential buyers for FTX EU Ltd.

24. For the period November 24, 2018, until the present, all Communications between You and any of the following individuals:

- Samuel Bankman-Fried

- Caroline Ellison
- Daniel Friedberg
- Ryan Salame
- Nishad Singh
- Can Sun
- Zixiao "Gary" Wang

25. All Communications between You and any of the following individuals:

- Asher Afriat
- Ramnik Arora
- Joseph Bankman
- Benjamin Baruh
- Jürg Bavaud
- Mohammad Hans Dastmaltchi
- Patrick Gruhn
- Brett Harrison
- Robin Matzke
- Ryne Miller
- Max Rhotert
- Stephen Stephens
- John Samuel Trabucco
- Ernest Ukaj

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| FTX TRADING LTD. and MACLAURIN INVESTMENTS LTD.,<br><br>　　　　Plaintiffs,<br><br>　　　　　-against-<br><br>LOREM IPSUM UG, PATRICK GRUHN, ROBIN MATZKE, and BRANDON WILLIAMS,<br><br>　　　　Defendants. | Adv. Pro. No. 23-50437 (JTD) |

**FIRST SET OF INTERROGATORIES BY DEFENDANT
LOREM IPSUM UG TO
PLAINTIFFS FTX TRADING LTD. & MACLAURIN INVESTMENTS LTD.**

Pursuant to Federal Rule of Civil Procedure 33, made applicable in the above-captioned adversary proceeding by Federal Rule of Bankruptcy Procedure 7033, Defendant Lorem Ipsum UG, by its undersigned attorneys, hereby propounds the following interrogatories to Plaintiffs FTX Trading Ltd. and Maclaurin Investments Ltd. ("**Interrogatories**," and each an "**Interrogatory**"). Answers to the Interrogatories must be served within thirty (30) days after the date on which the Interrogatories are served.

A.0097

## **DEFINITIONS**

1. The terms "**concerning**," "**regarding**," "**referring to**," and "**relating to**" (or an any variation thereof) mean describing, discussing, constituting, containing, considering, embodying, evaluating, mentioning, memorializing, supporting, collaborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, regarding, controverting, contradicting, made in connection with or by reason of, or derived or arising therefrom.

2. The terms "**and**" and "**or**" shall be interpreted in every instance as meaning "and/or" and shall not, in either instance, be interpreted disjunctively to exclude any document or information otherwise within the scope of any description or request herein.

3. The use of the present tense includes the past tense, the use of the past tense shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

4. Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure ("**Federal Rules**") and the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

5. "**Adversary Proceeding**" refers to the above-captioned adversary proceeding, specifically, *FTX Trading Ltd. and Maclaurin Investments Ltd. v. Lorem Ipsum UG, Patrick Gruhn, Robin Matzke, and Brandon Williams*, Case No. 23-50437 (JTD) (Bankr. D. Del.).

6. "**Bankruptcy Proceeding**" refers to the above-captioned main Chapter 11 bankruptcy proceeding of the jointly administered Debtors pending in the United States Bankruptcy Court for the District of Delaware, Case No. 22-11068 (JTD).

A.0098

7. "**CM-Equity**" refers to CM-Equity AG, described in Paragraph 23 of the Complaint.

8. "**Complaint**" means the *Complaint for Avoidance and Recovery of Transfers, and Obligations Pursuant to 11 U.S.C. §§ 105, 547, 548, and 550, Breach of Fiduciary Duty Pursuant to Antiguan Common Law and the Antigua International Business Corporations Act, and for Disallowance of Claims Pursuant to 11 U.S.C. § 502(d)*, filed on July 12, 2023 [Adv. P. No. 1] in the Adversary Proceeding.

9. "**DAAG**" refers to Digital Assets DA AG, now known as FTX Europe AG, and its wholly owned subsidiaries.

10. "**DAAG Acquisition**" refers to the acquisition of DAAG and its subsidiaries by FTXT, as described in Paragraphs 49-77 of the Complaint.

11. "**Debtors**" refers to the entities jointly administered in the Bankruptcy Proceeding.

12. "**Defendants**" refers collectively to LI, Gruhn, Matzke, and Williams.

13. "**DotCom Silo**" refers to the term as defined in the Supplemental Declaration of John J. Ray III In Support of First Day Pleadings (Bankruptcy Proceeding Dkt. 92).

14. "**EEA Countries**" refers to the countries within the European Economic Area (Austria, Czech Republic, Germany, Italy, Malta, Romania, Belgium, Denmark, Greece, Latvia, Netherlands, Slovakia, Bulgaria, Estonia, Hungary, Liechtenstein, Norway, Slovenia, Croatia, Finland, Iceland, Lithuania, Poland, Spain, Cyprus, France, Ireland, Luxembourg, Portugal, and Sweden).

15. "**Earn-Out Payments**" refers to the "earn-out payments" described in Paragraph 68 of the Complaint.

16. **"FTX Group"** refers to the entities and individuals referenced or referred in Footnote 2 of the Complaint, individually and/or collectively.

17. **"FTXT"** refers to FTX Trading Ltd., a corporation described in Paragraph 14 of the Complaint as registered in Antigua and Barbuda with a principal place of business formerly in Nassau, Bahamas.

18. **"Gruhn"** refers to Defendant Patrick Gruhn.

19. **"Identify**," or any variant thereof, means: (i) in relation to a natural person, to establish a person's identity such that the identity of the person will be ascertainable distinctly from all other like persons, and to provide the person's current or last known employer, current or last known mailing address, and current or last known telephone number; or (ii) in relation to a document or item, to establish the document or item's identity such that the identity of the document or item will be ascertainable distinctly from all other like documents or items, and to state the name and address of the custodian of the document or item, the location of the document or item, and a general description of the document or item.

20. **"Instructions"** refers to the instructions following this "Definitions" section.

21. **"Interrogatory"** refers to the individual interrogatories set forth herein.

22. **"IP"** means recognized protectable rights and interests, such as patents, copyrights, trademarks, service marks, applications for any of the foregoing, inventions, trade secrets, trade dress, domain names, logos, insignia, color combinations, slogans, moral rights, right of publicity, author's rights, contract and licensing rights, works, industrial design rights, rights of priority, know how, design flows, methodologies, devices business processes, developments, innovations, good will, and all other legal rights protecting intangible proprietary information.

A.0100

23. "**K-DNA**" refers to K-DNA Financial Services Ltd., as described in Paragraph 6 of the Complaint.

24. "**Lorum Ipsum**" or "**LI**" refers to Defendant Lorem Ipsum UG, a/k/a Lorem Ipsum RM UG, a German company.

25. "**Maclaurin**" refers to Maclaurin Investments Ltd., f/k/a Alameda Ventures Ltd., described in Paragraph 15 of the Complaint as a corporation registered in Seychelles.

26. "**Matzke**" refers to Defendant Robin Matzke.

27. "**Other Authorized Countries**" refers to Argentina, British Virgin Islands (BVI), Brunei, Cayman Islands, China, Egypt, Georgia, Indonesia, Jordan, Kazakhstan, Kuwait, Lebanon, Malaysia, Mongolia, Montenegro, Panama, Philippines, Qatar, South Korea, South Africa, Switzerland, Thailand, Turkey, UAE, and Ukraine.

28. "**Person**" has the meaning set forth in 11 U.S.C. § 101(41).

29. "**Plaintiffs**" refers to: (a) FTXT, and (b) Maclaurin.

30. "**Ukaj**" refers to Ernest Ukaj.

31. "**SBF**" refers to Samuel Bankman-Fried.

32. "**SPA 1**" refers to the transactions and documents described in Paragraphs 52-59 of the Complaint.

33. "**SPA 2**" refers to the transactions and documents described in Paragraphs 60-62 of the Complaint.

34. "**SPA 3**" refers to the transactions and documents described in Paragraphs 63-77 of the Complaint.

35. "**You**" or "**Your**" refers to either or both Plaintiffs, and any other Person acting on behalf of the foregoing.

36. Terms used in the Interrogatories but not otherwise defined shall have the meanings ascribed to them in the Complaint.

## INSTRUCTIONS

1. In responding to these Interrogatories, provide all available information in your possession, custody, or control, including information in the possession, custody, or control of your attorneys, directors, officers, agents, employees, representatives, associates, investigators, divisions, affiliates, partnerships, parents, or subsidiaries, and all other responsive information that is otherwise in your possession, custody, or control.

2. If you cannot fully respond to an Interrogatory after exercising due diligence to secure the information requested, so state, and specify the portion of each Interrogatory that cannot be responded to fully and completely.

3. Please state any objections to any Interrogatory. If the objection applies only to specific parts of the Interrogatory, please identify the objectionable part or parts of the Interrogatory and provide all information responsive to the remaining parts.

4. If any information requested in these Interrogatories is claimed to be privileged, immune from discovery, or otherwise not discoverable, provide all information falling within the scope of the Interrogatory which is discoverable, and for each item of information you refuse to disclose, state with particularity the grounds for such refusal.

5. For the convenience of the Court and the parties, You should quote each interrogatory in full immediately preceding the response.

6. Should You find any interrogatory or any term used in an Interrogatory to be vague, ambiguous, subject to varying interpretations, or unclear, You should identify the matter deemed

to be ambiguous, vague, subject to interpretation, or unclear, state its understanding of the disputed matter, and respond to the best of its ability in accordance with that understanding.

7. Should You be unable to answer any Interrogatory in full, answer the Interrogatory to the fullest extent possible, specify the reasons for the inability to answer the remainder, and state whatever information it has concerning the unanswered portion.

8. The Interrogatories are continuing in nature and Plaintiffs are required to revise or supplement their responses as they obtain further information relating to their answers.

18. Unless otherwise specified, the relevant period for the Interrogatories shall be from January 1, 2020 through the present.

## INTERROGATORIES

1. In connection with each of SPA 1, SPA 2, and SPA 3, identify:

    a. all documents, information, and other materials provided by some or all of the Defendants, in a data room or otherwise, to FTXT, Maclaurin, or any other individuals or entities in, affiliated with, employed by, engaged by, or working on behalf of the FTX Group and/or any entities therein;

    b. all individuals and entities that were affiliated with, employed by, engaged by, working on behalf of FTXT, Maclaurin, the FTX Group, and/or any entities therein that were involved with discussing, negotiating, drafting, or consummating the SPAs; and

    c. the source of the cash, tokens, shares, and/or any other form of consideration that FTXT, Maclaurin, or any other individuals or entities in, affiliated with, employed by, engaged by, or working on behalf of the FTX Group and/or any entities therein paid to some or all of the Defendants.

A.0103