2. Identify (a) all individuals and entities that were affiliated with, employed by, engaged by, working on behalf of FTXT, Maclaurin, the FTX Group, and/or any entities therein that discussed, assisted, or otherwise worked with BDO USA, LLP ("**BDO**") on BDO's preparation of its report, titled *ASC 805 Valuation of Certain Assets of FTX Trading Ltd.* ("**BDO Report**"); and (b) all documents, information, and other materials exchanged with BDO in BDO's preparation of the BDO Report.

3. Describe and identify all facts that support Plaintiffs' allegations that FTXT was insolvent on or around the time of each of SPA 1, SPA 2, and/or SPA 3, and/or any transfers made in connection with SPA 1, SPA 2, and SPA 3, including all facts that support the allegations that:

   a. "Plaintiffs were insolvent when, or became insolvent shortly after, the transfers were made" (Complaint ¶ 106.v);

   b. "Each of the Plaintiffs: (i) was insolvent on the date that each transfer was made; (ii) became insolvent as a result of the transfers and obligations; (iii) was engaged in a business or a transaction for which any property remaining with the Plaintiff was an unreasonably small capital; or (iv) intended to incur, or believed that it would incur, debts that would be beyond the Plaintiff's ability to repay as such debts matured" (Complaint ¶ 114); and/or

   c. "The transfers were made while Plaintiffs were insolvent" (Complaint ¶ 124).

4. Describe and identify all facts that support Plaintiffs' allegations that Maclaurin was insolvent on or around the time of each of SPA 1, SPA 2, and/or SPA 3, and/or any transfers made in connection with SPA 1, SPA 2, and SPA 3, including all facts that support the allegations that:

    a. "Plaintiffs were insolvent when, or became insolvent shortly after, the transfers were made" (Complaint ¶ 106.v);

    b. "Each of the Plaintiffs: (i) was insolvent on the date that each transfer was made; (ii) became insolvent as a result of the transfers and obligations; (iii) was engaged in a business or a transaction for which any property remaining with the Plaintiff was an unreasonably small capital; or (iv) intended to incur, or believed that it would incur, debts that would be beyond the Plaintiff's ability to repay as such debts matured" (Complaint ¶ 114); and/or

    c. "The transfers were made while Plaintiffs were insolvent" (Complaint ¶ 124).

5. Describe and identify all facts and documents that support the allegations in Paragraph 40 of the Complaint that Plaintiffs paid more than fair or reasonably equivalent value for DAAG, including what Plaintiffs believe the value of DAAG was at the time of SPA 1, SPA 2, and SPA 3.

6. Identify all non-publicly traded stock or equity interests in incorporated and unincorporated businesses held by each Plaintiff as of the date each transfer was made to LI, Gruhn, and/or Matke in connection with SPA 1, SPA 2, and SPA 3 and any subsequent Earn-Out Payments, including: (i) the date the investment was made, (ii) the amount of the investment, and (iii) the percentage of ownership.

7. Describe and identify all notes receivable owed to each Plaintiff as of the date each transfer was made to LI, Gruhn, and/or Matzke in connection with SPA 1, SPA 2, and SPA 3, including the name of the obligor, the date the debt was incurred, and the amount owed.

8. Describe and identify all facts and documents that support the allegation in Paragraph 7 of the Complaint that Kephas was paid "millions of dollars of misappropriated FTX Group funds."

9. Describe and identify all facts and documents that support the allegation in Paragraph 35 of the Complaint that DAAG was acquired with "misappropriated FTX Group funds."

10. Describe and identify all facts and documents that support the allegation in Paragraph 14 of the Complaint that "[FTXT] and its subsidiaries and affiliate entities, including DAAG, collectively did business as 'FTX.com' and operated a digital asset trading exchange."

11. For each alleged transfer that Plaintiffs seek to avoid as either fraudulent or preferential, describe and identify the following:

    a. The type of interest transferred (e.g., cash, shares, cryptocurrency);

    b. Any bank account, cryptocurrency wallet, or other account from which each payment or transfer originated;

    c. Any name of the bank, financial institution, cryptocurrency wallet provider or other entity where such account or wallet is held;

    d. The transferor;

    e. The transferee;

    f. The date of such transfer;

    g. The reason for such transfer; and

    h. All documents, information, and other materials relating to or showing the details of such transfer.

12. Describe and identify all facts and documents that support the allegation in Paragraph 36 of the Complaint that "the FTX Insiders pursued the DAAG acquisition to benefit from the regulatory set-up which the DAAG founders claimed they could provide."

13. Describe and identify all facts and documents that support the allegation in Paragraph 122 of the Complaint that Gruhn and Matzke were "insiders."

14. Describe and identify all facts and documents that support the allegation in Paragraph 37 of the Complaint that Sam Bankman-Fried had a "pre-existing relationship" with Gruhn.

15. Describe and identify all facts and documents that support the allegation in Paragraph 39 of the Complaint that Sam Bankman-Fried "had a history of doing favors for Gruhn and Williams."

16. Describe and identify all facts and documents that support the allegations in Paragraph 106 of the Complaint that:

   a. "[t]he transfers arose out of a close relationship between an officer of the Debtors, Sam Bankman-Fried, and transferees, including Brandon Williams and Robin Matke";

   b. "[n]umerous material facts relating to the transfers were concealed, including the process by which K-DNA was acquired and the source of funds used to acquire DAAG and K-DNA"; and

   c. "[t]he FTX Insiders removed or concealed Plaintiffs' assets, including funds transferred to acquire DAAG and K-DNA."

17. Describe and identify all facts and documents that support the allegation in Paragraph 139 of the Complaint that "Gruhn and Matzke breached their fiduciary duties to [FTXT]

by causing transfers to be made to Kephas, in exchange for which [FTXT] did not receive, and had virtually no prospect of receiving, reasonably equivalent value, and from which Gruhn, a close associate of Matzke, personally benefited."

18. Describe and identify each database visibility level (e.g., super admin, admin, etc.) for the FTXT transaction database[1], and state the data visibility level for DAAG, Gruhn and Matzke.

Dated: October 25, 2023
Wilmington, Delaware

/s/ Peter J. Keane
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:   (302) 652-4100
Facsimile:    (302) 652-4400
Email:         ljones@pszjlaw.com
                    pkeane@pszjlaw.com

THE DALEY LAW FIRM LLC
Darrell Daley (admitted *pro hac vice*)
Samantha Neal (admitted *pro hac vice*)
4845 Pearl East Circle, Suite 101
Boulder, Colorado 80301
Telephone: (303) 479-3500
Email: Darrell@daleylawyers.com
            Samantha@daleylawyers.com

- and -

MORRISON COHEN LLP
Joseph T. Moldovan (admitted *pro hac vice*)
Heath D. Rosenblat (admitted *pro hac vice*)
Jason P. Gottlieb (admitted *pro hac vice*)
Michael Mix (admitted *pro hac vice*)
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
Facsimile: (212) 735-8708
Email: jmoldovan@morrisoncohen.com
            hrosenblat@morrisoncohen.com
            jgottlieb@morrisoncohen.com
            mmix@morrisoncohen.com

*Counsel to Defendant Lorem Ipsum UG*

---

[1] FTXT's transaction database has been variously referred to as the FTX transaction database, FTX's accounting database, the AWS database (a reference to the database being hosted by Amazon Web Service), the Postgres database, or the PostgreSQL database.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| FTX TRADING LTD. and MACLAURIN INVESTMENTS LTD.,<br><br>    Plaintiffs,<br><br>        -against-<br><br>LOREM IPSUM UG, PATRICK GRUHN, ROBIN MATZKE, and BRANDON WILLIAMS,<br><br>    Defendants. | Adv. Pro. No. 23-50437 (JTD) |

### FIRST SET OF DOCUMENT REQUESTS BY DEFENDANTS LOREM IPSUM UG, PATRICK GRUHN, AND ROBIN MATZKE TO PLAINTIFFS FTX TRADING LTD. & MACLAURIN INVESTMENTS LTD.

**PLEASE TAKE NOTICE** that pursuant to Bankruptcy Rule 7034 and Rule 34 of the Federal Rules of Civil Procedure, in the above-captioned adversary proceeding, Defendants Lorem Ipsum UG, Patrick Gruhn, and Robin Matzke, by their undersigned attorneys, hereby propound the following requests for production ("Requests" and each a "Request") to Plaintiffs FTX Trading Ltd. and Maclaurin Investments Ltd. (collectively, "**Plaintiffs**").  Lorem Ipsum UG, Patrick Gruhn, and Robin Matzke request that Plaintiffs respond to the following Requests within thirty (30) days from the date of their service and produce all responsive documents at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor Wilmington, DE 19801.

A.0109

## **DEFINITIONS**

1. The terms "**concerning**," "**regarding**," "**referring to**," and "**relating to**" (or an any variation thereof) mean describing, discussing, constituting, containing, considering, embodying, evaluating, mentioning, memorializing, supporting, collaborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, regarding, controverting, contradicting, made in connection with or by reason of, or derived or arising therefrom.

2. The terms "**and**" and "**or**" shall be interpreted in every instance as meaning "and/or" and shall not, in either instance, be interpreted disjunctively to exclude any document or information otherwise within the scope of any description or request herein.

3. The use of the present tense includes the past tense, the use of the past tense shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

4. Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure ("**Federal Rules**") and the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

5. "**Adversary Proceeding**" refers to the above-captioned adversary proceeding, specifically, *FTX Trading Ltd. and Maclaurin Investments Ltd. v. Lorem Ipsum UG, Patrick Gruhn, Robin Matzke, and Brandon Williams*, Case No. 23-50437 (JTD) (Bankr. D. Del.).

6. "**Bankruptcy Proceeding**" refers to the above-captioned main Chapter 11 bankruptcy proceeding pending in the United States Bankruptcy Court for the District of Delaware, Case No. 22-11068 (JTD).

7.  "**CM-Equity**" refers to CM-Equity AG, described in Paragraph 23 of the Complaint.

8.  "**Communication**" means the transmittal of information of any kind, in any form, and by any means, and therefore includes, but is not limited to, any telephone conversation, face-to-face meeting or conversation, visit, conference, internal or external discussion, or exchange of Documents (defined below). All written Communications shall include, without limitation, electronic, printed, typed, handwritten or other readable Documents, correspondence, memos, reports, contracts, both initial and subsequent, diaries, logbooks, minutes, notes, studies, surveys, forecasts, emails, text messages, and instant messages. A Document Request (defined below) concerning any Communication among or between specified parties includes a request for any Communication among or between such parties, whether or not such Communication included or was directed to any other person.

9.  "**Complaint**" means the *Complaint for Avoidance and Recovery of Transfers, and Obligations Pursuant to 11 U.S.C. §§ 105, 547, 548, and 550, Breach of Fiduciary Duty Pursuant to Antiguan Common Law and the Antigua International Business Corporations Act, and for Disallowance of Claims Pursuant to 11 U.S.C. § 502(d)*, filed on July 12, 2023 [Adv. P. No. 1] in the Adversary Proceeding.

10. "**Cosima Capital**" refers to Cosima Capital, described in Paragraph 19 of the Complaint as a "digital asset and cryptocurrency advisory and trading firm."

11. "**Crypto Lawyers**" refers to Crypto Lawyers GmbH, including all other former or subsequent names, including FTX Switzerland GmbH.

12. "**DAAG**" refers to Digital Assets DA AG, now known as FTX Europe AG, and its wholly owned subsidiaries.

13. "**DAAG Acquisition**" refers to the acquisition of DAAG and its subsidiaries by FTX Trading, as described in Paragraphs 49-77 of the Complaint.

14. "**Debtors**" refers to the entities jointly administered in the Bankruptcy Proceeding.

15. "**Demanding Defendants**" refers collectively to LI, Gruhn, and Matzke (each defined below).

16. "**Defendants**" refers collectively to LI, Gruhn, Matzke, and Williams.

17. "**Document(s)**" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule 34(a)(1)(A). Specifically, Federal Rule 34(a)(1)(A) provides:

> Any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form . . . .

Fed. R. Civ. P. 34(a)(1)(A). The term "**Document**" includes all originals, translations, non-identical copies, and copies with marginal notations or interlineations. A draft or non-identical copy is a separate Document within the meaning of this term. "Document" also includes all Electronically Stored Information.

18. "**Document Request**" or "**Request**" refers to the individual Requests for Production of Documents set forth in this Request.

19. "**DotCom Silo**" refers to the term as defined in the Supplemental Declaration of John J. Ray III In Support of First Day Pleadings (Bankruptcy Proceeding Dkt. 92).

20. "**EEA Countries**" refers to the countries within the European Economic Area (Austria, Czech Republic, Germany, Italy, Malta, Romania, Belgium, Denmark, Greece, Latvia, Netherlands, Slovakia, Bulgaria, Estonia, Hungary, Liechtenstein, Norway, Slovenia, Croatia,

Finland, Iceland, Lithuania, Poland, Spain, Cyprus, France, Ireland, Luxembourg, Portugal, and Sweden).

21. "**Earn-Out Payments**" refers to the "earn-out payments" described in Paragraph 68 of the Complaint.

22. "**Electronically Stored Information**" has the broadest possible meaning under F.R.C.P. Rule 34 and refers to all computer or electronically stored or generated data and information and includes all attachments to and enclosures with any requested item, and all drafts thereof. "Electronically Stored Information" includes information stored in any format and on any storage media, including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable. "Electronically Stored Information" includes: word-processing Documents; electronic spreadsheets; electronic presentation Documents; email messages; image files; sound files; and material or information stored in a database, or accessible from a database. "Electronically Stored Information" also includes all associated metadata that is maintained or saved, which includes: a Document's title or name; file name; date and time of creation; date and time of last edit; identity of author; identity of owner; identities of editors; identities of recipients; changes; history of changes; email header information; history of who viewed an email and when; and email routing information.

23. "**FTX Group**" refers to the entities and individuals referenced or referred in Footnote 2 of the Complaint, individually and/or collectively.

24. "**FTXT**" refers to FTX Trading Ltd., a corporation described in Paragraph 14 of the Complaint as registered in Antigua and Barbuda with a principal place of business formerly in Nassau, Bahamas.

25. "**FTX Switzerland**" means FTX Switzerland GmbH, a subsidiary of DAAG.

26.     "**Gruhn**" refers to Defendant Patrick Gruhn.

27.     "**Instructions**" refers to the instructions following this "Definitions" section of these Requests.

28.     "**IP**" means recognized protectable rights and interests, such as patents, copyrights, trademarks, service marks, applications for any of the foregoing, inventions, trade secrets, trade dress, domain names, logos, insignia, color combinations, slogans, moral rights, right of publicity, author's rights, contract and licensing rights, works, industrial design rights, rights of priority, know how, design flows, methodologies, devices business processes, developments, innovations, good will, and all other legal rights protecting intangible proprietary information.

29.     "**Kephas**" refers to Kephas Corporation, as described in Paragraphs 24 and 78 of the Complaint.

30.     "**K-DNA**" refers to K-DNA Financial Services Ltd., as described in Paragraph 6 of the Complaint.

31.     "**K-DNA SPA**" refers to the October 22, 2021 share purchase agreement described in Paragraph 86 of the Complaint.

32.     "**Interrogatory**" refers to each and every interrogatory contained in the First Set of Interrogatories by Defendant Lorem Ipsum UG to Plaintiffs FTX Trading Ltd. & Maclaurin Investments Ltd.

33.     "**Lorum Ipsum**" or "**LI**" refers to Defendant Lorem Ipsum UG, a/k/a Lorem Ipsum RM UG, a German company.

34.     "**Maclaurin**" refers to Maclaurin Investments Ltd., f/k/a Alameda Ventures Ltd., described in Paragraph 15 of the Complaint as a corporation registered in Seychelles.

35.     "**Matzke**" refers to Defendant Robin Matzke.

36. "**Other Authorized Countries**" refers to Argentina, British Virgin Islands (BVI), Brunei, Cayman Islands, China, Egypt, Georgia, Indonesia, Jordan, Kazakhstan, Kuwait, Lebanon, Malaysia, Mongolia, Montenegro, Panama, Philippines, Qatar, South Korea, South Africa, Switzerland, Thailand, Turkey, UAE, and Ukraine.

37. "**Person**" has the meaning set forth in 11 U.S.C. § 101(41).

38. "**Plaintiffs**" refers to: (a) FTXT, and (b) Maclaurin.

39. "**Plaintiffs' Initial Disclosures**" refers to Plaintiffs' Initial Disclosures Pursuant to Rule 26(a)(1)(A) dated September 27, 2023.

40. "**Professionals**" refers to individuals or entities engaged in specific occupations or fields of expertise that require specialized knowledge, training, and qualifications, and includes, but is not limited to, lawyers, attorneys, solicitors, barristers, accountants, investment bankers, financial advisors, consultants, and other licensed or certified practitioners, as well as any organizations, firms, or associations employing individuals in such occupations.

41. "**SPA 1**" refers to the transactions and documents described in Paragraphs 52-59 of the Complaint.

42. "**SPA 2**" refers to the transactions and documents described in Paragraphs 60-62 of the Complaint.

43. "**SPA 3**" refers to the transactions and documents described in Paragraphs 63-77 of the Complaint.

44. "**Ukaj**" refers to Ernest Ukaj.

45. "**SBF**" refers to Samuel Bankman-Fried.

46. "**Williams**" refers to Defendant Brandon Williams.

47. **"You"** or **"Your"** refers to either or both Plaintiffs, and any other Person acting on behalf of the foregoing.

48. Terms used in the Requests but not otherwise defined shall have the meanings ascribed to them in the Complaint.

## INSTRUCTIONS

1. The preceding Definitions apply to these Instructions and each of the succeeding Document Requests.

2. The information requested herein is not restricted to Your personal knowledge, but includes information in the possession of or available to any of Your agents, representatives, and/or Professionals. Persons responding to these Document Requests on Your behalf are directed to make a diligent search of all records within Your possession, custody, or control, including Your paper files and Electronically Stored Information.

3. You are required to produce the originals or legible exact copies of all Documents described in the Document Request in Your actual or constructive possession. Documents attached to each other should not be separated. To the extent that a Document Request calls for more detailed information than is available, respond to such Document Request by providing all responsive information that is available and an explanation of why the remaining information is not available to You. If there are no Documents in Your possession, custody, or control that are responsive to a Document Request, state so with particularity in writing. A negative response to a Document Request will be understood to be a representation that You have no responsive information in any lesser detail.

4. All Documents shall be produced in an orderly manner (and with appropriate markings or other identification) so that the Demanding Defendants will be able to identify: (a) the

source of the Document; (b) the file in which the Document is or was maintained; (c) the person to whom such file belongs or belonged; and (d) the specific Document Request to which the Document is responsive. In responding to the Document Request, set forth the Request in full before providing the response and specify the particular Bates range responsive to each individual Document Request.

5. You shall produce all Documents in the manner in which they are maintained in the ordinary course of Your business. A request for a Document shall be deemed to include a request for any and all file folders within which a Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to a Document in addition to the Document itself.

6. Excel or equivalent spreadsheets shall be produced in native format with cell data and formulas populated. Where a native file is in color, the corresponding .pdf and .tiff files shall also be in color. All imbedded sound files shall be produced.

7. Documents should be produced with only one data load file ("DAT") and one image pointer file ("OPT"). All document family groups, i.e. email attachments (including modern attachments), embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering. All members of the family have the same group identifier (which means it repeats for all records in the group) this identifier is populated in the PRODBEGATT field. All productions should be globally de-duplicated unless otherwise agreed upon by the parties. If you are producing iMessages, Short Message Service files or instant messenger services such as but not limited to: Slack, Signal, Discord, Microsoft Teams, Telegram, Text messages (MMS, SMS, iMessage, Whatsapp), Google Chat, Bloomberg Chat, Instagram, they should be produced with the entire conversation and the family group as one file or produced no smaller than by day (24-hour period) ensuring that the entire conversation thread is maintained

in a family group.  We request that for time zone consideration; normalization of the date and time stamps of all ESI data to the specific zone of UTC unless otherwise agreed upon by the parties.

8. The following delivery format should be followed:

   a. Black and white images must be 300 DPI Group IV single-page TIFF files.  Color images must be produced in JPEG format.

   b. All image files must have a unique file name.  There should be no gaps in the image set.

   c. The number of TIFF files per folder should not exceed 500 files.

   d. Some document types will not be imaged for production unless redactions are applied, i.e. spreadsheets those documents should be produced in native format with a slip-sheet included with the image collection indicating, "Document Produced in Native Format", titled after the PRODBEG of the native files, there should be no gaps in the image collection.

   e. For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media. Native file documents must be named per the first bates number. The full path of the native file must be provided in the .DAT file for the NATIVELINK field. The number of native files per folder should not exceed 500 files.

   f. Each page of every document should be endorsed with the bates number on the lower right corner of each page of the document.

   g. If documents require an additional endorsement, the additional endorsement should be placed in the lower right corner of each page of the document.

   h. The export will include the following load files: DAT and OPT files

      i. The data file (.DAT) contains all of the fielded information that will be loaded into the Relativity® database.  The first line of the .DAT file must be a header record identifying the field names.  The .DAT file must use the following Concordance® default delimiters:

         1. Comma ASCII character 20

         2. Quote þ ASCII character 254

         3. Newline ® ASCII character 174

      ii. Date fields should be provided in the Date/Time format, i.e. 05/28/2016 7:11 AM.  Dates must be in a valid format. For example, 01/00/2000 or 00/00/0000 are **not** valid dates.