Dated: October 25, 2023
Wilmington, Delaware

*/s/ Peter J. Keane*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436)<br>Peter J. Keane (DE Bar No. 5503)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19801<br>Telephone:   (302) 652-4100<br>Facsimile:   (302) 652-4400<br>Email:   ljones@pszjlaw.com<br>           pkeane@pszjlaw.com | THE DALEY LAW FIRM LLC<br>Darrell Daley (admitted *pro hac vice*)<br>Samantha Neal (admitted *pro hac vice*)<br>4845 Pearl East Circle, Suite 101<br>Boulder, Colorado 80301<br>Telephone: (303) 479-3500<br>Email: Darrell@daleylawyers.com<br>       Samantha@daleylawyers.com<br><br>- and -<br><br>MORRISON COHEN LLP<br>Joseph T. Moldovan (admitted *pro hac vice*)<br>Heath D. Rosenblat (admitted *pro hac vice*)<br>Jason P. Gottlieb (admitted *pro hac vice*)<br>Michael Mix (admitted *pro hac vice*)<br>909 Third Avenue, 27th Floor<br>New York, New York 10022<br>Telephone: (212) 735-8600<br>Facsimile: (212) 735-8708<br>Email: jmoldovan@morrisoncohen.com<br>       hrosenblat@morrisoncohen.com<br>       jgottlieb@morrisoncohen.com<br>       mmix@morrisoncohen.com<br><br>*Counsel to Defendants Lorem Ipsum UG,*<br>*Patrick Gruhn, and Robin Matzke* |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| FTX TRADING LTD. and MACLAURIN INVESTMENTS LTD.,<br><br>    Plaintiffs,<br><br>        -against-<br><br>LOREM IPSUM UG, PATRICK GRUHN, ROBIN MATZKE, and BRANDON WILLIAMS,<br><br>    Defendants. | Adv. Pro. No. 23-50437 (JTD) |

**FIRST SET OF REQUESTS FOR ADMISSION BY DEFENDANTS
LOREM IPSUM UG, PATRICK GRUHN, AND ROBIN MATZKE TO
<u>PLAINTIFFS FTX TRADING LTD. & MACLAURIN INVESTMENTS LTD.</u>**

Pursuant to Federal Rules of Civil Procedure 36, made applicable in the above-captioned adversary proceeding by Federal Rule of Bankruptcy Procedure 7036, Defendants Lorem Ipsum UG, Patrick Gruhn, and Robin Matzke, by their undersigned attorneys, hereby propound the following requests for admissions to Plaintiffs FTX Trading Ltd. and Maclaurin Investments Ltd. ("**Requests,**" and each a "**Request**"). Defendants Lorem Ipsum UG, Patrick Gruhn, and Robin Matzke hereby request that Plaintiffs FTX Trading Ltd. and Maclaurin Investments Ltd. answer the following Requests, within thirty (30) days of the date of service.

1

A.0135

## **DEFINITIONS**

1. The terms "**concerning**," "**regarding**," "**referring to**" and "**relating to**" (or an any variation thereof) mean describing, discussing, constituting, containing, considering, embodying, evaluating, mentioning, memorializing, supporting, collaborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, regarding, controverting, contradicting, made in connection with or by reason of, or derived or arising therefrom.

2. The terms "**and**" and "**or**" shall be interpreted in every instance as meaning "and/or" and shall not, in either instance, be interpreted disjunctively to exclude any document or information otherwise within the scope of any description or request herein.

3. The use of the present tense includes the past tense, the use of the past tense shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

4. Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure ("**Federal Rules**") and the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

5. "**Adversary Proceeding**" refers to the above-captioned adversary proceeding, specifically, *FTX Trading Ltd. and Maclaurin Investments Ltd. v. Lorem Ipsum UG, Patrick Gruhn, Robin Matzke, and Brandon Williams*, Case No. 23-50437 (JTD) (Bankr. D. Del.).

6. "**Bankruptcy Proceeding**" refers to the above-captioned main Chapter 11 bankruptcy proceeding of the jointly administered Debtors pending in the United States Bankruptcy Court for the District of Delaware, Case No. 22-11068 (JTD).

7. "**Complaint**" means the *Complaint for Avoidance and Recovery of Transfers, and Obligations Pursuant to 11 U.S.C. §§ 105, 547, 548, and 550, Breach of Fiduciary Duty Pursuant to Antiguan Common Law and the Antigua International Business Corporations Act, and for Disallowance of Claims Pursuant to 11 U.S.C. § 502(d)*, filed on July 12, 2023 [Adv. P. No. 1] in the Adversary Proceeding.

8. "**DAAG**" refers to Digital Assets DA AG, now known as FTX Europe AG, and its wholly owned subsidiaries."

9. "**DAAG Acquisition**" refers to the acquisition of DAAG and its subsidiaries by FTXT, as described in Paragraphs 49-77 of the Complaint.

10. "**Debtors**" refers to the entities jointly administered in the Bankruptcy Proceeding.

11. "**Demanding Defendants**" refers collectively to LI, Gruhn, and Matzke (each defined below).

12. "**Defendants**" refers collectively to LI, Gruhn, Matzke, and Williams.

13. "**FTX Group**" refers to the entities and individuals referenced or referred in Footnote 2 of the Complaint, individually and/or collectively.

14. "**FTXT**" refers to FTX Trading Ltd., a corporation described in Paragraph 14 of the Complaint as registered in Antigua and Barbuda with a principal place of business formerly in Nassau, Bahamas.

15. "**Gruhn**" refers to Defendant Patrick Gruhn.

16. "**Instructions**" refers to the instructions following this "Definitions" section.

17. "**IP**" means recognized protectable rights and interests, such as patents, copyrights, trademarks, service marks, applications for any of the foregoing, inventions, trade secrets, trade dress, domain names, logos, insignia, color combinations, slogans, moral rights, right of publicity,

author's rights, contract and licensing rights, works, industrial design rights, rights of priority, know how, design flows, methodologies, devices business processes, developments, innovations, good will, and all other legal rights protecting intangible proprietary information.

18. "**K-DNA**" refers to K-DNA Financial Services Ltd., as described in Paragraph 6 of the Complaint.

19. "**Lorum Ipsum**" or "**LI**" refers to Defendant Lorem Ipsum UG, a/k/a Lorem Ipsum RM UG, a German company.

20. "**Maclaurin**" refers to Maclaurin Investments Ltd., f/k/a Alameda Ventures Ltd., described in Paragraph 15 of the Complaint as a corporation registered in Seychelles.

21. "**Matzke**" refers to Defendant Robin Matzke.

22. "**Person**" has the meaning set forth in 11 U.S.C. § 101(41).

23. "**Plaintiffs**" refers to: (a) FTXT, and (b) Maclaurin.

24. "**Ukaj**" refers to Ernest Ukaj.

25. "**SBF**" refers to Samuel Bankman-Fried.

26. "**Requests for Admission**" or "**Request**" refers to the individual Requests for Admission set forth this Request.

27. "**You**" or "**Your**" refers to either or both Plaintiffs, and any other Person acting on behalf of the foregoing.

28. Terms used in the Requests but not otherwise defined shall have the meanings ascribed to them in the Complaint.

## INSTRUCTIONS

1.  These Requests shall be deemed continuing, and supplemental answers shall be required if you directly or indirectly obtain further information after the initial response, as provided by Federal Rule of Civil Procedure 26(e).

2.  With respect to the Requests, pursuant to Federal Rule of Civil Procedure 36(a)(4): "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

3.  With respect to the Requests, pursuant to Federal Rule of Civil Procedure 36(a)(5): "The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial."

4.  Any information withheld pursuant to a claim of privilege must be disclosed pursuant to Federal Rule of Civil Procedure 26(b)(5). The Requesting Defendants request a privilege log to be provided with your response to the Requests.

5.  If you fail to comply with the provisions of Federal Rules of Bankruptcy Procedure 7026 and 7036, incorporating the provisions of Federal Rules of Civil Procedure 26 and 36, with respect to the Requests, the matters about which an admission are requested shall be deemed admitted.

A.0139

6. Unless otherwise specified, the relevant period for the Requests shall be from January 1, 2020 through the present.

**REQUESTS FOR ADMISSION**

1. Admit that in connection with SPA 1, some or all of Defendants provided documents, whether in a data room or otherwise, to FTXT, Maclaurin, and/or any other individuals or entities in, affiliated with, employed by, engaged by, or working on behalf of the FTX Group and/or any entities therein.

2. Admit that in connection with SPA 2, some or all of Defendants provided documents, whether in a data room or otherwise, to FTXT, Maclaurin, and/or any other individuals or entities in, affiliated with, employed by, engaged by, or working on behalf of the FTX Group and/or any entities therein.

3. Admit that in connection with SPA 3, some or all of Defendants provided documents, whether in a data room or otherwise, to FTXT, Maclaurin, and/or any other individuals or entities in, affiliated with, employed by, engaged by, or working on behalf of the FTX Group and/or any entities therein.

4. Admit that in connection with SPA 1, FTXT, Maclaurin, and/or any other individuals or entities in, affiliated with, employed by, engaged by, or working on behalf of the FTX Group and/or any entities therein were represented by or communicated with an attorney and/or legal counsel.

5. Admit that in connection with SPA 2, FTXT, Maclaurin, and/or any other individuals or entities in, affiliated with, employed by, engaged by, or working on behalf of the FTX Group and/or any entities therein were represented by or communicated with an attorney and/or legal counsel.

6. Admit that in connection with SPA 3, FTXT, Maclaurin, and/or any other individuals or entities in, affiliated with, employed by, engaged by, or working on behalf of the FTX Group and/or any entities therein were represented by or communicated with an attorney and/or legal counsel.

7. Admit that on or about April 7, 2022 BDO USA, LLP provided a report, titled *ASC 805 Valuation of Certain Assets of FTX Trading Ltd.* ("**BDO Report**"), to FTXT, Maclaurin, or any other individuals or entities in, affiliated with, employed by, engaged by, or working on behalf of the FTX Group and/or any entities therein.

8. Admit that the document attached as Exhibit A, is a true, correct, and genuine copy of the BDO Report.

9. Admit that the BDO Report stated that it "determined the fair value of certain intangible assets and liabilities . . . related to the transactions with Digital Assets DAAG ('DAAG,' the 'Seller' or the 'Company'), acquired by FTX Trading Ltd. ('FTX Trading' or the 'Acquirer' or the 'Client') on November 14, 2021 (the 'Valuation Date')."

10. Admit that the BDO Report provided a fair value of DAAG that was $1,400,000 for trade names and trademarks, $152,100,000 for operating licenses, and $83,479,000 for contingent consideration.

11. Admit that FTXT, Maclaurin, or any other individuals or entities in, affiliated with, employed by, engaged by, or working on behalf of the FTX Group and/or any entities therein declined to acquire and/or declined to offer to acquire Kephas.

12. Admit that FTXT, Maclaurin, or any other individuals or entities in, affiliated with, employed by, engaged by, or working on behalf of the FTX Group and/or any entities therein has not paid Matzke and/or Gruhn more than $100 million for the acquisition of K-DNA.

Dated: October 25, 2023
Wilmington, Delaware

*/s/ Peter J. Keane*
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:   (302) 652-4100
Facsimile:   (302) 652-4400
Email:   ljones@pszjlaw.com
             pkeane@pszjlaw.com

THE DALEY LAW FIRM LLC
Darrell Daley (admitted *pro hac vice*)
Samantha Neal (admitted *pro hac vice*)
4845 Pearl East Circle, Suite 101
Boulder, Colorado 80301
Telephone: (303) 479-3500
Email: Darrell@daleylawyers.com
           Samantha@daleylawyers.com

- and -

MORRISON COHEN LLP
Joseph T. Moldovan (admitted *pro hac vice*)
Heath D. Rosenblat (admitted *pro hac vice*)
Jason P. Gottlieb (admitted *pro hac vice*)
Michael Mix (admitted *pro hac vice*)
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
Facsimile: (212) 735-8708
Email: jmoldovan@morrisoncohen.com
           hrosenblat@morrisoncohen.com
           jgottlieb@morrisoncohen.com
           mmix@morrisoncohen.com

*Counsel to Defendants Lorem Ipsum UG, Patrick Gruhn, and Robin Matzke*

**A.0142**

# Exhibit A

ASC 805 VALUATION OF CERTAIN ASSETS OF

# FTX TRADING LTD.

FOR FINANCIAL REPORTING PURPOSES



A.0144

1  BDO | Strategically Focused, Remarkably Responsive.

April 7, 2022

Jen Chan
Chief of Staff
2000 Center Street 4th Floor
Berkeley, CA 94704-1200

Dear Ms. Chan:

In accordance with your request, BDO USA, LLP ("BDO," "we," "our," or "us") has determined the fair value of certain intangible assets and liabilities (collectively, the "Subject Items") related to the transaction with Digital Assets DA AG ("DAAG," the "Seller" or the "Company"), acquired by FTX Trading Ltd. ("FTX Trading" or the "Acquirer" or the "Client") on November 14, 2021 (the "Valuation Date"). We submit our findings in this valuation report.

This valuation analysis was conducted for financial reporting purposes in connection with U.S. Generally Accepted Accounting Principles ("GAAP") and Accounting Standards Codification ("ASC") Topic 805 ("ASC 805"). FTX Trading is the sole intended user of this report, and the use of the report is restricted to the purpose indicated herein. BDO is not responsible for the unauthorized use of this report. We authorize the Client's auditors to have access to this report, as necessary to perform audit testing procedures associated with the Client's financial statements.

Descriptions of the methodologies and procedures utilized in our valuation analyses, as well as the factors we considered in formulating our opinion are presented in this valuation report. In addition, we have listed the sources of information used in this report and the scope of work in the course of our investigation. This report is subject to the attached limiting conditions and to the Statement of Work dated February 23, 2022, for this assignment.

Based on our analysis, in accordance with ASC 805, as presented in the table below and in Appendix VII, Schedule 1, it is our opinion that the fair values of the Subject Items as of the Valuation Date are:

| Subject Assets/Liabilities | Fair Value (Rounded in $) |
|---|---|
| Trade Name | $ 1,400,000 |
| Operating Licenses | $ 152,100,000 |
| Contingent Consideration | $ 83,479,000 |

Very truly yours,

*BDO USA, LLP*

BDO USA, LLP

A.0145

# Contents

ENGAGEMENT OVERVIEW ........................................................... 3

OVERVIEW OF THE TRANSACTION................................................ 5

TARGET COMPANY OVERVIEW ..................................................... 6

REVIEW OF PROSPECTIVE FINANCIAL INFORMATION....................... 7

EXTERNAL ENVIRONMENT ......................................................... 10

DERIVATION OF RATES OF RETURN ............................................ 11

SUBJECT ASSETS ACQUIRED - INTANGIBLE................................. 17

TEST OF REASONABLENESS – WEIGHTED AVERAGE RETURN ON ASSETS 25

CONCLUSION OF VALUE ........................................................... 28

APPENDIX I. SOURCES OF INFORMATION .................................... 30

APPENDIX II. ASSUMPTIONS AND LIMITING CONDITIONS ................ 31

APPENDIX III. CERTIFICATION STATEMENT .................................. 34

APPENDIX IV. APPRAISER'S QUALIFICATIONS ............................... 35

APPENDIX V. ECONOMIC AND INDUSTRY OVERVIEW ....................... 39

APPENDIX VI. ASC 820 GUIDELINES ........................................... 54

APPENDIX VII. SCHEDULES ....................................................... 57

A.0146

3  **BDO** | Strategically Focused, Remarkably Responsive.

# Engagement Overview

BDO was retained to determine the fair value of the Subject Assets of DAAG, acquired by FTX Trading on November 14, 2021. This valuation analysis was conducted for financial reporting purposes in connection with ASC 805, Business Combinations.

## Standard of Value

ASC 805 refers to ASC 820 for guidance in defining fair value. ASC 820 establishes a consistent definition of fair value and provides a framework for measuring fair value.  The standard of value to be used in our analysis for financial reporting purposes is fair value.  Fair value is defined in FASB's ASC 820 as:

> ". . . the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date."

In estimating the fair value of the assets, ASC 820 requires specific consideration of the following framework:

- Unit of account for the acquired assets;
- Exit market (i.e. the principal or most advantageous market) for the acquired assets;
- Market participants in the exit market;
- Highest and best use of the acquired assets;
- Valuation premise (In-use or In-exchange) for acquired assets;
- Specific valuation techniques; and,
- Valuation inputs, including a fair value hierarchy.

BDO's consideration of this framework is discussed in greater detail in Appendix VI.

## Level of Value and Premise of Value

The Subject Assets were valued on a going concern basis, which assumes that they will be utilized in an ongoing business with no plans to liquidate in the foreseeable future.

## Scope

The scope of this valuation encompassed such steps and procedures as we deemed necessary, including, but not limited to, the following:

- Discussions with Management relative to the nature of the Company's business activities, the magnitude and character of the markets served, recent and prospective financial trends and conditions, the economic outlook and future operating plans of the Company, and other relevant factors associated with DAAG and its Subject Assets;

- Consideration of ASC 805, ASC 820, and other relevant Accounting Standards Codification Sections and guidelines as promulgated by the Financial Accounting Standards Board that address the valuation of business enterprises or the underlying tangible and intangible assets of such going concern entities for financial reporting purposes;

**A.0147**

- Research, review and analysis of, among other things: (i) the financial condition of the Company; (ii) the recent historical and prospective return capacity of the Company; (iii) the transaction; (iv) the various documents supplied to us by Management or as compiled by us from other sources; (v) the history and nature of the Company; (vi) economic, industry, and stock market trends and data; and (vii) capital market evidence regarding investment rates of return; and,

- An analysis of other relevant facts and data available resulting in an independent opinion of value applicable only within the context of the stated purpose of this valuation.

The Subject Items identified include trade names and trademarks, customer relationships, and contingent consideration.

The implied fair value of goodwill was determined based upon a purchase price residual methodology. We have not conducted a valuation of any current or tangible assets in conjunction with the transaction. We understand that this valuation will be used for financial reporting and it is not valid for any other purpose or use.

## Sources of Information

In connection with this report, we have made such reviews, analyses, and inquiries as we have deemed necessary and appropriate under the circumstances. In the course of our valuation we have relied upon information provided to us by Management. The principal information provided to us and used in our valuation is outlined in Appendix I.