**FTX Trading Ltd.**
*ASC 805 Purchase Price Allocation of Digital Assets DA AG*
Guideline Public Company Metrics
*As of November 14, 2021*

Appendix 4
*($US in Thousands)*

### TTM Revenues

| | |
|---|---:|
| The Charles Schwab Corporation | 17,988,000 |
| Intercontinental Exchange, Inc. | 6,977,000 |
| Coinbase Global, Inc. | 5,924,610 |
| Nasdaq, Inc. | 5,881,000 |
| E*TRADE Financial, LLC | 2,895,000 |
| Interactive Brokers Group, Inc. | 2,737,000 |
| Hong Kong Exchanges and Clearing Limited | 2,712,049 |
| Robinhood Markets, Inc. | 1,769,972 |
| Euronext N.V. | 1,391,962 |
| Voyager Digital Ltd. | 254,562 |
| ADVFN Plc | 12,629 |
| Digital Assets DA AG | - |
| | |
| Guideline Public Company Average | 4,413,071 |
| Guideline Public Company Median | 2,737,000 |

### TTM EBITDA Margin

| | |
|---|---:|
| Hong Kong Exchanges and Clearing Limited | 75.5% |
| Interactive Brokers Group, Inc. | 69.6% |
| Intercontinental Exchange, Inc. | 60.7% |
| Euronext N.V. | 55.4% |
| Coinbase Global, Inc. | 55.0% |
| The Charles Schwab Corporation | 49.8% |
| E*TRADE Financial, LLC | 45.2% |
| Nasdaq, Inc. | 31.1% |
| ADVFN Plc | 17.8% |
| Voyager Digital Ltd. | -2.7% |
| Robinhood Markets, Inc. | -67.3% |
| | |
| Guideline Public Company Average | 35.5% |
| Guideline Public Company Median | 49.8% |

### NFY Proj. EBITDA Margin

| | |
|---|---:|
| Hong Kong Exchanges and Clearing Limited | 77.9% |
| Digital Assets DA AG | 64.3% |
| Intercontinental Exchange, Inc. | 63.6% |
| Euronext N.V. | 59.8% |
| Nasdaq, Inc. | 55.6% |
| The Charles Schwab Corporation | 52.5% |
| Coinbase Global, Inc. | 51.2% |
| Voyager Digital Ltd. | 33.6% |
| Robinhood Markets, Inc. | 2.6% |
| Interactive Brokers Group, Inc. | 0.0% |
| | |
| Guideline Public Company Average | 44.1% |
| Guideline Public Company Median | 52.5% |

### NFY + 1 Proj. EBITDA Margin

| | |
|---|---:|
| Digital Assets DA AG | 83.0% |
| Hong Kong Exchanges and Clearing Limited | 79.1% |
| Intercontinental Exchange, Inc. | 64.5% |
| Euronext N.V. | 61.7% |
| Nasdaq, Inc. | 54.9% |
| The Charles Schwab Corporation | 54.3% |
| Coinbase Global, Inc. | 43.6% |
| Voyager Digital Ltd. | 39.0% |
| Robinhood Markets, Inc. | 13.1% |
| Interactive Brokers Group, Inc. | 0.0% |
| | |
| Guideline Public Company Average | 45.6% |
| Guideline Public Company Median | 54.3% |

### Total Assets

| | |
|---|---:|
| The Charles Schwab Corporation | 607,548,000 |
| Euronext N.V. | 177,482,151 |
| Intercontinental Exchange, Inc. | 150,662,000 |
| Interactive Brokers Group, Inc. | 106,282,000 |
| E*TRADE Financial, LLC | 70,371,000 |
| Hong Kong Exchanges and Clearing Limited | 56,399,108 |
| Robinhood Markets, Inc. | 19,317,368 |
| Coinbase Global, Inc. | 18,454,271 |
| Nasdaq, Inc. | 18,397,000 |
| Voyager Digital Ltd. | 4,656,293 |
| Digital Assets DA AG | 132,222 |
| | |
| Guideline Public Company Average | 111,779,689 |
| Guideline Public Company Median | 56,399,108 |

### Debt Free NWC as % of Revenue (Excld. Cash)

| | |
|---|---:|
| Intercontinental Exchange, Inc. | 12.3% |
| Coinbase Global, Inc. | 5.3% |
| Voyager Digital Ltd. | 3.5% |
| Nasdaq, Inc. | 0.5% |
| Euronext N.V. | -8.7% |
| ADVFN Plc | -12.6% |
| Robinhood Markets, Inc. | -113.6% |
| E*TRADE Financial, LLC | -136.0% |
| Interactive Brokers Group, Inc. | -1118.3% |
| Hong Kong Exchanges and Clearing Limited | -1670.1% |
| The Charles Schwab Corporation | -2208.7% |
| | |
| Guideline Public Company Average | -476.9% |
| Guideline Public Company Median | -12.6% |

### Depreciation as a % of Revenues

| | |
|---|---:|
| Intercontinental Exchange, Inc. | 11.8% |
| The Charles Schwab Corporation | 6.3% |
| Euronext N.V. | 6.1% |
| Nasdaq, Inc. | 4.3% |
| E*TRADE Financial, LLC | 3.7% |
| Hong Kong Exchanges and Clearing Limited | 3.3% |
| Interactive Brokers Group, Inc. | 2.6% |
| Coinbase Global, Inc. | 0.8% |
| Robinhood Markets, Inc. | 0.7% |
| Voyager Digital Ltd. | 0.5% |
| | |
| Guideline Public Company Average | 3.8% |
| Guideline Public Company Median | 3.3% |

### Capex as % of TTM Sales

| | |
|---|---:|
| Hong Kong Exchanges and Clearing Limited | 6.4% |
| E*TRADE Financial, LLC | 5.0% |
| The Charles Schwab Corporation | 4.3% |
| Intercontinental Exchange, Inc. | 3.0% |
| Robinhood Markets, Inc. | 3.0% |
| Nasdaq, Inc. | 2.9% |
| Interactive Brokers Group, Inc. | 2.6% |
| Euronext N.V. | 1.8% |
| ADVFN Plc | 0.6% |
| Coinbase Global, Inc. | 0.1% |
| Voyager Digital Ltd. | 0.0% |
| | |
| Guideline Public Company Average | 2.7% |
| Guideline Public Company Median | 2.9% |

Footnotes

This schedule has been prepared on the basis of the information and assumptions set forth in our report and the attached schedules.  It must be read in conjunction with the accompanying report and all the other exhibits included herein. Some totals may not add due to rounding.

BDO is the brand name for BDO USA, LLP, a U.S. professional services firm providing assurance, tax, and advisory services to a wide range of publicly traded and privately held companies. For more than 100 years, BDO has provided quality service through the active involvement of experienced and committed professionals. The firm serves clients through more than 60 offices and over 550 independent alliance firm locations nationwide. As an independent Member Firm of BDO International Limited, BDO serves multi-national clients through a global network of 67,700 people working out of 1,400 offices across 158 countries.

BDO USA, LLP, a Delaware limited liability partnership, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms. BDO is the brand name for the BDO network and for each of the BDO Member Firms.

**www.bdo.com**

This document contains information that is proprietary and confidential to BDO USA, LLP, the disclosure of which could provide substantial benefit to competitors offering similar services. Thus, this document may not be disclosed, used, or duplicated for any purposes other than to permit you to evaluate BDO to determine whether to engage BDO. If no contract is awarded to BDO, this document and any copies must be returned to BDO or destroyed.

Material discussed in this publication is meant to provide general information and should not be acted on without professional advice tailored to individual needs.

© 2022 BDO USA, LLP. All rights reserved. www.bdo.com



**A.0225**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | |
| FTX TRADING LTD. and MACLAURIN INVESTMENTS LTD., | |
| Plaintiffs, | |
| -against- | Adv. Pro. No. 23-50437 (JTD) |
| LOREM IPSUM UG, PATRICK GRUHN, ROBIN MATZKE, and BRANDON WILLIAMS, | |
| Defendants. | |

### FIRST SET OF DOCUMENT REQUESTS BY DEFENDANTS LOREM IPSUM UG, PATRICK GRUHN, AND ROBIN MATZKE TO DEFENDANT BRANDON WILLIAMS

**PLEASE TAKE NOTICE** that pursuant to Rule 34 of the Federal Rules of Civil Procedure, made applicable in the above-captioned adversary proceeding by Rule 7034 of the Federal Rules of Bankruptcy Procedure, Defendants Lorem Ipsum UG, Patrick Gruhn, and Robin Matzke, by their undersigned attorneys, hereby propound the following requests for production to Defendant Brandon Williams ("**Requests**" and each a "**Request**"). The Demanding Defendants request that Williams respond to the following Requests within thirty (30) days from the date of their service and produce all responsive documents at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor Wilmington, DE 19801.

A.0226

## **DEFINITIONS**

1.      The terms "**concerning**," "**regarding**," "**referring to**" and "**relating to**" (or an any variation thereof) mean describing, discussing, constituting, containing, considering, embodying, evaluating, mentioning, memorializing, supporting, collaborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, regarding, controverting, contradicting, made in connection with or by reason of, or derived or arising therefrom.

2.      The terms "**and**" and "**or**" shall be interpreted in every instance as meaning "and/or" and shall not, in either instance, be interpreted disjunctively to exclude any document or information otherwise within the scope of any description or request herein.

3.      The use of the present tense includes the past tense, the use of the past tense shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

4.      Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure ("**Federal Rules**") and the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

5.      "**Adversary Proceeding**" refers to the above-captioned adversary proceeding, specifically, *FTX Trading Ltd. and Maclaurin Investments Ltd. v. Lorem Ipsum UG, Patrick Gruhn, Robin Matzke, and Brandon Williams*, Case No. 23-50437 (JTD) (Bankr. D. Del.).

6.      "**Bankruptcy Proceeding**" refers to the above-captioned main Chapter 11 bankruptcy proceeding of the jointly administered Debtors pending in the United States Bankruptcy Court for the District of Delaware, Case No. 22-11068 (JTD).

**A.0227**

7.      "**Communication**" means the transmittal of information of any kind, in any form, and by any means, and therefore includes, but is not limited to, any telephone conversation, face-to-face meeting or conversation, visit, conference, internal or external discussion, or exchange of Documents (defined below). All written Communications shall include, without limitation, electronic, printed, typed, handwritten or other readable Documents, correspondence, memos, reports, contracts, both initial and subsequent, diaries, logbooks, minutes, notes, studies, surveys, forecasts, emails, text messages, and instant messages. A Document Request (defined below) concerning any Communication among or between specified parties includes a request for any Communication among or between such parties, whether or not such Communication included or was directed to any other person.

8.      "**Complaint**" means the *Complaint for Avoidance and Recovery of Transfers, and Obligations Pursuant to 11 U.S.C. §§ 105, 547, 548, and 550, Breach of Fiduciary Duty Pursuant to Antiguan Common Law and the Antigua International Business Corporations Act, and for Disallowance of Claims Pursuant to 11 U.S.C. § 502(d)*, filed on July 12, 2023 [Adv. P. No. 1] in the Adversary Proceeding.

9.      "**Cosima Capital**" refers to Cosima Capital, described in the Complaint as a "digital asset and cryptocurrency advisory and trading firm."

10.      "**Crypto Lawyers**" refers to Crypto Lawyers GmbH, a/k/a K & G Lawyers for International Business and Tax Law GmbH, a/k/a Canco GmbH.

11.      "**DAAG**" refers to Digital Assets DA AG, now known as FTX Europe AG, and its wholly owned subsidiaries.

12.      "**DAAG Acquisition**" refers to the acquisition of DAAG and its subsidiaries by FTX Trading, as described in Paragraphs 49-77 of the Complaint.

3

13.  "**Debtors**" refers to the entities jointly administered in the Bankruptcy Proceeding.

14.  "**Demanding Defendants**" refers collectively to LI, Gruhn, and Matzke (each defined below).

15.  "**Defendants**" refers collectively to LI, Gruhn, Matzke, and Williams.

16.  "**Describe**" means: (a) explain fully by reference to underlying facts rather than by ultimate facts or conclusions of fact or law; (b) where applicable, particularize as to: (i) time, (ii) date, and (iii) manner; and (c) identify each and every person having personal knowledge of such facts.

17.  "**Document(s)**" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule 34(a)(1)(A). Specifically, Federal Rule 34(a)(1)(A) provides:

> Any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form . . . .

Fed. R. Civ. P. 34(a)(1)(A). The term "**Document**" includes all originals, translations, non-identical copies, and copies with marginal notations or interlineations. A draft or non-identical copy is a separate Document within the meaning of this term. "Document" also includes all Electronically Stored Information.

18.  "**Document Request**" or "**Request**" refers to the individual Requests for Production of Documents set forth in this Request.

19.  "**Earn-Out Payments**" refers to the "earn-out payments" described in Paragraph 68 of the Complaint.

**A.0229**

20.    "**Electronically Stored Information**" has the broadest possible meaning under Federal Rule 34 and refers to all computer or electronically stored or generated data and information and includes all attachments to and enclosures with any requested item, and all drafts thereof. "Electronically Stored Information" includes information stored in any format and on any storage media, including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable. "Electronically Stored Information" includes: word-processing Documents; electronic spreadsheets; electronic presentation Documents; email messages; image files; sound files; and material or information stored in a database, or accessible from a database. "Electronically Stored Information" also includes all associated metadata that is maintained or saved, which includes: a Document's title or name; file name; date and time of creation; date and time of last edit; identity of author; identity of owner; identities of editors; identities of recipients; changes; history of changes; email header information; history of who viewed an email and when; and email routing information.

21.    "**FTX Group**" refers to the entities and individuals referenced in Footnote 2 of the Complaint, individually and/or collectively.

22.    "**FTXT**" refers to FTX Trading Ltd., a corporation described in Paragraph 14 of the Complaint as registered in Antigua and Barbuda with a principal place of business formerly in Nassau, Bahamas.

23.    "**Gruhn**" refers to Defendant Patrick Gruhn.

24.    "**Instructions**" refers to the instructions following this "Definitions" section of these Requests.

25.    "**IP**" means recognized protectable rights and interests, such as patents, copyrights, trademarks, service marks, applications for any of the foregoing, inventions, trade secrets, trade

A.0230

dress, domain names, logos, insignia, color combinations, slogans, moral rights, right of publicity, author's rights, contract and licensing rights, works, industrial design rights, rights of priority, know how, design flows, methodologies, devices business processes, developments, innovations, good will, and all other legal rights protecting intangible proprietary information.

26.    "**K-DNA**" refers to K-DNA Financial Services Ltd., as described in Paragraph 6 of the Complaint.

27.    "**K-DNA SPA**" refers to the October 22, 2021 share purchase agreement described in Paragraph 86 of the Complaint.

28.    "**Lorum Ipsum**" or "**LI**" refers to Defendant Lorem Ipsum UG, a/k/a Lorem Ipsum RM UG, a German company.

29.    "**Maclaurin**" refers to Maclaurin Investments Ltd., f/k/a Alameda Ventures Ltd., described in Paragraph 15 of the Complaint as a corporation registered in Seychelles.

30.    "**Matzke**" refers to Defendant Robin Matzke.

31.    "**Person**" has the meaning set forth in 11 U.S.C. § 101(41).

32.    "**Plaintiffs**" refers to: (a) FTXT, and (b) Maclaurin.

33.    "**Plaintiffs' Initial Disclosures**" refers to Plaintiffs' Initial Disclosures Pursuant to Rule 26(a)(1)(A) dated September 27, 2023.

34.    "**Professionals**" refers to individuals or entities engaged in specific occupations or fields of expertise that require specialized knowledge, training, and qualifications, and includes, but is not limited to, lawyers, attorneys, solicitors, barristers, accountants, investment bankers, financial advisors, consultants, and other licensed or certified practitioners, as well as any organizations, firms, or associations employing individuals in such occupations.

35.    "**Ukaj**" refers to Ernest Ukaj.

A.0231

36.    "**SBF**" refers to Samuel Bankman-Fried.

37.    "**You**" or "**Your**" refers to Defendant Brandon Williams and his agents, representatives, or any other Person acting on his behalf.

38.    Terms used in the Requests but not otherwise defined shall have the meanings ascribed to them in the Complaint.

## **INSTRUCTIONS**

1.    The preceding Definitions apply to these Instructions and each of the succeeding Document Requests.

2.    The information requested herein is not restricted to Your personal knowledge, but includes information in the possession of or available to any of Your agents, representatives, and/or Professionals.  Persons responding to these Document Requests on Your behalf are directed to make a diligent search of all records within Your possession, custody, or control, including Your paper files and Electronically Stored Information.

3.    You are required to produce the originals or legible exact copies of all Documents described in the Document Request in Your actual or constructive possession.  Documents attached to each other should not be separated.  To the extent that a Document Request calls for more detailed information than is available, respond to such Document Request by providing all responsive information that is available and an explanation of why the remaining information is not available to You.  If there are no Documents in Your possession, custody, or control that are responsive to a Document Request, state so with particularity in writing.  A negative response to a Document Request will be understood to be a representation that You have no responsive information in any lesser detail.

A.0232

4.      All Documents shall be produced in an orderly manner (and with appropriate markings or other identification) so that the Demanding Defendants will be able to identify:  (a) the source of the Document; (b) the file in which the Document is or was maintained; (c) the person to whom such file belongs or belonged; and (d) the specific Document Request to which the Document is responsive.  In responding to the Document Request, set forth the Request in full before providing the response and specify the particular Bates range responsive to each individual Document Request.

5.      You shall produce all Documents in the manner in which they are maintained in the ordinary course of Your business.  A request for a Document shall be deemed to include a request for any and all file folders within which a Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to a Document in addition to the Document itself.

6.      Excel or equivalent spreadsheets shall be produced in native format with cell data and formulas populated.  Where a native file is in color, the corresponding .pdf and .tiff files shall also be in color. All imbedded sound files shall be produced.

7.      Documents should be produced with only one data load file ("DAT") and one image pointer file ("OPT").  All document family groups, i.e. email attachments (including modern attachments), embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.  All members of the family have the same group identifier (which means it repeats for all records in the group) this identifier is populated in the PRODBEGATT field.  All productions should be globally de-duplicated unless otherwise agreed upon by the parties.  If you are producing iMessages, Short Message Service files or instant messenger services such as but not limited to: Slack, Signal, Discord, Microsoft Teams, Telegram, Text messages (MMS, SMS, iMessage, Whatsapp), Google Chat, Bloomberg Chat, Instagram,

A.0233

they should be produced with the entire conversation and the family group as one file or produced no smaller than by day (24-hour period) ensuring that the entire conversation thread is maintained in a family group. We request that for time zone consideration; normalization of the date and time stamps of all ESI data to the specific zone of UTC unless otherwise agreed upon by the parties.

8.    The following delivery format should be followed:

a.  Black and white images must be 300 DPI Group IV single-page TIFF files. Color images must be produced in JPEG format.

b.  All image files must have a unique file name. There should be no gaps in the image set.

c.  The number of TIFF files per folder should not exceed 500 files.

d.  Some document types will not be imaged for production unless redactions are applied, i.e. spreadsheets those documents should be produced in native format with a slip-sheet included with the image collection indicating, "Document Produced in Native Format", titled after the PRODBEG of the native files, there should be no gaps in the image collection.

e.  For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media. Native file documents must be named per the first bates number. The full path of the native file must be provided in the .DAT file for the NATIVELINK field. The number of native files per folder should not exceed 500 files.

f.  Each page of every document should be endorsed with the bates number on the lower right corner of each page of the document.

g.  If documents require an additional endorsement, the additional endorsement should be placed in the lower right corner of each page of the document .

h.  The export will include the following load files: DAT and OPT files

i.  The data file (.DAT) contains all of the fielded information that will be loaded into the Relativity® database. The first line of the .DAT file must be a header record identifying the field names. The .DAT file must use the following Concordance® default delimiters:

1.  Comma ASCII character 20

A.0234

       2.   Quote þ ASCII character 254

       3.   Newline ® ASCII character 174

    ii.  Date fields should be provided in the Date/Time format, i.e. 05/28/2016 7:11 AM.  Dates must be in a valid format. For example, 01/00/2000 or 00/00/0000 are **not** valid dates.

    iii.  The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

  i.  Text must be produced as separate document-level text files, **not** as fields within the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production.  The TEXTPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the ProdBeg.  <u>PLEASE DO NOT include the text in the .DAT file.</u>

  j.  If any Document responsive to any Document Request is no longer in Your possession, custody, control or care, state whether the Document:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred voluntarily or involuntarily to others; or (d) has been otherwise disposed of or discarded. In each such situation, set forth the facts surrounding such disposition, identify the person(s) directing or authorizing the disposition, and list the disposition date.

9.  All Documents shall be produced with metadata, including

     PRODBEG
     PRODEND
     PRODBEGATT (BegAtt and EndAtt fields must be two separate fields.)
     PRODENDATT (BegAtt and EndAtt fields must be two separate fields.)
     CUSTODIAN
     ALL CUSTODIANS
     DOCTYPE
     PARENT DATE/TIME – this field is an aggregated date field which is harmonized and carried down through all attachments and family members.
     FROM
     TO
     PARTICIPANTS
     CC
     BCC
     SUBJECT
     SENT DATE/TIME
     RECEIVED DATE/TIME

A.0235

CREATED DATE/TIME
LAST MODIFIED DATE/TIME
BEGIN DATE – Populated for any short messages produced
END DATE – Populated for any short messages produced
CHAT TYPE
TIMEZONE
FILENAME
ORIGINAL FILE PATH
FILE EXT
AUTHOR
REDACTED – Populated with a value (i.e. Redacted, Has Redactions or Y) when the document has a redaction
FILESIZE
MD5HASH
MESSAGEID
ConversationThreadID
PageCount
PROD_VOLUME

10.     If any Document responsive to any Document Request has been lost, removed, destroyed, or altered prior to the service of this Request, produce for each such Document:  (a) a description of the Document to the extent known, and the last time and location that the Document is known or believed to have existed; (b) the date, sender, recipient and other Person(s) to whom copies were sent, subject matter, present location, and location of any copies; and (c) the identity of any Person authorizing or participating in any removal, destruction, or alteration of the Document, and the method and circumstances of such removal, destruction, or alteration.

11.     Any Document withheld from production based on privilege or any similar claim shall be identified by:  (a) the type of document; (b) the general subject matter of the Document; (c) the date of the Document; and (d) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document, and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth.

A.0236

12.     If You object to any part of any Document Request, You shall state fully the nature of the objection. Notwithstanding any objections, You shall nonetheless comply fully with the other parts of the Document Request not objected to.

13.     If at any time additional Documents responsive to any Document Request comes into Your possession, custody, or control or are brought to Your attention, prompt supplementation of Your response to the Document Request is required.

14.     You are required to preserve and maintain any Documents that are related to the subject matter of the Document Requests, regardless of whether You deem them responsive to the Document Requests.  You shall instruct Your employees, contractors, Professionals, and agents to do the same and shall take steps to ensure that they fulfill these obligations.

15.     The Demanding Defendants reserve the right to request additional Documents, as needed, and to submit additional or supplemental requests, provided, further, that it expressly reserves its rights to supplement or amend the Document Requests.

16.     The Document Requests are continuing in nature and the Defendant is required to supplement its responses as it obtains further information relating to its answers provided herein.

17.     Unless otherwise specified, the relevant period for the Document Requests shall be from January 1, 2020 through the present.

## REQUESTS FOR PRODUCTION

1.     Documents and communications regarding your relationship with SBF and/or any Debtor, including about any potential acquisitions of DAAG by Debtors.

2.     Documents and communications regarding any payments between or among You, Debtors, Plaintiffs, and Demanding Defendants.

A.0237

3.      Communications with any of the individuals and entities listed in Your Initial Disclosures.

4.      Documents and communications regarding Your purchases and sales of FTT or SRM tokens.

5.      Documents and communications with, about, or regarding DAAG and/or Defendants.

6.      Documents and communications regarding any and all regulatory and operating licenses held by DAAG, including applications therefor.

7.      Documents and communications regarding any and all formal or informal valuations of DAAG.

8.      Documents and communications regarding a proposed business deal between FTX and DAAG as described in Paragraphs 52-56 of the Complaint, including any internal or external communications or negotiations preceding or leading to such documents, and any due diligence in connection with such documents and transactions.

9.      Documents and communications regarding SPA 1 and the other transactions and documents described in Paragraph 56 of the Complaint, including any internal or external communications or negotiations preceding or leading to such documents, and any due diligence in connection with such documents and transactions.

10.      Documents and communications regarding the price and valuation described in Paragraph 58 of the Complaint, including but not limited to all documents and communications concerning how such figures were derived.

11.      Documents and communications regarding SPA 2, as described in Paragraphs 60-62 of the Complaint, including any internal or external communications or negotiations preceding

A.0238