## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | |
| FTX TRADING LTD. and MACLAURIN INVESTMENTS LTD., | |
| Plaintiffs, | |
| - against - | Adv. Pro. No. 23-50437 (JTD) |
| LOREM IPSUM UG, PATRICK GRUHN, ROBIN MATZKE, and BRANDON WILLIAMS, | |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT BRANDON WILLIAMS' MOTION FOR A PROTECTIVE ORDER STAYING DISCOVERY

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification number are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMEMENT ............................................................................1

RELEVANT BACKGROUND ...............................................................................4

LEGAL STANDARD.............................................................................................8

ARGUMENT.........................................................................................................9

I.     DEFENDANT WILLIAMS' FRIVOLOUS MOTION FAILS TO ESTABLISH "GOOD CAUSE" UNDER THIS CIRCUIT'S PRECEDENT. .......................................9

     A.    A Discovery Stay Would Not Simplify The Issues at Trial................................... 9

     B.    A Discovery Stay Would Be Inappropriate at This Point in The Litigation......... 10

     C.    A Discovery Stay Would Unduly Prejudice Plaintiffs While Rewarding Defendant Williams' Gamesmanship. ................................................. 12

II.    THE COURT SHOULD ORDER DEFENDANT WILLIAMS TO MAKE HIS FIRST DOCUMENT PRODUCTION IN SEVEN DAYS AND TO PAY REASONABLE EXPENSES INCURRED BY PLAINTIFFS IN RESPONDING TO THE MOTION. ...............................................................................14

CONCLUSION......................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

*Page(s)*

### Cases

*Celotex Corp.* v. *Edwards*,
   514 U.S. 300 (1995)................................................................................................12

*Chesney* v. *Valley Stream Union Free Sch. Dist. No. 24*,
   236 F.R.D. 113 (E.D.N.Y. 2006) ...............................................................................9

*Cipla USA, Inc.* v. *Ipsen Biopharmaceuticals, Inc.*,
   2022 WL 3139096 (D. Del. Aug. 5, 2022) ..................................................8, 9, 11, 12

*Dentsply Int'l, Inc.* v. *Kerr Mfg. Co.*,
   734 F. Supp. 656 (D. Del. 1990)................................................................................13

*Eagle View Techs., Inc.* v. *Xactware Sols., Inc.*,
   2016 WL 7165695 (D.N.J. Dec. 7, 2016) ...............................................................13

*Galarza* v. *Whittle-Kinard*,
   2017 WL 2198182 (D.N.J. May 18, 2017) .................................................................8

*Gerald Chamales Corp.* v. *Oki Data Americas, Inc.*,
   247 F.R.D. 453 (D.N.J. 2007).......................................................................9, 10, 11

*In re Green Field Energy Servs., Inc.*,
   2017 WL 2729065 (Bankr. D. Del. June 23, 2017)................................................10

*Kaavo Inc.* v. *Cognizant Tech. Sols. Corp.*,
   2015 WL 1737476 (D. Del. Apr. 9, 2015)..........................................................9, 11, 12, 13

*Levey* v. *Brownstone Inv. Grp., LLC*,
   590 F. App'x. 132 (3d Cir. 2014) ...........................................................................10

*Mann* v. *Brenner*,
   375 F. App'x. 232 (3d Cir. 2010) ...........................................................................10

*Petro* v. *FCA US LLC*,
   2023 WL 6510741 (D. Del. July 31, 2023) ...............................................8, 11, 12

*In re Radnor Holdings Corp.*,
   564 B.R. 467 (D. Del.), *aff'd*, 706 F. App'x. 94 (3d Cir. 2017)................................10

*Square Ring, Inc.* v. *Doe-1*,
   2014 WL 1116960 (D. Del. Mar. 18, 2014) ...............................................11, 13

*Standard Chlorine of Delaware, Inc.* v. *Sinibaldi,*
  821 F. Supp. 232 (D. Del. 1992)...................................................................................11, 13, 14

**Other Authorities**

Federal Rule of Bankruptcy Procedure 1001 ................................................................................12

Federal Rule of Bankruptcy Procedure 7026 ............................................................................1, 8

Federal Rule of Bankruptcy Procedure 7033 ................................................................................6

Federal Rule of Bankruptcy Procedure 7034 ................................................................................6

Federal Rule of Bankruptcy Procedure 7036 ................................................................................6

Federal Rule of Bankruptcy Procedure 9006 ................................................................................6

Federal Rule of Civil Procedure 26 .........................................................................................8, 14

Federal Rule of Civil Procedure 33 ...............................................................................................6

Federal Rule of Civil Procedure 34 ...............................................................................................6

Federal Rule of Civil Procedure 36 ...............................................................................................6

Federal Rule of Civil Procedure 37 .............................................................................................14

Plaintiffs FTX Trading Ltd. and Maclaurin Investments Ltd. (together, the "Plaintiffs") respectfully submit this opposition (this "Opposition") to the *Motion for Protective Order* [Adv. D.I. 35] (the "Motion" or "Mot.") filed by Defendant Brandon Williams on November 8, 2023.  In support of this Opposition, Plaintiffs respectfully state as follows:

## <u>PRELIMINARY STATEMEMENT</u>

Brandon Williams' frivolous Motion[2] is based upon the specious theory—which none of the Debtors' millions of stakeholders has raised—that the Debtors' chapter 11 cases should immediately cease because the lead case in the jointly administered main bankruptcy proceeding, *In re FTX Trading Ltd., et al.*, Case No. 22-11068 (the "Chapter 11 Cases"), was unauthorized when filed.  In separate motions, Mr. Williams' co-defendants have speculated that the chapter 11 petitions filed by two of the Debtors, FTX Trading Ltd. and Maclaurin Investments Ltd., must be dismissed because they were allegedly unauthorized when filed.  No attempt to contact the Debtors to inquire about corporate authority was made before these motions were filed.

Had an inquiry been made, the Defendants would have learned of this Court's subject matter jurisdiction and the unassailable authority of Mr. Ray to authorize those chapter 11 petitions to be filed under local foreign law.  These matters will be confirmed in connection with the Debtors' response to the motions to dismiss filed in the Chapter 11 Cases.[3]  In fact, the Debtors intend hold Mr. Williams (who filed a joinder to the motions to dismiss) and his co-Defendant

---

[2] The eleventh hour request for joinder by Defendants Patrick Gruhn, Robin Matzke, and Lorem Ipsum UG to Mr. Williams' Motion [Adv. D.I. 39] represents an attempt to circumvent the noticing requirement under Local Rule 7026-1(a), and is at odds with the joining Defendants' actions in this action.  As set forth further below, Defendants Gruhn, Matzke, and Lorem Ipsum UG have already served a significant number of discovery requests on Plaintiffs, with responses due in less than two weeks. (A.0097–A.0142.)  The joining Defendants also emphasized to Plaintiffs as recently as last week that they would "comply with the CMO" and "work on their discovery obligations."  (Ex. C.) To the extent that the Court accepts this late joinder, which it should not, Plaintiffs respectfully request that any relief granted to Plaintiffs against Mr. Williams apply with equal force to the late joining Defendants.

[3] The Debtors and the movants have agreed on a briefing schedule for the motions to dismiss the chapter 11 cases of FTX Trading Ltd. [D.I. 3400] and Maclaurin Investments Ltd. [D.I. 3399] whereby objections to the motions are due on December 13, 2023 and the movants' reply is due on January 5, 2024.

movants responsible for their ill-advised gambit seeking to destabilize the Debtors' chapter 11 proceedings in attempt to avoid adjudication of the substantial claims asserted in this proceeding.

The subsequent filing of this motion to stay discovery, and the parties' course of dealing in this action to date, both confirm that this motion is the latest bad faith effort to hinder and delay Plaintiffs from recovering over $320 million in fraudulent transfers to Williams and his codefendants, Patrick Gruhn, Robin Matzke, and Lorem Ipsum UG (together, the "Defendants") in connection with their sale of Digital Assets DA AG ("DAAG," and later, FTX Europe AG ("FTX Europe")) to Plaintiffs. Despite DAAG's lack of existing business or intellectual property, Defendants sold DAAG to FTX for over $376 million in consideration. (Compl. ¶¶ 2, 6, 20, 76.)

Mr. Williams' opportunity to seek in good faith a stay of discovery in this action pending motions to dismiss—if he truly believed he would be prejudiced by engaging in discovery prior to a decision—was back in early August when he asked Plaintiffs for an agreed stay and Plaintiffs unequivocally rejected that request. Rather than bring his motion then, before Plaintiffs had begun to expend substantial resources locating, collecting, processing and reviewing documents for production in this action, Mr. Williams instead said nothing about any intention to seek a stay in the future, all the while negotiating a discovery schedule, and failing to respond to Plaintiffs' efforts to confirm that Defendants were preparing for discovery. Waiting until now to file this motion was calculated to cause maximum disruption and delay to this litigation.

Indeed, this Motion comes (i) one full year after all of the facts upon which the untimely motions to dismiss that Williams joined are based were available to all parties-in-interest; (ii) three months after Plaintiffs unequivocally rejected Defendants August 3, 2023 request for an agreed stay of discovery pending motions to dismiss; (iii) eleven weeks after jointly submitting to this Court a Case Management Order with a comprehensive, fully negotiated and carefully

calibrated discovery schedule, including a substantial completion deadline for documents in January 2024; (iv) seven weeks after Plaintiffs' unanswered letter to Defendants regarding extensive preparations by Plaintiffs to meet their discovery obligations promptly, and asking Defendants to confirm (or deny) that they were doing the same; (v) two weeks after Defendants served on Plaintiffs extensive requests for documents, requests for admission, and interrogatories for which Plaintiffs have been preparing responses; and (vi) three days before Brandon Williams' responses to Plaintiffs' requests for documents were due. Mr. Williams has served objections to Plaintiffs' requests for documents stating that he refuses to produce any documents until a decision unfavorable to him is issued on this motion for a stay, or the motions to dismiss. In effect, Mr. Williams has *granted himself* a stay of discovery, contrary to applicable law.

As alleged further in the Complaint,[4] Samuel Bankman-Fried and other individuals who ran the FTX Group (the "FTX Insiders") entered into these transactions to expand their fraudulent scheme into the European Economic Area, giving them access to new sources of customer capital and enabling them to continue misappropriating assets of the FTX Group to keep the house of cards from collapsing. (Compl. ¶ 106.) Without conducting any due diligence, negotiating over the price, or hiring counsel until the eleventh hour, the FTX Insiders thus caused Plaintiffs to drastically overpay Defendants. (Compl. ¶¶ 3, 4, 38, 39, 71, 106.) This action that Mr. Williams seeks to delay is to recover the estate assets wrongfully transferred to Defendants, including over $90 million transferred to Mr. Williams in USD Coin in July and November 2021.

---

[4] In an effort to minimize estate resources expended on responding to this Motion, Plaintiffs incorporate the facts in the Complaint by reference and provide only a brief summary here for the Court's convenience.

## RELEVANT BACKGROUND

After the Chapter 11 Cases were filed, it became apparent that FTX Europe had no meaningful saleable assets, no proprietary technology, and insufficient intellectual property rights under poorly documented licenses.  (Compl. ¶ 104.)   The Debtors determined that Defendants inexplicably held back from the acquisition much of the technology and intellectual property rights that were apparently relied on by DAAG.  (Compl. ¶¶ 7, 78-84, 104.)   The Debtors thus concluded that there was no realistic prospect of a successful sale of FTX Europe.  (Compl. ¶ 104.)

To recover the substantial assets wrongly transferred in these fraudulent transactions, Plaintiffs filed this adversary proceeding on July 12, 2023.   Plaintiffs promptly initiated discussions with Defendants about their responses to the complaint, and discovery in the context of setting a comprehensive schedule for the action.   These conversations are worth describing in depth, as they illustrate the extent of Defendant Williams' bad faith in filing the instant Motion, and the insincerity of his purported concern for "unnecessarily deplet[ing]" estate resources at this late juncture.  (Mot. 25.)

Plaintiffs first sent Defendants a draft case management order ("CMO") on July 31.  Counsel for all parties then met and conferred on August 3 to discuss the draft, and during that meeting Defendants proposed a stay of discovery pending a decision on any motions to dismiss.  Plaintiffs responded immediately and unequivocally that they would not agree to a stay of discovery, and that they fully intended to move discovery forward expeditiously in this case.  *See* Ex. C at 8.   Defendants did not indicate any intention to move for a stay at that time, or any other time prior to last week.  *See* Ex. A; Ex. C.   Instead, Defendants engaged in a protracted negotiation over the terms of the CMO, including a comprehensive discovery schedule.   The parties carefully calibrated, through multiple proposals and counterproposals, each deadline to provide sufficient time to complete the necessary tasks.   After exchanging multiple drafts, and meeting to confer a

second time on August 11, counsel for Defendant Williams emailed Plaintiffs on August 22 stating

that he "ha[d] no objections to the changes or to filing the CMO as it now is." (Ex. A.)[5]  Counsel

for the other Defendants agreed later that day, and the jointly-submitted CMO was entered by the

Court the following day.  The final CMO reflects Plaintiffs' agreement to Defendants' request for

over 100 days from service of the Complaint to move or answer, provides that fact discovery shall

begin on September 19 as to non-parties and October 13 for parties, provides a "substantial

completion" deadline on January 31, 2024, "it being understood that Parties will produce

responsive materials on a rolling basis in advance of such date," and provides for fact discovery to

be completed by May 17, 2024.  (A.0002–A.0003.)[6]  The CMO does not reserve any rights of the

parties to move for a discovery stay at a later juncture.  In stark contrast, defendants in other

adversary proceedings who contemplated seeking a subsequent stay of discovery pending motions

to dismiss expressly reserved their right to do so in the CMO.  *See Stipulated and Proposed Case*

*Management Plan and Scheduling Order*, *Alameda Research Ltd. and Clifton Bay Investments*

*LLC* v. *Michael Kives, et al.*, Adv. Pro. No. 23-50411 (JTD) [Adv. D.I. 27] ("*Without waiving the*

*K5 Defendants' right to seek a stay*, the following discovery and pretrial schedule shall apply

absent further agreement of the parties or order of the Court.") (emphasis added).

Defendants then enjoyed over 100 days to draft their motions to dismiss without a

hint of disagreement as to how the schedule in this case would unfold.  During that time, Plaintiffs

expressed again their intent to move discovery forward in a timely manner by letter dated

September 21, which described in great detail the steps Plaintiffs were taking to prepare to meet

---

[5] Citations to "Ex. _" refer to exhibits to the accompanying *Declaration of Stephen Ehrenberg in Support of Plaintiffs' Opposition to Defendant Brandon Williams' Motion for a Protective Order Staying Discovery*.

[6] References in this Opposition to the *Appendix in Support of Motion for a Protective Order Staying Discovery* [Adv. D.I. 36] are denoted by referencing the page number of the appendix.

their discovery obligations in this case, including collecting, processing and reviewing data for potential production.  (Ex. B.)  Defendants were thus on notice that the estate was expending substantial resources preparing for discovery.  Plaintiffs asked Defendants to confirm that they too were preparing to respond to discovery requests, *or to state why they were not*. (*Id.*)   Plaintiffs also asked Defendants to sign the protective order entered in the Chapter 11 Cases, which Plaintiffs attached to the September 21 letter.  (*Id.*)  Defendants failed to respond in any way to the letter, including as to the protective order, leaving Plaintiffs to continue expending estate resources on discovery preparation under the carefully negotiated CMO.

Plaintiffs served discovery requests on all Defendants on October 13, 2023. (A.0041 – A.0096.)  On October 25, 2023, nearly two weeks after party requests could be served, Defendants Gruhn, Matzke, and Lorem Ipsum served Plaintiffs with requests for extensive discovery, including 77 document requests, 18 interrogatories, and 12 requests for admission. Plaintiffs immediately began preparing responses which are due on November 27.[7]  (A.0097–A.0142.)  Defendants Gruhn, Matzke, and Lorem Ipsum also sent requests for production to Defendant Williams.  (A.0226.)

Defendant Williams filed what he styles as a "*Motion to Dismiss or For Summary Judgment*" on October 25 [Adv. D.I. 23], which did not include lack of subject matter jurisdiction as a ground for dismissal.  On October 27, Defendants Matzke, Gruhn, and Lorem Ipsum filed a motion to dismiss this adversary proceeding [Adv. D.I. 31–32] and also moved to dismiss the

---

[7] Plaintiffs' deadline to respond under Rules 33, 34, and 36 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to this adversary proceeding by Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 7033, 7034, and 7036, falls on a legal holiday.  Pursuant to Bankruptcy Rule 9006, the deadline is automatically extended to the next day that is not a Saturday, Sunday, or legal holiday.

bankruptcy cases of FTX Trading Ltd. and Maclaurin Investments Ltd. for lack of subject matter jurisdiction [D.I. 3399, 3400].

On November 2, Plaintiffs informed counsel for Defendants that, consistent with the representations in Plaintiffs' September 21 letter, they were prepared (even before serving objections) to begin producing documents as soon as a signed protective order was in place. (Ex. C.)  In the same email, Plaintiffs requested that Defendants state when they planned to *begin* document productions.  Mr. Williams did not respond.  Instead, the following day, on November 3, Defendant Williams filed a "supplemental motion to dismiss" this adversary proceeding for lack of subject matter jurisdiction, which was untimely under the CMO and is nothing more than a belated joinder to the motion filed by Mr. Williams' co-defendants.  [Adv. D.I. 34].

On November 6, 2023, just days before Defendants' responses to Plaintiffs' discovery requests were due, Defendant Williams indicated that he would be seeking a stay of all discovery in this case, and would not produce any documents until the stay motion was decided. (Ex. C.)  Counsel for Defendants Gruhn, Matzke, and Lorem Ipsum UG, on the other hand, informed Plaintiffs on November 7 that they intended to "work on their discovery obligations" and "comply with the CMO," and then a week later proceeded file an untimely request to join Mr. Williams' Motion just hours before this Opposition brief is due to the Court.  (Ex. C.)

Plaintiffs, consistent with their obligations under the CMO and the Federal Rules of Civil Procedure, have been hard at work collecting, reviewing, and preparing thousands of documents for production to Defendants, as Plaintiffs explicitly told Defendants they were doing on multiple occasions. To date, counsel for Plaintiffs have spent hundreds of attorney hours on these monumental efforts, as have their electronic discovery personnel and vendors.

Plaintiffs respectfully request that the Court deny the motion for a stay, Order Defendant Williams to begin making document productions within seven days, and award reasonable expenses incurred by Plaintiffs in opposing it.

## **LEGAL STANDARD**

Pursuant to Federal Rule 26(c)(1), made applicable by Bankruptcy Rule 7026, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "Courts generally do not favor granting motions to stay discovery," including because "it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Galarza* v. *Whittle-Kinard*, 2017 WL 2198182, at *1 (D.N.J. May 18, 2017). Federal Rules of Civil Procedure 26(c)(2) and 26(c)(3) further provide that, "[i]f a motion for a protective order is wholly or partly denied," the court may "order that any party or person provide or permit discovery," and award expenses incurred by the non-movant in opposing the motion.

"The movant bears the burden to show that the circumstances support an exercise of the court's discretion to stay." *Cipla USA, Inc.* v. *Ipsen Biopharmaceuticals, Inc.*, 2022 WL 3139096, at *1 (D. Del. Aug. 5, 2022). Federal courts in Delaware consider three factors to guide the court's analysis in deciding motions to stay discovery: "(1) whether a stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage." *Id.*

Unlike the case law Mr. Williams inexplicably cites from New York (Mot. 19), courts in this District "do[] not 'evaluate the legal merits of the proceeding or inquiry that the movant seeks a stay in favor of.'" *Petro* v. *FCA US LLC*, 2023 WL 6510741, at *1 (D. Del. July 31, 2023). Nor do courts in this Circuit consider the economic burden of discovery on the

movant as part of the analysis. *See Kaavo Inc.* v. *Cognizant Tech. Sols. Corp.*, 2015 WL 1737476,

at *4 n.10. In any event, Mr. Williams fails to meet his burden under either standard. Indeed, even

in New York, it is "black letter law that the mere filing of a motion to dismiss the complaint does

not constitute 'good cause' for the issuance of a discovery stay." *Chesney* v. *Valley Stream Union

Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006) (citations omitted).

## ARGUMENT

I.    **DEFENDANT WILLIAMS' FRIVOLOUS MOTION FAILS TO ESTABLISH "GOOD CAUSE" UNDER THIS CIRCUIT'S PRECEDENT.**

A.    **A Discovery Stay Would Not Simplify The Issues at Trial.**

Defendant Williams argues that a stay is appropriate because his pending motion,

if granted, would "dispose of the entire case." (Mot. 19–20.) But in considering the prospects for

simplification, "the court must assess '*all* of the possible outcomes'" of the pending motion, "not

just the potential outcome most favorable to the party seeking the stay." *Cipla USA, Inc.*, 2022

WL 3139096, at *2. Here, "'little efficiency gain would be realized' if the motion is denied or

granted-in-part." *Id.* And although Mr. Williams would like a third opportunity to convince the

court of his meritless subject matter jurisdiction arguments (the first and second being his motions

to dismiss the bankruptcy proceeding and his motion to dismiss the adversary action), courts in

this District will not "predict the likely outcome of the motions to dismiss" in deciding a motion

to stay discovery, including in considering this factor. *Kaavo Inc.*, 2015 WL 1737476, at *2 n.4.

For the avoidance of any doubt that the subject matter jurisdiction argument is

wholly meritless, there is no legitimate basis to dispute the validity of the bankruptcy petitions or

the authorization to file them. In the rare case where courts in this Circuit do consider merits, it

is only where there is a "clear and unmistakable result" such that "there is only one result that

could be reached," *Gerald Chamales Corp.* v. *Oki Data Americas, Inc.*, 247 F.R.D. 453, 454

(D.N.J. 2007), or where the movant is asking for a motion to stay the whole case, *see, e.g.*, *In re Green Field Energy Servs., Inc.*, 2017 WL 2729065, at *2 (Bankr. D. Del. June 23, 2017) (stay denied where defendants were "unlikely" to succeed on the merits).[8] Defendant Williams does not seek to stay this action as a whole pending the motion to dismiss the bankruptcy proceeding, nor is there a "clear and unmistakable result" favorable to Williams to be derived from that motion. Indeed, if there is any clear result, it is that the timing and substance of the motions to dismiss the chapter 11 petitions are facially absurd.

As will be briefed and argued on the basis of actual evidence before this Court in due course, each of Maclaurin Investments Ltd. and FTX Trading Ltd. had valid corporate authority to file their respective chapter 11 petitions on November 11, 2022. The motions to dismiss contain factual inaccuracies and errors of law which the Debtors look forward to correcting. Resolution of the pending motions to dismiss the bankruptcy cases of Maclaurin Investments Ltd. and FTX Trading Ltd. is certainly not a case where "only one result [] could be reached" in favor of Defendant Williams. *Gerald Chamales Corp.*, 247 F.R.D. at 454.

**B.     A Discovery Stay Would Be Inappropriate at This Point in The Litigation.**

The second factor Delaware courts consider, the status of the litigation, further weighs against a stay of discovery. As discussed, the parties already agreed to a CMO after substantial negotiations by all parties in this case, including multiple meet and confers in early August. A stay of discovery was requested and rejected during those conversations, and the parties proceeded to negotiate mutually acceptable discovery deadlines. The Court entered the CMO on

---

[8] Williams cites to only three in-circuit cases to support his argument for a stay, all of which can be distinguished on their facts. In *Mann* v. *Brenner*, 375 F. App'x. 232 (3d Cir. 2010), successive complaints and motions to dismiss had been filed, and a stay of discovery was granted given the futility of plaintiff's repeatedly reformulated claims. In *In re Radnor Holdings Corp.*, 564 B.R. 467 (D. Del.), *aff'd*, 706 F. App'x. 94 (3d Cir. 2017) and *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x. 132 (3d Cir. 2014), discovery stays were granted based on concerns plaintiffs were seeking discovery to develop new causes of action.

August 23—nearly three months ago—which includes a "substantial completion" deadline that is less than three months away, and requires starting rolling productions in advance of that deadline.

Plaintiffs have since August undertaken considerable efforts to produce documents and satisfy the court-ordered discovery obligations in this adversary proceeding. *See Square Ring, Inc.* v. *Doe-1*, 2014 WL 1116960, at *4 (D. Del. Mar. 18, 2014) ("The basic rules of discovery require all parties to proceed with discovery, as set by the court, unless the court expressly directs them to do otherwise"); *Standard Chlorine of Delaware, Inc.* v. *Sinibaldi*, 821 F. Supp. 232, 261 (D. Del. 1992) ("[U]nless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all.") (citations omitted).

Plaintiffs have already served requests for production on all Defendants, as well as subpoenas on multiple third-parties. Plaintiffs also received 77 document requests, 18 interrogatories, and 12 requests for admission from Defendants. All Defendants have already filed their motions to dismiss (in Williams' case, two) and Plaintiffs' opposition is due the week after next. It is simply too late for a discovery stay. *Compare Petro*, 2023 WL 6510741, at *1 (factor disfavored a stay where "defendant's motion to dismiss is still outstanding" and "document production must be substantially complete in less than two months"), *with Cipla USA, Inc.*, 2022 WL 3139096, at *3 (factor favored of a stay where "[n]o scheduling order has been entered" and "discovery has not yet begun"), *and Kaavo Inc.*, 2015 WL 1737476, at *3 (factor favored of a stay where the parties "invested relatively few resources in the cases since their filing").

In any event, Williams waived his objection to discovery when his counsel agreed to and the Court granted the CMO. Williams' counsel "clearly had a sufficient opportunity to raise" any objections to discovery—both to the Court and to Plaintiffs—before the CMO was entered, and at many points thereafter, but failed to do so. *Gerald Chamales Corp.*, 247 F.R.D. at

456 (objections to the requested discovery waived in such circumstances). All of the facts upon which the motions to dismiss the chapter 11 cases of FTX Trading Ltd. and Maclaurin Investments Ltd. are based have been known publicly since the filing of the Chapter 11 Cases. Moreover, Defendant Williams could have made his motion at any time since the filing of the adversary proceeding, and no new facts have come to light that justify the filing of this Motion at this late date. This Motion is nothing more than a transparent attempt by Williams to delay adjudicating Plaintiffs' claims and such gamesmanship should not be countenanced.

###### C.   A Discovery Stay Would Unduly Prejudice Plaintiffs While Rewarding Defendant Williams' Gamesmanship.

"[D]elay inherently harms a non-moving party by prolonging resolution of the dispute," *Cipla USA, Inc.*, 2022 WL 3139096, at *3, but especially so in bankruptcy proceedings where estate assets are at stake and the bankruptcy court is tasked with "secur[ing] the just, speedy, and inexpensive determination" of the proceedings. Fed. R. Bankr. P. 1001; *see Celotex Corp.* v. *Edwards*, 514 U.S. 300, 308 (1995) (Congress intended bankruptcy courts to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate"). Unnecessary delay of this action would ultimately harm creditors—both because it would delay the recovery of fraudulently transferred assets back to the estate and result in unnecessary incremental fees and costs.

In considering whether Plaintiffs would be unduly prejudiced by a discovery stay, Delaware courts also consider "issues such as the timing of the stay request and the status of review proceedings." *Petro*, 2023 WL 6510741, at *1. This factor weighs against a stay where the timing suggests "that Defendants are seeking an inappropriate tactical advantage," or engaging in "inappropriate gamesmanship." *Kaavo Inc.*, 2015 WL 1737476, at *4. Here, Williams' inexplicable delay—not only in filing this Motion, but also in giving Plaintiffs no indication that he intended to do so—is evidence of Mr. Williams' bad faith intent to improperly hinder and delay

this adversary proceeding. *See Dentsply Int'l, Inc.* v. *Kerr Mfg. Co.*, 734 F. Supp. 656, 659 (D. Del. 1990) (denying motion to stay where underlying concerns "were present when [plaintiff] filed this suit approximately a year ago"). Instead, Williams heavily negotiated and agreed to the terms of a CMO that provides for rolling productions and a substantial completion deadline in January, said nothing of his intention to seek a discovery stay in the months that followed, including in response to Plaintiffs' multiple requests for updates on his discovery efforts, and waited until his responses to Plaintiffs' requests for production became due to raise the issue. There is no legitimate reason why Williams would have waited until now to request a stay of discovery. *See Eagle View Techs.*, *Inc.* v. *Xactware Sols., Inc.*, 2016 WL 7165695, at *4 (D.N.J. Dec. 7, 2016) (delay in filing motion to stay could lead to inference of an "inappropriate tactical advantage").

Williams also argues that the expense of discovery while his motion is pending is a burden weighing in favor of a stay. (Mot. 24.) For starters, Williams had an obligation to begin such efforts months ago, and cannot complain of these expenses now. If he decided to attempt a "unilateral stay of discovery" and not prepare for the deadlines set out in the CMO, the consequences of that delay should fall squarely on Williams. *Square Ring, Inc.*, 2014 WL 1116960, at *4 (where plaintiff unilaterally ceased to conduct discovery pending a dispositive motion, "the consequences of the plaintiff's delay fell squarely on the plaintiff"). Regardless, "[t]his type of economic harm" that Williams complains of "has been deemed not to amount to the kind of 'undue' hardship or inequity referenced in the case law" of this Circuit. *Kaavo Inc.*, 2015 WL 1737476, at *4 n.10; *see Standard Chlorine of Delaware*, 821 F. Supp. at 261 (that discovery requests "will entail significant legal and accounting expenses to complete" is not a proper basis for refusing to participate in discovery); *Dentsply Int'l, Inc.*, 734 F. Supp. at 659 ("The Court will

not elevate [defendant]'s failure to address its concerns in a timely fashion to an example of hardship warranting a stay.").

## II.   THE COURT SHOULD ORDER DEFENDANT WILLIAMS TO MAKE HIS FIRST DOCUMENT PRODUCTION IN SEVEN DAYS AND TO PAY REASONABLE EXPENSES INCURRED BY PLAINTIFFS IN RESPONDING TO THE MOTION.

"If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2).  The District of Delaware has found such an order appropriate in circumstances similar to here, where defendants attempted to "in effect grant[] itself a stay of discovery" and ceased all discovery efforts while a motion to dismiss (including for lack of subject matter jurisdiction) was pending.  *Standard Chlorine of Delaware, Inc.*, 821 F. Supp. at 261.   As discussed, Defendant Williams has affirmatively stated that he does not intend to produce documents in accordance with the CMO until this motion for a protective order has been decided, has not responded to Plaintiffs' multiple requests for confirmation that he has been preparing to produce documents (including on a rolling basis prior to the substantial completion deadline, as provided in the CMO), and has not responded to Plaintiffs' offer to meet and confer to discuss initial productions.  To avoid any further delay, the Court should order Williams to comply with the deadlines set out in the CMO and to make his first document production within seven days of any order.

Where a court issues an order to provide or permit discovery, Federal Rule of Civil Procedure 26(c)(3) also empowers it to go a step further and award expenses incurred by the non-movant in opposing the motion pursuant to Federal Rule of Civil Procedure 37(b).  In filing the instant Motion, for all of the reasons set forth above, Defendant Williams has demonstrated a reckless disregard for estate assets, and should be ordered to pay reasonable expenses incurred by the estate in opposing his Motion.

-14-

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should deny Defendant Williams'
Motion and order him to comply with the discovery deadlines set out in the CMO, to begin making
document productions within seven days, and to pay reasonable expenses incurred by the estate in
responding to the Motion.

Dated: November 14, 2023
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ *Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail:  landis@lrclaw.com
          mcguire@lrclaw.com
          brown@lrclaw.com
          pierce@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Steven L. Holley (admitted *pro hac vice*)
Stephen Ehrenberg (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
Christopher J. Dunne (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail:  holleys@sullcrom.com
          ehrenbergs@sullcrom.com
          gluecksteinb@sullcrom.com
          dunnec@sullcrom.com

*Counsel for the Debtors*
*and Debtors-in-Possession*